COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DOUGLAS R. BRITTON (188769)
LUCAS F. OLTS (234843)
ERIC I. NIEHAUS (239023)
COTY R. MILLER (255703)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dougb@csgrr.com
lolts@csgrr.com
ericn@csgrr.com
cmiller@csgrr.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAUREEN BACKE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> NOVATEL WIRELESS, INC., et al., <br><br> Defendants. | Lead Case No. 08-CV-01689-H(RBB) <br><br> (**Consolidated**) <br><br> <u>CLASS ACTION</u> <br><br> MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION <br><br> DATE: April 26, 2010 <br> TIME: 10:30 a.m. <br> PLACE: Courtroom 13 <br>        The Honorable Marilyn L. Huff |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. FACTUAL ALLEGATIONS ....................................................................................2

III. ARGUMENT ..........................................................................................................6

    A. Class Action Treatment Under Rule 23 Is Appropriate............................6

    B. The Proposed Class Satisfies Rule 23(a) ...............................................8

        1. The Class Is So Numerous that Joinder of All Members of the Class Is Impracticable ...............................................................8

        2. Questions of Law and Fact Are Common to Members of the Class .........10

        3. Plaintiffs' Claims Are Typical of Those of the Class ...............................13

        4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class Members ..................................................................................14

        5. The Proposed Class Satisfies Rule 23(b)(3) .............................................16

            a. Common Questions of Law and Fact Predominate Over Individual Questions ..................................................................17

            b. Loss Causation Is Not a Proper Inquiry at Class Certification ...................................................................................20

            c. A Class Action Is Superior to Other Available Methods for Resolving This Controversy ....................................................21

IV. CONCLUSION.....................................................................................................23

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ...................................................................14

*Arnold v. United Artists Theatre Circuit*,
158 F.R.D. 439 (N.D. Cal. 1994) ................................................................8

*Backe v. Novatel Wireless, Inc.*,
No. 08-CV-01689-H (RBB), 2008 U.S. Dist. LEXIS 100622
(S.D. Cal. Dec. 10, 2008) ..........................................................................15

*Ballard v. Equifax Check Servs., Inc.*,
186 F.R.D. 589 (E.D. Cal. 1999) ..............................................................12

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988) ...................................................................................18

*Berner v. Lazzaro*,
730 F.2d 1319 (9th Cir. 1984) .....................................................................7

*Binder v. Gillespie*,
184 F.3d 1059 (9th Cir. 1999) ...................................................................18

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ........................................................... *passim*

*Blatt v. Muse Techs., Inc.*,
No. 01-11010-DPW, 2002 U.S. Dist. LEXIS 18466
(D. Mass. Aug. 27, 2002) ...........................................................................19

*Brady v. Lac, Inc.*,
72 F.R.D. 22 (S.D.N.Y. 1976) .....................................................................9

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) .........................................................18, 19

*Carpenter v. Davis*,
424 F.2d 257 (5th Cir. 1970) .......................................................................9

*Cheney v. Cyberguard Corp.*,
213 F.R.D. 484 (S.D. Fla. 2003) ................................................................19

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .....................................................................................7

*Epitope, Inc., Sec. Litig.*,
No. 92-759-RE, 1992 U.S. Dist. LEXIS 22705
(D. Or. Nov. 30, 1992) ...............................................................................14

|  |  | **Page** |
|---|---|---|

*Epstein v. MCA, Inc.*,
    50 F.3d 644 (9th Cir. 1995) .................................................................21, 22

*Freedman v. Louisiana-Pacific Corp.*,
    922 F. Supp. 377 (D. Or. 1996) ...................................................................10

*Gonzales v. Arrow Fin. Servs. LLC*,
    489 F. Supp. 2d 1140 (S.D. Cal. 2007) ........................................................7

*Greenspan v. Brassler*,
    78 F.R.D. 130 (S.D.N.Y. 1978) ....................................................................9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................11, 14

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ......................................................................13

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) ........................................................................8

*Haywood v. Barnes*,
    109 F.R.D. 568 (E.D.N.C. 1986) .................................................................10

*Hootkins v. Chertoff*,
    No. CV 07-5696 CAS (MANx), 2009 U.S. Dist. LEXIS 3243
    (C.D. Cal. Jan. 6, 2009) ...........................................................................8, 14

*In re Adobe Sys., Inc. Sec. Litig.*,
    139 F.R.D. 150 (N.D. Cal. 1991) ..................................................................7

*In re Alco Int'l Group, Inc., Sec. Litig.*,
    158 F.R.D. 152 (S.D. Cal. 1994) .............................................................1, 22

*In re Applied Micro Circuits Corp. Sec. Litig.*,
    No. 01-CV-0649 K (AJB), 2003 U.S. Dist. LEXIS 14492
    (S.D. Cal. July 15, 2003) .............................................................................18

*In re Asbestos Sch. Litig.*,
    104 F.R.D. 422 (E.D. Pa. 1984) ..................................................................11

*In re BearingPoint, Inc. Sec. Litig.*,
    232 F.R.D. 534 (E.D. Va. 2006) ..................................................................18

*In re Cardinal Health Inc. Sec. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) .......................................................16

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ......................................................................15

| | | Page |
|---|---|---|

*In re Cirrus Logic Sec.*,
    155 F.R.D. 654 (N.D. Cal. 1994) ........................................................8, 12

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ..................................................... *passim*

*In re DJ Orthopedics, Inc.*,
    No. 01-CV-2238-K (RBB), 2003 U.S. Dist. LEXIS 21534
    (S.D. Cal. Nov. 17, 2003) .............................................................21, 22

*In re Emulex Corp. Sec. Litig.*,
    210 F.R.D. 717 (C.D. Cal. 2002) ........................................................9, 17

*In re Enron Corp. Sec. Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ....................................................16

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009) ..................................................... *passim*

*In re Magma Design Automation Sec. Litig.*,
    No. C 05-2394 CRB, 2007 U.S. Dist. LEXIS 62641
    (N.D. Cal. Aug. 16, 2007) .............................................................20, 22

*In re Micron Techs.. Inc.*,
    247 F.R.D. 627 (D. Idaho 2007) ......................................................18, 20

*In re Penn Cent. Sec. Litig.*,
    62 F.R.D. 181 (E.D. Pa. 1974) .............................................................9

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
    571 F. Supp. 2d 1315 (N.D. Ga. 2007) ....................................................17

*In re Seagate Techs. Sec. Litig.*,
    115 F.R.D. 264 (N.D. Cal. 1987) .........................................................10

*In re Sugar Indus. Antitrust Litig.*,
    MDL No. 201, 1976 U.S. Dist. LEXIS 14955
    (N.D. Cal. May 21, 1976) ................................................................22

*In re Surebeam Corp. Sec. Litig.*,
    No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022
    (S.D. Cal. Dec. 31, 2004) ................................................................13

*In re THQ, Inc. Sec. Litig.*,
    No. CV 00-1783 AHM (Ex), 2002 U.S. Dist. LEXIS 7753
    (C.D. Cal. Mar. 22, 2002) ......................................................2, 7, 9, 12

*In re U.S. Fin. Sec. Litig.*,
    69 F.R.D. 24 (S.D. Cal. 1975) ........................................................10, 13

08-CV-01689-H(RBB)

| | Page |
|---|---|
| *In re Verisign, Inc. Sec. Litig.*, | |
| No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438 | |
| (N.D. Cal. Jan. 13, 2005) ...................................................2, 7, 10, 12 | |
| *Jacobs v. Paul Hardeman, Inc.*, | |
| 42 F.R.D. 595 (S.D.N.Y. 1967) ...............................................9 | |
| *Keele v. Wexler*, | |
| 149 F.3d 589 (7th Cir. 1998) ...............................................12 | |
| *Lapin v. Goldman Sachs & Co.*, | |
| 254 F.R.D. 168 (S.D.N.Y. 2008) ...............................................17 | |
| *Mazza v. Am. Honda Motor Co.*, | |
| No. CV 07-7857 VBF (JTLx), 2008 U.S. Dist. LEXIS 102429 | |
| (C.D. Cal. Dec. 16, 2008) ...............................................13 | |
| *McPhail v. First Command Fin. Planning, Inc.*, | |
| 247 F.R.D. 598 (S.D. Cal. 2007) ...............................7, 12, 13, 21 | |
| *Mendoza v. Zirkle Fruit Co.*, | |
| 222 F.R.D. 439 (E.D. Wash. 2004) ...............................................12 | |
| *Negrete v. Allianz Life Ins. Co. of N. Am.*, | |
| 238 F.R.D. 482 (C.D. Cal. 2006) ...............................................11 | |
| *No. 84 Employee-Teamster Joint Council Pension Trust Fund v. Am. West*, | |
| 320 F.3d 920 (9th Cir. 2003) ...............................................18 | |
| *Nursing Home Pension Fund v. Oracle Corp.*, | |
| No. C01-00988 MJJ, 2006 U.S. Dist. LEXIS 94470 | |
| (N.D. Cal. Dec. 20, 2006) ...............................................2 | |
| *Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*, | |
| 611 F. Supp. 990 (C.D. Cal. 1984) ...............................................8, 9 | |
| *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.*, | |
| No. C 01-20418 JW, 2004 U.S. Dist. LEXIS 27008 | |
| (N.D. Cal. May 27, 2004) ...............................................18 | |
| *Rivera v. Bio Engineered Supplements & Nutrition*, | |
| No. SACV 07-1306 JVS (RNBx), 2008 U.S. Dist. LEXIS 95083 | |
| (C.D. Cal. Nov. 13, 2008) ...............................................13 | |
| *Rodriguez v. Carlson*, | |
| 166 F.R.D. 465 (E.D. Wash. 1996) ...............................................10 | |
| *Schlagal v. Learning Tree Int'l*, | |
| No. CV 98-6384 ABC (Ex), 1999 U.S. Dist. LEXIS 2157 | |
| (C.D. Cal. Feb. 23, 1999) ...............................................13 | |

|  |  |
|---|---|
|  | **Page** |

*Schneider v. Traweek*,
    No. CV 88-0905 (Kx), 1990 U.S. Dist. LEXIS 15596
    (C.D. Cal. Aug. 7, 1990) ...................................................................................11, 13

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) .................................................................................9

*Sherman v. Griepentrog*,
    775 F. Supp. 1383 (D. Nev. 1991) ...............................................................................9

*Simpson v. Specialty Retail Concepts, Inc.*,
    823 F. Supp. 353 (M.D.N.C. 1993) ...........................................................................19

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................11, 13, 14

*Trattner v. Am. Fletcher Mortgage Investors*,
    74 F.R.D. 352 (S.D. Ind. 1976) ...................................................................................9

*United Steel Workers v. Conoco*,
    No. 09-56578, 2010 U.S. App. LEXIS 238
    (9th Cir. Jan. 10, 2010) ................................................................................................8

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ...................................................................................14

*Wehner v. Syntex Corp.*,
    117 F.R.D. 641 (N.D. Cal. 1987) ...........................................................................8, 10

*Yamner v. Bolch*,
    No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849
    (N.D. Cal. Sept. 15, 1994) ...........................................................................................9

*Yslava v. Hughes Aircraft Co.*,
    845 F. Supp. 705 (D. Ariz. 1993) ..............................................................................11

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78i(b) .............................................................................................................1, 18, 20
    §78t(a) ...........................................................................................................................1
    §78u-4(a)(3)(B) ............................................................................................................1
    §78u-4(a)(3)(B)(i) ......................................................................................................15

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................................*passim*
    Rule 23(a) ...................................................................................................8, 10, 12, 16
    Rule 23(a)(1) ................................................................................................................8
    Rule 23(a)(2) ........................................................................................................10, 12

|  |  | Page |
|---|---|---|
| Rule 23(a)(3) | ............................................................................... | 13, 14 |
| Rule 23(a)(4) | ............................................................................... | 14, 16 |
| Rule 23(b)(3) | ............................................................................... | 16, 17, 21, 22 |

## LEGISLATIVE HISTORY

H.R. Conf. Rep. No. 104-369 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 679 ........................................................................8, 15

## SECONDARY AUTHORITIES

Alba Conte & Herbert Newberg, *Newberg On Class Actions* (4th ed. 2002)
    §22:16 ................................................................................................10
    §22:21 ................................................................................................12

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (3d ed. 1992)
    §3.10 ................................................................................................11

## I.    INTRODUCTION

Lead Plaintiffs Plumbers & Pipefitters' Local 562 Pension Fund and Western Pennsylvania Electrical Employees Pension Fund ("Plaintiffs") bring this motion seeking to certify this securities litigation as a class action on behalf of all persons who purchased Novatel Wireless, Inc. ("Novatel" or the "Company") common stock between February 27, 2007 and November 10, 2008 (the "Class Period").[1]  Plaintiffs also request appointment as class representatives.[2]

During the Class Period, Novatel and the Individual Defendants[3] (collectively, "Defendants") violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") by making a series of materially false and misleading statements about Novatel's business, prospects, and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Novatel and its business, thus causing the Company's common stock to be overvalued and artificially inflated.  By certifying this case as a class action, Plaintiffs, and thousands of other similarly-situated investors who suffered substantial damages when purchasing Novatel's stock, will be permitted to efficiently and effectively prosecute this action.[4]

A straightforward securities fraud action such as this one is uniquely appropriate for class action treatment.  This action is similar to the numerous securities cases that have been certified as class actions in this and in every other federal circuit in the United States.  *See In re Alco Int'l Group, Inc., Sec. Litig.*, 158 F.R.D. 152 (S.D. Cal. 1994); *In re Cooper Cos. Sec. Litig.*, 254 F.R.D.

---

[1]    Excluded from the Class are Defendants, directors, and officers of Novatel and their families and affiliates.

[2]    By Order dated December 10, 2008, the Court appointed the Plaintiffs as Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

[3]    The "Individual Defendants" are Peter Leparulo ("Leparulo"), Novatel's Chairman and Chief Executive Officer; Brad Weinert ("Weinert"), Novatel's President; Robert Hadley ("Hadley"), Novatel's Chief Marketing Officer; Catherine Ratcliffe ("Ratcliffe"), Novatel's General Counsel; and Slim Souissi ("Souissi"), Novatel's Chief Technology Officer.

[4]    In support of its motion for class certification, Plaintiffs incorporate by reference the Declaration of Bjorn I. Steinholt, CFA ("Steinholt Decl."), attached as Ex. 1 to the Declaration of Douglas R. Britton ("Britton Decl."), filed herewith.

628, 642 (C.D. Cal. 2009) ("'[I]t is well recognized that Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing.'") (quoting *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)).[5] And as institutional investors, Plaintiffs here are uniquely qualified to serve as class representatives. *See Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2006 U.S. Dist. LEXIS 94470, at *20 (N.D. Cal. Dec. 20, 2006) (in certifying the class, the court noted that the fact that lead plaintiff was an institutional investor "militates against finding it atypical or inadequate to represent the class").

　　　　As demonstrated below, this case meets all the requirements of Fed. R. Civ. P. 23. The class members are so numerous that joinder would be impracticable. The proposed class representatives' claims present common questions of law and fact, are typical of other class members' claims, and Plaintiffs are more than adequate to serve as class representatives. The common questions here predominate over any individual questions, and the class action process is the superior way to adjudicate these claims. Accordingly, this class of defrauded investors is suitable for class certification with Plaintiffs serving as class representatives.

## II.　　FACTUAL ALLEGATIONS

　　　　Novatel is a provider of wireless broadband access solutions (*e.g.*, PC Cards, Express Cards, and USB Modems) for the worldwide mobile communications market. ¶2.[6] At the beginning of the Class Period, Novatel reported extraordinary financial results for 1Q07 that Defendants said were "the best in the Company's history." ¶54. Defendants boasted that Novatel's revenue grew by

---

[5]　　*See also In re Verisign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438, at *31-*32 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants."); *In re THQ, Inc. Sec. Litig.*, No. CV 00-1783 AHM (Ex), 2002 U.S. Dist. LEXIS 7753, at *8-*9 (C.D. Cal. Mar. 22, 2002) ("[L]ower courts have recognized that 'the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws.'"). All citations and quotations are omitted unless otherwise noted. Furthermore, all emphasis is added unless otherwise indicated as well.

[6]　　All "¶_" or "¶¶__" references are to the Consolidated Complaint for Violation of the Federal Securities Laws ("Consolidated Complaint") (Doc. No. 23).

- 2 -

08-CV-01689-H(RBB)

174% year-over-year and exclaimed that it exceeded the revised guidance that Defendants had given to Wall Street earlier in the quarter "due to strong end-of-the-quarter momentum for newly introduced ExpressCards and ***Ovation USB devices***." *Id.* By Defendants' account, strong demand led to an extraordinary quarter. Defendants explained that Novatel was "continu[ing] to ramp to meet increasing demand in the marketplace," which the Company would capture ahead of its competitors who were using "fairly well tried out, older technologies" that the market supposedly was not ready for. ¶¶51-52. Defendants even claimed that Novatel was entitled to a premium because of its technological superiority. ¶¶5, 55.

But at the same time that Defendants were making these assertions, they knew that Sprint had excluded Novatel from a new WiMax wireless platform that Sprint intended to spend $3 billion developing and had plans to cancel Novatel's flagship modem months before Novatel could develop a replacement. *Id.* Indeed, Sprint was targeting the retail market (with WiMax and by cutting monthly data service fees) and required a much cheaper modem than any offered by Novatel. ¶¶21-24. While the public knew about Sprint's selection of vendors for WiMax, it did not know why Novatel was excluded or that Sprint had plans to cancel Novatel's flagship product.

Notwithstanding these devastating events, Defendants increased Novatel's guidance for 2Q07 (after the Chief Financial Officer resigned) (¶58), and then unloaded massive amounts of their stock (40%-99% with vested options and 94%-100% without) at or near a six-year high, and at a time when no reasonable insider would have sold their stock. Indeed, at the same time that its executives were unloading their Novatel holdings, Novatel was reporting wildly successful financial results and announcing new certifications with carriers that would give it access to hundreds of millions of new subscribers. ¶¶3, 16-18, 116-117. Defendants sold the vast majority of their Novatel holdings in this seemingly positive environment and did so just before the market learned of Sprint's cancellation. ¶¶3-4, 10, 16-17, 116. Analysts confirmed that the market immediately corrected when it learned of the Sprint cancellation, which Defendants had known it would do "for some time." ¶¶3, 16-17, 121. Novatel's stock price opened on July 20, 2007 at $28.31, and then crashed to $25.09 that morning on heavy trading volume. Each Individual Defendant therefore avoided a significant devaluation of their shares. ¶17. And after the Sprint revelation, Leparulo and

Weinert did not sell a single share of stock and Hadley, Souissi, and Ratcliffe dramatically reduced their sales even though the stock traded at prices similar to the prices at which they previously sold. ¶¶10, 34, 116. An extraordinary 62% of Defendants' Class Period sales occurred in June and July 2007 – just before the market learned of this material event. ¶16.

Even though Sprint's decisions on WiMax and Novatel's 720 USB modem were red flags that Novatel was losing position at its largest customer and precious market share, Defendants continued to have Novatel report impressive financial results throughout 2007 and repeatedly emphasized increasing demand in the marketplace driven by Novatel's technologically superior products. ¶¶59-65. Novatel reported 113% revenue growth in 2Q07 and 90% revenue growth in 3Q07, as Defendants said that Novatel was seeing "strong demand across our major product lines," including its flagship Ovation USB device that had "been a primary growth driver with over $85 million in sales in the nine months since its introduction." ¶¶58-59, 63. And they claimed that demand for its products was so strong that Novatel's "major hurdle is tightness in our supply channel for selected components due to strong demand." ¶64. Defendants even claimed Novatel "had an exceptionally strong first half of the year *with Sprint*." ¶¶60, 64. Defendants gave no indication that Novatel's position in the market was slipping.

Defendants' statements were false or materially misleading. In addition to the dramatic loss at Sprint, Novatel continued to lose market share to its competitors throughout 2007 as its products did not enable it to compete in the valuable retail sector. ¶¶21-23. Not only did Novatel lose position with Sprint, many other major wireless carriers, including T-Mobile and Vodafone were also slashing monthly data service fees to target the consumer market – a market Defendants knew they could not adequately serve. ¶¶22-24. In fact, an analyst later confirmed that "NVTL's products are priced and geared for the enterprise segment and *the [C]ompany has little shelf space at the store level*." ¶24. Defendants also admitted that "*we did not have the right products for the right customers*" (¶77) and that Novatel "*historically had not placed an emphasis*" on the retail market. ¶75. In fact, the Company shifted its focus to the European market in the second half of 2007 because Defendants knew that Novatel was losing market share in the U.S. ¶¶25-27. Novatel's

international sales were trending upward (1Q07 – 21%; 2Q07 – 23%; 3Q07 – 26%), even though international sales adversely affected Novatel's profit margins. *Id.*

Novatel's financial results and its statements about the demand for its products were false and misleading for another reason: Defendants failed to disclose that Novatel was prematurely shipping products into a channel they knew was over-saturated. ¶28. A Novatel employee has confirmed that "there was always a 'crunch time' at the end of each quarter" and that the Company would frequently ship large amounts of product up to "four weeks" early to meet or exceed Wall Street expectations. *Id.* Novatel now admits that its internal controls suffered from material weaknesses that permitted these early shipments. ¶¶9, 37, 84. And Defendants also admit that Novatel had shipped product early at least in 1Q08 to improperly recognize $3.4 million in revenue. ¶¶9, 36-37, 81, 84. Not surprisingly, Sprint and Verizon were flush with inventory by 4Q07, after Novatel's Days Sales Outstanding (DSOs) almost doubled from 38 in 2Q07 to 61 in 3Q07 as Novatel shipped more product before quarter end on credit with extended payment terms. ¶¶30-31. This continued the illusion that Novatel benefitted from increasing demand.

Defendants' scheme to inflate revenues started to unravel in 1Q08. ¶¶32, 67-70. On February 20, 2008, Novatel shocked the market by announcing that the bottom had fallen out of its aggressive growth streak. *Id.* Defendants forecasted $110 million in revenues for 1Q08 – $10 million below consensus estimates – and attributed the slowdown to Verizon and Sprint flushing inventory from other vendors whom they no longer intended to use. *Id.* Defendants also disclosed that its customers were focusing on the consumer market where the Company historically did not focus. *Id.* Defendants' forecasts, and their explanations for them, took analysts by complete surprise as none of Novatel's competitors mentioned the consolidation issue at Verizon and Sprint ***when raising their outlooks for the quarter***. *Id.* In reality, Novatel's main customers were over-extended because of early shipments and had to clear their inventory. *Id.* Novatel's stock price dropped from approximately $14 to as low as $10.20, or roughly 27%, after Defendants' disclosures. *Id.*

Through 1Q08, Defendants repeated the Company's guidance and told analysts that "we are very pleased with the long-term trends and how we are positioned to fulfill them." ¶33. But on April 14, 2008, Defendants shocked the market again by reducing Novatel's 1Q08 guidance to $91

million – $30 million below analysts' original estimates. *Id.* Defendants improperly "pull[ed] in" at least $3.4 million of revenue into 1Q08 in violation of Generally Accepted Accounting Principles ("GAAP") to reach even these results. *Id.* By prematurely recognizing future revenues, Defendants boosted 1Q08 revenues to minimize an already sizeable miss. *Id.* Defendants repeatedly told the Securities and Exchange Commission ("SEC") and investors that they designed and implemented disclosure controls to prevent this type of accounting manipulation – claims that Novatel would later admit were false. *Id.*

On May 1, 2008, the Company confirmed in a press release the results it announced on April 14, 2008, which Defendants filed with the SEC on Form 8-K. ¶79. But on May 13, 2008, Defendants told investors that the Company was unable to file its 1Q08 Form 10-Q on time because of a review of a single customer contract which they represented was "substantially completed today." ¶35. But they added that "the Company and its Audit Committee do not expect any change to the accounting under that contract, or to any previously reported financial statements or earnings disclosed in the Company's Current Report on Form 8-K filed on May 1, 2008." *Id.* Yet three months later, on August 19, 2008, Defendants admitted that the review was still ongoing, that it expanded to at least six transactions representing $9.1 million in revenue, and that it indeed would change Novatel's accounting by $3.4 million. ¶36. Novatel's stock price dropped 25% from $8.40 to $6.29 the next day. *Id.*

Novatel's stock collapsed another 27% after Defendants confirmed on November 10, 2008 that they violated the Company's revenue cutoff procedures and that the accounting review uncovered "several control deficiencies in [the Company's] internal control over financial reporting that in the aggregate constituted a material weakness" during the Class Period. ¶37. Novatel's material weaknesses related to the simple task of ensuring that the product was shipped and revenue was recognized before the quarter closed. *Id.*

## III.  ARGUMENT

### A.  Class Action Treatment Under Rule 23 Is Appropriate

Within the Ninth Circuit, courts have repeatedly endorsed the use of class action procedures to resolve claims under the federal securities laws. In fact, district courts are to liberally construe

Rule 23 in favor of class action cases brought under the federal securities laws. *See, e.g.*, *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 609 (S.D. Cal. 2007); *Cooper*, 254 F.R.D. at 642; *Verisign*, 2005 U.S. Dist. LEXIS 10438, at *31-*32; *THQ*, 2002 U.S. Dist. LEXIS 7753, at *8-*9. Any doubt as to the propriety of certification should be resolved in favor of certifying the class because denying class certification will almost certainly terminate the action and be detrimental to the members of the class. *Blackie*, 524 F.2d at 901; *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007) ("'doubts regarding the propriety of class certification should be resolved in favor of certification'"). "[C]lass actions commonly arise in securities fraud cases as the claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud. . . . Accordingly, [federal courts in California] hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also Cooper*, 254 F.R.D. at 642 ("'The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws.'") (quoting *Blackie*, 524 F.2d at 903).

Both the Supreme Court and the Ninth Circuit have long recognized that private actions are an important enforcement mechanism to supplement governmental administrative regulation of the securities markets. *See, e.g.*, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) ("The securities statutes seek to maintain public confidence in the marketplace. . . . They do so by deterring fraud, in part, through the availability of private securities fraud actions."); *Berner v. Lazzaro*, 730 F.2d 1319, 1322-23 (9th Cir. 1984) ("The resources of the Securities Exchange Commission are adequate to prosecute only the most flagrant abuses. . . . To this end, private actions brought by investors have long been viewed as a necessary supplement to SEC enforcement actions."). And in enacting the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress reaffirmed the above viewpoint by stressing the importance of private enforcement of the securities laws:

> Private securities litigation is an indispensable tool with which defrauded investors can recover their losses without having to rely upon government action. Such private lawsuits promote public and global confidence in our capital markets and help to

08-CV-01689-H(RBB)

deter wrongdoing and to guarantee that corporate officers, auditors, directors, lawyers and others properly perform their jobs.

H.R. Conf. Rep. No. 104-369, at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 730.  Accordingly, this Court should liberally construe the requirements of Rule 23 in favor of certifying this securities fraud case as a class action.

### B.  The Proposed Class Satisfies Rule 23(a)

The requirements of Fed. R. Civ. P. 23 and relevant case law demonstrates that this case should be certified.  Rule 23(a) states that one or more members of a class may sue or be sued as representative parties on behalf of all only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Thus, once Plaintiffs establish (i) numerosity;  (ii) commonality; (iii) typicality; and (iv) adequacy of representation, this case may proceed as a class action.  *United Steel Workers v. Conoco*, No. 09-56578, 2010 U.S. App. LEXIS 238, at *10-*12 (9th Cir. Jan. 10, 2010); *Hootkins v. Chertoff*, No. CV 07-5696 CAS (MANx), 2009 U.S. Dist. LEXIS 3243, at *15-*21 (C.D. Cal. Jan. 6, 2009).  The proposed Class in this case readily satisfies each of these prerequisites.

### 1.  The Class Is So Numerous that Joinder of All Members of the Class Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable."  Fed. R. Civ. P. 23(a)(1).  Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class.  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964); *see also Wehner v. Syntex Corp.*, 117 F.R.D. 641, 643 (N.D. Cal. 1987).  There is no fixed number of class members which either compels or precludes the certification of a class.  *Arnold v. United Artists Theatre Circuit*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Indeed, classes consisting of 14 members have been held large enough to justify certification.  *See In re Cirrus Logic Sec.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994); *Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984).

Additionally, the exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large. *Id.*; *see also Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification . . . and plaintiff's allegations plainly suffice to meet the numerosity requirement of Rule 23.").[7] Indeed, courts in this district have assumed that the numerosity requirement is satisfied in securities cases involving nationally-traded stocks. *Yamner v. Bolch*, No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *7-*8 (N.D. Cal. Sept. 15, 1994).

In securities litigation, district courts regularly find the numerosity requirement satisfied with respect to a purported class of purchasers or resellers of nationally traded securities on the basis of the number of shares sold during the class period. *See In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 719 (C.D. Cal. 2002) ("[T]he Class would include hundreds of thousands of purchasers since approximately five million shares of Emulex stock were traded daily during the Class Period. Individual joinder of members of a class this size would be impracticable."); *Greenspan v. Brassler*, 78 F.R.D. 130, 132 n.4 (S.D.N.Y. 1978) (964,000 shares traded during class period); *Trattner v. Am. Fletcher Mortgage Investors*, 74 F.R.D. 352, 356 (S.D. Ind. 1976) (mere fact that stock volume was sufficient to be traded on the New York Stock Exchange); *Brady v. Lac, Inc.*, 72 F.R.D. 22, 27 (S.D.N.Y. 1976) (1.3 million outstanding shares); *In re Penn Cent. Sec. Litig.*, 62 F.R.D. 181, 188 (E.D. Pa. 1974) (1.5 million outstanding shares); *Jacobs v. Paul Hardeman, Inc.*, 42 F.R.D. 595, 598 (S.D.N.Y. 1967) (7,000 outstanding).

When faced with a class of purchasers of a nationally traded security, courts often look to the number of shares sold by that particular company during the class period in order to determine numerosity. *See Emulex*, 210 F.R.D. at 719; *see also THQ*, 2002 U.S. Dist. LEXIS 7753, at *10. While Plaintiffs have not yet obtained the Company's stock transfer records for the time period in question, Novatel had more than 31 million shares of common stock outstanding during the Class

---

[7]     *Accord Sherman v. Griepentrog*, 775 F. Supp. 1383, 1389 (D. Nev. 1991) ("'It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained.' . . . The court may draw a reasonable inference of the size of the class from the facts before it.") (quoting *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970)).

Period, a reported trading volume of more than 556 million shares, and an average reported daily trading volume of more than 1.28 million shares.  Steinholt Decl., ¶¶14-15; ¶136; *see also Cooper*, 254 F.R.D. at 634 ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year.  It is likely that thousands of people made such purchases.  Joinder of more than a thousand plaintiffs would be impracticable.").  In order to meet the numerosity requirement for class certification, Plaintiffs may rely on reasonable inferences drawn from available facts in order to demonstrate that the Class is so numerous that joinder of all class members is impracticable.  *See, e.g.*, *In re U.S. Fin. Sec. Litig.*, 69 F.R.D. 24, 34 (S.D. Cal. 1975); *Verisign*, 2005 U.S. Dist. LEXIS 10438, at *12 ("In cases involving securities traded on national stock exchanges, numerosity is practically a given.  'Defendants normally cannot and rarely do contest joinder impracticability in class actions brought on behalf of shareholders or traders in publicly owned and nationally listed corporations.'") (quoting Alba Conte & Herbert Newberg, *Newberg On Class Actions* §22:16 (4th ed. 2002)).  With over 31 million shares of Novatel common stock outstanding during the Class Period and enormous trading volume, it is clear that a class of this size is so numerous as to make individual joinder impracticable (if not logistically impossible), especially where members of the Class are located throughout the country.  *Cooper*, 254 F.R.D. at 634.  Plainly, the proposed Class satisfies the numerosity requirement of Rule 23(a).  *See Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 398 (D. Or. 1996); *Wehner*, 117 F.R.D. at 643; *In re Seagate Techs. Sec. Litig.*, 115 F.R.D. 264, 267 (N.D. Cal. 1987).

### 2. Questions of Law and Fact Are Common to Members of the Class

Federal Rule of Civil Procedure 23(a)(2) requires that there be questions of law or fact common to the class.  Like all the requirements of Rule 23(a), the commonality requirement is to be construed liberally:  "'[T]hose courts that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of contexts.' . . . The rule does not require all questions of law and fact to be common."  *Rodriguez v. Carlson*, 166 F.R.D. 465, 472 (E.D. Wash. 1996) (quoting *Haywood v. Barnes*, 109 F.R.D. 568, 577 (E.D.N.C. 1986));

*see also Schneider v. Traweek*, No. CV 88-0905 (Kx), 1990 U.S. Dist. LEXIS 15596 (C.D. Cal. Aug. 7, 1990).

It is well established that the commonality requirement is satisfied if the claims of the prospective class share even one central question of fact or law. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §3.10, at 3-50 (3d ed. 1992). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *see also Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705, 712 (D. Ariz. 1993) ("'A common question is one which arises from a "common nucleus of operative facts" regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants.'") (quoting *In re Asbestos Sch. Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984)).

The nature of the misrepresentations detailed in the Consolidated Complaint – the most crucial issue in a securities fraud case – presents questions of fact and law common to all members of the Class. Defendants' false statements appeared in a number of public statements disseminated to the investing public. As a result, the claims against Defendants arise out of "'shared legal issues'" and a "'common core of salient facts.'" *Cooper*, 254 F.R.D. at 634 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003)); *see also Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006) ("The commonality requirement is generally construed liberally; the existence of only a few common legal and factual issues may satisfy the requirement.").

Common questions of fact and law are clear from Plaintiffs' allegations, including: (i) whether Defendants violated the Exchange Act; (ii) whether Defendants omitted and/or misrepresented material facts; (iii) whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; (iv) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (v) whether the price of Novatel's common stock was artificially inflated; and (vi) the extent of damage sustained by class members and the appropriate measure of damages. Securities fraud complaints alleging such common questions have consistently been held to be prime

candidates for class certification. *See, e.g.*, *McPhail*, 247 F.R.D. at 609 ("class certification is appropriate where investors are 'allegedly defrauded over a period of time by similar misrepresentations'" (quoting *Blackie*, 524 F.2d at 903-04); *Verisign*, 2005 U.S. Dist. LEXIS 10438, at \*17 ("commonality 'is easily met in cases where class members all bought or sold the same stock in reliance on the same disclosures made by the same parties, even when damages vary'") (quoting Conte & Newberg, §22:21 (4th ed. 2002)); *see also Cooper*, 254 F.R.D. at 634-35; *THQ*, 2002 U.S. Dist. LEXIS 7753, at \*11-\*12.

Underlying these basic common questions is a common nucleus of operative facts pertaining to defendants' scheme to artificially inflate and maintain the price of Novatel securities, thereby deceiving the investing public and causing members of the Class to purchase Novatel's securities at inflated prices. *See generally* Consolidated Complaint. These central fact issues and their legal consequences are common to all Class members. *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 594-95 (E.D. Cal. 1999) ("A common nucleus of operative fact is typically found where 'defendants have engaged in standardized conduct toward members of the proposed class by mailing to them allegedly illegal form letters or documents.'") (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)). Indeed, courts routinely recognize that securities fraud actions alleging such a common course of conduct and based on a "fraud on the market" satisfy the commonality requirements of Fed. R. Civ. P. 23(a)(2). *See THQ, Inc.*, 2002 U.S. Dist. LEXIS 7753 (citing *Blackie*, 524 F.2d at 902); *Cirrus Logic*, 155 F.R.D. at 657. Thus, this action satisfies the commonality requirement of Fed. R. Civ. P. 23(a).

Plaintiffs allege that Defendants' public statements, press releases, and financial statements were materially misleading and did not fairly present the financial condition of the Company, thereby deceiving each purchaser as to the Company's true business condition and the value of Novatel's common stock throughout the Class Period. *Blackie*, 524 F.2d 903 n.19 ("Thus, even when unrelated misrepresentations are alleged as part of a common scheme, class members may share common factual questions, and trial in the same forum avoids duplicative proof. That is a major purpose of a class action; the 'common question' requirement should be interpreted to obtain that objective."). *See Mendoza v. Zirkle Fruit Co.*, 222 F.R.D. 439, 449 (E.D. Wash. 2004) (the

existence of a common scheme satisfies the requirement of commonality under Rule 23). These issues present quintessential "common questions" of law and fact requiring class certification.

### 3. Plaintiffs' Claims Are Typical of Those of the Class

Plaintiffs' claims satisfy the typicality requirement of Rule 23(a)(3) when they arise from the same event or course of conduct that gives rise to claims of other class members, and the claims asserted are based on the same legal theory. *See, e.g.*, *U.S. Fin. Sec. Litig.*, 69 F.R.D. at 35; *Rivera v. Bio Engineered Supplements & Nutrition*, No. SACV 07-1306 JVS (RNBx), 2008 U.S. Dist. LEXIS 95083, at *18 (C.D. Cal. Nov. 13, 2008). As one court stated:

> Plaintiffs have sufficiently demonstrated that the named class representatives' claims are typical of those of the entire "global" class because the "typicality" prerequisite of Rule 23(a)(3) is satisfied when all members of the class are victims of the same course of conduct.

*Schneider*, 1990 U.S. Dist. LEXIS 15596, at *21; *see also Schlagal v. Learning Tree Int'l*, No. CV 98-6384 ABC (Ex), 1999 U.S. Dist. LEXIS 2157, at *13 (C.D. Cal. Feb. 23, 1999) (same).

The purpose of the typicality requirement "'is to assure that the interest of the named representative aligns with the interests of the class.'" *Mazza v. Am. Honda Motor Co.*, No. CV 07-7857 VBF (JTLx), 2008 U.S. Dist. LEXIS 102429, at *15 (C.D. Cal. Dec. 16, 2008) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality 'is whether other members have the same or similar injury [as the representative], whether the action is based on conduct not unique to the [representative], and whether other class members have been injured by the same course of conduct.'" *Rivera*, 2008 U.S. Dist. LEXIS 95083, at *17 (quoting *Hanon*, 976 F.2d at 508).

Under Rule 23's "permissive standards," representative claims are considered typical if "'they are reasonably coextensive with those of absent class members.'" *Staton*, 327 F.3d at 957. "Therefore, 'differences in the amount of damages, the size or manner of [stock] purchaser, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases.'" *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *18 (S.D. Cal. Dec. 31, 2004); *see also McPhail*, 247 F.R.D. at 610 ("The need to calculate individual damages does not defeat typicality."). Moreover,

"typicality 'does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members.'" *Staton*, 327 F.3d at 957; *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

This case satisfies the typicality requirement of Rule 23(a)(3) because the claims of all class members derive from the same legal theories and allege the same set of operative facts. Plaintiffs purchased Novatel's common stock and thereby suffered damages as a consequence of Defendants' false and misleading oral and written statements. *See* Britton Decl., Exs. 2-3.[8] All members of the Class were victims of a common course of fraudulent conduct by Defendants throughout the Class Period and sustained damages as a result. Because Plaintiffs' claims arise from the same misrepresentations and omissions, Plaintiffs' claims are typical.

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class Members

Rule 23(a)(4) permits the certification of a class action when "the representative parties will fairly and adequately protect the interests of the class." The Ninth Circuit sets forth a two-prong test for this requirement: (i) "'do the named plaintiffs and their counsel have any conflicts of interest with other class members'"; and (ii) "'will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Hootkins*, 2009 U.S. Dist. LEXIS 3243, at *20 (quoting *Hanlon*, 150 F.3d at 1020). "The burden is on the defendants to prove that the representation will be inadequate." *Epitope, Inc., Sec. Litig.*, No. 92-759-RE, 1992 U.S. Dist. LEXIS 22705, at *10 (D. Or. Nov. 30, 1992).

Defendants cannot meet this burden because both prongs of the "adequacy" test have been met in this case. First, there is no antagonism between the representative Plaintiffs and the absent class members. *See Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998). Plaintiffs and all class members have suffered losses due to their purchases of Novatel common stock at artificially affected prices. They have been injured by the identical wrongful conduct of the Defendants, and it is in

---

[8] The Plumbers & Pipefitters' Local 562 Pension Fund's Novatel Wireless, Inc. stock trades and the Western Pennsylvania Electrical Employees Pension Fund's Novatel Wireless, Inc. stock trades are attached to the Britton Decl. as Exhibits 2 and 3, respectively.

Plaintiffs' interest to vigorously prosecute this action on behalf of the Class. The only possible variation in proof among class members would relate to the **amount** of damages, which alone is insufficient to defeat class certification. As the Ninth Circuit holds:

> "[T]he amount of damages is invariably an individual question and does not defeat class action treatment. [] Moreover, in this situation we are confident that should the class prevail the amount of price inflation during the period can be charted and the process of computing individual damages will be virtually a mechanical task."

*In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 529 (N.D. Cal. 2009) (quoting *Blackie*, 524 F.2d at 905)); *Cooper*, 254 F.R.D. at 639-40 ("'The Ninth Circuit in *Blackie* found that common questions of law and fact related to misrepresentations and omissions in securities fraud suits could predominate over individual discrepancies between class members regarding reliance, loss causation, and damages.'").

Furthermore, in enacting the PSLRA, Congress encouraged courts to place institutional investors (such as Plaintiffs here) in charge of securities fraud class actions. *In re Cavanaugh*, 306 F.3d 726, 737 (9th Cir. 2002). Congress favors institutional investors based on its determination that institutional investors would exercise more control over the litigation than if attorneys who filed such actions were permitted simply to select a lead plaintiff for reasons more related to the attorneys' interest in the outcome of the litigation than the plaintiff's. *See, e.g.*, *id.* at 738 ("the requirement that the plaintiff with the largest stake in the outcome of the case serve as lead plaintiff **will doubtless promote the goal of attracting institutional investors**").

Plaintiffs are exactly the type of institutional investor Congress envisioned when it drafted the PSLRA. Plaintiffs suffered significant losses as a result of Defendants' fraud and have every incentive to actively litigate this case on behalf of the Class. In fact, when appointing Plaintiffs as Lead Plaintiffs, this Court confirmed the utility in increasing the role of institutional investors like Plaintiffs in class actions and made a preliminary determination that Plaintiffs are adequate. *Backe v. Novatel Wireless, Inc.*, No. 08-CV-01689-H (RBB), 2008 U.S. Dist. LEXIS 100622, at *12 (S.D. Cal. Dec. 10, 2008) (stating that "'increasing the role of institutional investors in class actions will ultimately benefit the shareholders and assist courts by improving the quality of representation in securities class actions'") (quoting H.R. Conf. Rep. No. 104-369, at 34); *see also* 15 U.S.C. §78u-

08-CV-01689-H(RBB)

4(a)(3)(B)(i) ("the court shall . . . appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members . . . the 'most adequate plaintiff'").

Second, there can be no legitimate dispute that Plaintiffs' counsel is capable of prosecuting this litigation. Plaintiffs' counsel possesses extensive experience in the area of securities litigation and has successfully prosecuted numerous securities fraud class actions, and other complex actions, on behalf of injured investors in this District and across the country.[9] *See, e.g.*, *In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 790 (S.D. Tex. 2008) ("This Court considers Coughlin Stoia 'a lion' at the securities bar on the national level. Lead Counsel's outstanding reputation, experience, and success in securities litigation nationwide were a major reason why the Regents selected the firm."). As the court in *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007) stated:

> The quality of representation in this case was superb. Lead Counsel, Coughlin Stoia Geller Rudman & Robbins LLP, are nationally recognized leaders in complex securities litigation class actions. The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action. Lead Counsel defeated a volley of motions to dismiss, thwarting well-formed challenges from prominent and capable attorneys from six different law firms.

*Id*. at 768. Thus, the adequacy of Plaintiffs' counsel is beyond reproach. Plaintiffs, along with Lead Counsel, have shown it has and will continue to "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4).

## 5. The Proposed Class Satisfies Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), the present action also satisfies Rule 23(b)(3), which requires that the proposed class representatives establish that common questions of law or fact predominate over individual questions and that a class action is superior to other available methods of adjudication. *See LDK*, 255 F.R.D. at 525. As shown below, common questions of law and fact predominate in this case and a class action is clearly the superior, if not the only, method available to fairly and efficiently litigate this securities action.

---

[9] *See* firm resumé of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia"), attached as Ex. 4 to the Britton Decl.

### a. Common Questions of Law and Fact Predominate Over Individual Questions

Where a complaint alleges a "common course of conduct" of misrepresentations, omissions, and other wrongdoings that affect all members of the class in the same manner, common questions of both law and fact predominate. *See, e.g.*, *id*. at 530 ("Here, although class members might favor differing interpretations, for example, regarding the extent to which the October 3 report disclosed the fraud or the October 4 press release re-inflated the stock price, ***all class members are unified by an interest in proving the same common course of conduct*** regarding LDK's allegedly fraudulent inventory representations."). In assessing whether common questions predominate, this Court's inquiry should be primarily directed toward the issue of liability. *See, e.g.*, *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008) ("Although the damages, if any, owed to each individual class plaintiff who succeeds on his or her claims will vary, ***that fact does not defeat certification if the method of calculating damages is common to the class***."); *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1343 (N.D. Ga. 2007) ("In this case, the Court finds that individual damages issues do not preclude certification. . . . ***Plaintiffs will offer common proof on issues of liability***. . . .").

As discussed above, there are a host of common questions of law and fact. These questions clearly predominate over individual questions because Defendants' alleged conduct affected all class members in the same manner and, through false and/or misleading statements, artificially affected the price of Novatel common stock. *See, e.g.*, *Cooper*, 254 F.R.D. at 632 ("This case also fulfills Federal Rule of Civil Procedure 23(b)(3)'s requirements. The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages."). In fact, one would be hard pressed to find any issues relating to Defendants' liability that are not common to all members of the Class. *Id.*; *see also LDK*, 255 F.R.D. at 530; *Emulex*, 210 F.R.D. at 721 ("The predominant questions of law or fact at issue in this case are the alleged misrepresentation Defendants made during the Class Period and are common to the class."). Once these common questions are resolved, all that will remain is the purely mechanical act of computing the amount of damages suffered by each class member. *Lapin*,

254 F.R.D. at 181; *see also In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 542 (E.D. Va. 2006) ("Damages are less central to the predominance inquiry; courts generally hold that 'differences in damages among the potential class members do not generally defeat predominance if liability is common to the class.'").

In contrast, there are no significant (let alone predominate) individual issues, even with respect to issues such as reliance. Plaintiffs' claims under §10(b) of the Exchange Act are entitled to a presumption of reliance as Novatel's stock traded in an efficient market. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988); *see also No. 84 Employee-Teamster Joint Council Pension Trust Fund v. Am. West*, 320 F.3d 920, 934 n.12, 947 (9th Cir. 2003); *LDK*, 255 F.R.D. at 526; *Cooper*, 254 F.R.D. at 639; *In re Micron Techs., Inc.*, 247 F.R.D. 627, 633 (D. Idaho 2007). Although a motion for class certification is "an inappropriate forum" for a factual determination regarding the efficiency or inefficiency of the market during the Class Period, Plaintiffs can adequately demonstrate market efficiency. *In re Applied Micro Circuits Corp. Sec. Litig.*, No. 01-CV-0649 K (AJB), 2003 U.S. Dist. LEXIS 14492, at *12 (S.D. Cal. July 15, 2003); *cf. Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.*, No. C 01-20418 JW, 2004 U.S. Dist. LEXIS 27008, at *16 (N.D. Cal. May 27, 2004) ("It is enough at this stage of the litigation that Plaintiffs have made essentially a *prima facie* showing that the market was efficient during the relevant period. . . .  The clash of expert opinions is more appropriately decided at a later juncture in the proceedings.").

In *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999), the Ninth Circuit adopted the non-exclusive five factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989), to evaluate market efficiency:

> [F]irst, whether the stock trades at a high weekly volume; second, whether securities analysts follow and report on the stock; third, whether the stock has market makers and arbitrageurs; fourth, whether the company is eligible to file SEC registration from S-3, as opposed to form S-1 or S-2; and fifth, whether there are "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price.

*Binder*, 184 F.3d at 1065.

The market for Novatel stock was efficient during the Class Period, as nearly all of the *Cammer* factors are met:

- **High Weekly Volume**. Since November 2000, Novatel's stock has been listed and actively traded on the NASDAQ National Market, a highly efficient and automated market. Steinholt Decl., ¶11. Novatel's average weekly turnover averaged 20%. *Id.*, ¶15. This volume of trading creates a strong presumption of efficiency. *Cammer*, 711 F. Supp. at 1286.[10]

- **Securities Analysts**. During the Class Period, Novatel was followed by at least 18 financial analysts. Steinholt Decl., ¶16. This coverage is sufficient to establish market efficiency. *See, e.g.*, *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 499 (S.D. Fla. 2003) (coverage by two analysts and news media sufficient); *Blatt*, 2002 U.S. Dist. LEXIS 18466, at *47 (coverage by one analyst sufficient).

- **Market Makers and Arbitrageurs**. During the Class Period, there were 59 different market makers in Novatel stock (Steinholt Decl., ¶17), the short interest, often used as an investment device by arbitrageurs, ranged from 5.47 million shares to more than 12.7 million shares (*id.*, ¶18), and reporting institutions owned from 30.78 million shares to 40.82 million shares (*id.*, ¶20).

- **S-3 Registration Statements and SEC Filings**. Novatel went public in 2000 and its market capitalization exceeded $10 million throughout the entire Class Period. It was therefore eligible to file on Form S-3 during the Class Period. Steinholt Decl., ¶21.

- **The Reaction of Novatel's Stock Price**. As reflected in the event study prepared by Mr. Steinholt, Novatel's stock price reacted quickly to new, material information. Steinholt Decl., ¶¶22-24. It jumped 6.6% on May 2, 2007 and 6.2% on August 7, 2007, in response to Hansen's positive public announcements (*id.*, ¶¶32-36) and fell 4.7% on July 20, 2007 and February 21, 2008, 22% on April 15, 2008 and 25% on August 20, 2008, in response to the negative public announcements alleged in the Consolidated Complaint. *Id.*, ¶¶39-53.

- **Cause and Effect Relationship**. As established in the Steinholt Declaration, there was a statistically significant price increase in response to positive announcements by the Company during the Class Period (Steinholt Decl., ¶¶32-36) and statistically significant price declines in response to negative announcements by the Company during the Class Period (*id.*, ¶¶37-54).

Because Plaintiffs have alleged a continuous course of conduct, the fact that different members of the Class may have invested at different times and may have been exposed to different misrepresentations and/or omissions committed by Defendants, does not preclude a finding that common issues predominate. *Blackie*, 524 F.2d at 902 ("Confronted with a class of purchasers

---

[10]     *See also Blatt v. Muse Techs., Inc.*, No. 01-11010-DPW, 2002 U.S. Dist. LEXIS 18466, at *46 (D. Mass. Aug. 27, 2002) (1.8% sufficient); *Simpson v. Specialty Retail Concepts, Inc.*, 823 F. Supp. 353, 355 (M.D.N.C. 1993) (0.75% sufficient).

allegedly defrauded over a period of time by similar misrepresentations, ***courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit***."); *In re Magma Design Automation Sec. Litig.*, No. C 05-2394 CRB, 2007 U.S. Dist. LEXIS 62641, at *7 (N.D. Cal. Aug. 16, 2007) ("To the extent that any difference exists among shareholders in terms of their actual reliance on the alleged misrepresentations, or the damages they suffered as a result of that reliance, such issues may be addressed during subsequent phases of the trial.").

In sum, Plaintiffs have sufficiently demonstrated that the market for Novatel's common stock during the Class Period was open, well developed and efficient, and, consequently, the market price of the Company's common stock during this time period reflected the publicly available information concerning Novatel. Accordingly, Plaintiffs' claims under §10(b) of the Exchange Act are entitled to a presumption of "fraud-on-the-market" reliance.

### b. Loss Causation Is Not a Proper Inquiry at Class Certification

Defendants will likely assert that this action cannot be certified because Plaintiffs cannot show loss causation on a common basis throughout the Class Period. The argument is baseless. First, as courts in this Circuit have recognized, any attempt to resolve loss causation at the class certification stage is improper. *See, e.g.*, *LDK*, 255 F.R.D. at 530; *Cooper*, 254 F.R.D. at 641; *Micron*, 247 F.R.D. at 633-34. Second, any inquiry at class certification as to loss causation should only involve the determination of whether any individual issues predominate when identifying the losses associated with the class; not whether Plaintiffs have sufficiently established loss causation. *Id*. Here, all class members suffered similar injury through their purchase of the Company's common stock at artificially inflated prices. As established in the Declaration of Bjorn Steinholt, Novatel's stock price declined when the relevant truth was revealed on July 20, 2007, February 20, 2008, April 14, 2008, and August 19, 2008, causing class members to suffer economic damages as a result of the alleged fraud. Steinholt Decl., ¶¶37-54. On each date, there was a statistically significant price change in response to the negative news, which was in direct response to the fraud

alleged in the Consolidated Complaint. Steinholt Decl., ¶¶40, 49, 53. And the 5.2% stock price decline on November 11, 2008 was greater than expected and declined more than the 2.2% for both the NASDAQ Composite Index and the NASDAQ Telecom Index, and moved opposite of the 3.5% increase for Novatel's closest competitor Sierra Wireless, which is consistent with Plaintiffs' allegations that the new information about Novatel's internal controls disclosed on November 10, 2008 damaged investors. Steinholt Decl., Ex. D at 397-98. As such, any forthcoming challenge as to loss causation should be rejected.

### c. A Class Action Is Superior to Other Available Methods for Resolving This Controversy

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving a large number of purchasers of securities injured by violations of the securities laws. "[A] class action is clearly the preferred mechanism for adjudicating these [securities fraud] cases." *In re DJ Orthopedics, Inc.*, No. 01-CV-2238-K (RBB), 2003 U.S. Dist. LEXIS 21534, at *29 (S.D. Cal. Nov. 17, 2003); *see also McPhail*, 247 F.R.D. at 615 ("the Ninth Circuit has stated a preference for resolving securities claims via class action as a means of deterring fraud"); *Cooper*, 254 F.R.D. at 632 ("[A]djudicating this matter as a class action is a superior method to resolve the parties' controversy because it avoids not only the dangers of duplicate discovery and trials, but also the unfairness of inconsistent findings and judgments. ***As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'*** *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995)."). Here, class certification is both useful and necessary and the class action device offers judicial efficiencies because it permits common claims and issues to be tried only once, with binding effect on all parties. And as to class actions involving claims of securities fraud, "'it has been suggested that the ultimate effectiveness of the federal remedies in this area may depend in large measure on the applicability of the class action device.'" *Cooper*, 254 F.R.D. at 642; *see also Blackie*, 524 F.2d at 903.

To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for the court to consider:

> (A) [T]he interest of members of the class in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). Each of these factors is satisfied in this case. The number of class members is far too numerous and the typical claim is too small for each individual class member to maintain a separate action. *See DJ Orthopedics*, 2003 U.S. Dist. LEXIS 21534, at *29. As the Ninth Circuit stated in *Epstein*, "it is difficult to imagine a case where class certification would be more appropriate. Without it, thousands of identical complaints by former . . . shareholders would have to be filed – the very result the class action mechanism was designed to avoid." 50 F.3d at 668.

Further, the nationwide geographical dispersion of the class members, based upon Novatel's sale of the stock on a national exchange, makes it desirable that litigation of the claims involved be concentrated in this forum. *See Cooper*, 254 F.R.D. at 634 ("Joinder of more than a thousand plaintiffs would be impracticable."); *Alco*, 158 F.R.D. at 153-54 (same).

Finally, Plaintiffs can foresee no management difficulties which would preclude this action from being maintained as a class action and are confident that any potential management problems can be addressed and resolved by the parties or by the Court. In any event, possible management problems are not, standing alone, grounds for denying this motion. *Magma Design*, 2007 U.S. Dist. LEXIS 62641, at *3; *In re Sugar Indus. Antitrust Litig.*, MDL No. 201, 1976 U.S. Dist. LEXIS 14955, at *75 (N.D. Cal. May 21, 1976).

# IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request entry of an order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23 and appointing Plaintiffs as class representatives.

DATED: January 11, 2010

Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DOUGLAS R. BRITTON
LUCAS F. OLTS
ERIC I. NIEHAUS
COTY R. MILLER


              s/ DOUGLAS R. BRITTON
                DOUGLAS R. BRITTON

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

CAVANAGH & O'HARA
PATRICK O'HARA
407 East Adams Street
Springfield, IL  62701
Telephone:  217/544-1771
217/544-9894 (fax)

DYER & BERENS LLP
ROBERT J. DYER III
JEFFREY A. BERENS
303 East 17th Avenue, Suite 300
Denver, CO  80203
Telephone:  303/861-1764
303/395-0393 (fax)

HOLZER HOLZER & FISTEL, LLC
COREY D. HOLZER
MICHAEL I. FISTEL, JR.
MARSHALL P. DEES
200 Ashford Center North, Suite 300
Atlanta, GA  30338
Telephone:  770/392-0090
770/392-0029 (fax)

Additional Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 11, 2010.

 s/ DOUGLAS R. BRITTON
DOUGLAS R. BRITTON

COUGHLIN STOIA GELLER
        RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dougb@csgrr.com

# Mailing Information for a Case 3:08-cv-01689-H-RBB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Travis Biffar**
  tbiffar@jonesday.com,fswallace@jonesday.com

- **Douglas R Britton**
  DougB@csgrr.com,ldeem@csgrr.com

- **Marshall P. Dees**
  mdees@holzerlaw.com

- **Michael I. Fistel , Jr**
  mfistel@holzerlaw.com,dhotnog@holzerlaw.com

- **Lionel Z Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Michael M Goldberg**
  mgoldberg@glancylaw.com,info@glancylaw.com

- **Sabrina S. Kim**
  skim@milberg.com,mbowman@milberg.com,cchaffins@milberg.com

- **Eric Landau**
  elandau@jonesday.com,kamarkwick@jonesday.com

- **Coty Rae Miller**
  cmiller@csgrr.com,e_file_sd@csgrr.com

- **Matthew P Montgomery**
  e_file_sd@csgrr.com

- **Eric I Niehaus**
  EricN@csgrr.com,ericniehaus@hotmail.com

- **Brian O O'Mara**
  bo'mara@csgrr.com,e_file_sd@csgrr.com

- **Lucas F. Olts**
  lolts@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)