1  ROBBINS GELLER RUDMAN
    & DOWD LLP
2  DOUGLAS R. BRITTON (188769)
   LUCAS F. OLTS (234843)
3  ERIC I. NIEHAUS (239023)
   COTY R. MILLER (255703)
4  655 West Broadway, Suite 1900
   San Diego, CA  92101
5  Telephone:  619/231-1058
   619/231-7423 (fax)
6  dougb@rgrdlaw.com
   lolts@rgrdlaw.com
7  ericn@rgrdlaw.com
   cmiller@rgrdlaw.com
8
   Lead Counsel for Plaintiffs
9
   [Additional counsel appear on signature page.]
10

                  UNITED STATES DISTRICT COURT
11
               SOUTHERN DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| MAUREEN BACKE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| NOVATEL WIRELESS, INC., et al., | ) ) ) |
| Defendants. | ) ) ) |
| | ) |

Lead Case No. 08-CV-01689-H(RBB)

(**Consolidated**)

<u>CLASS ACTION</u>

LEAD PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

DATE:    April 26, 2010
TIME:    10:30 a.m.
PLACE:  Courtroom 13
             The Honorable Marilyn L. Huff

**REDACTED**

1

**TABLE OF CONTENTS**

2

**Page**

3   I.   INTRODUCTION .................................................................................................1

4   II.  ARGUMENT ......................................................................................................2

5        A.   Subclasses Are Inappropriate..................................................................2

6        B.   Lead Plaintiffs Are Adequate Representatives and Their Claims Are
              Typical of the Class ...............................................................................4
7
8             1.   Lead Plaintiffs' Post-Disclosure Stock Purchases Do Not Render
                   Them Atypical ...........................................................................4

9             2.   Monitoring Agreements Are Indicia of Adequacy .......................5

10            3.   Lead Plaintiffs Demonstrated Their Adequacy............................7

11       C.   Lead Plaintiffs Have Standing to Assert Insider Trading Claims...........10

12       D.   The Fraud on the Market Presumption Applies to the July 20, 2007
              Disclosure ...........................................................................................12
13
         E.   The Court Should Not Alter the Length of the Class Period ................14
14
     III. CONCLUSION.................................................................................................15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2
**Page**

3 **CASES**

4 *Andrews Farms v. Calcot, Ltd.,*
    No. CV-F-07-0464 LJO DLB, 2009 U.S. Dist. LEXIS 41501
5   (E.D. Cal. Apr. 30, 2009) ..................................................................12

6 *Brody v. Transitional Hosps. Corp.,*
    280 F.3d 997 (9th Cir. 2002) ..................................................10, 11
7

8 *City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*,
    No. C 07-05111 CW, 2009 U.S. Dist. LEXIS 33339
9   (N.D. Cal. Apr. 6, 2009) ..................................................................11, 12

10 *Conn. Ret. Plans & Trust Funds v. Amgen, Inc.,*
    No. CV 07-2536 PSG (PLAx), 2009 U.S. Dist. LEXIS 71653
11  (C.D. Cal. Aug. 12, 2009) ..................................................................12, 14

12 *Dorchester Investors v. Peak TrENDS Trust,*
    No. 99 Civ. 4696 (LMM), 2002 U.S. Dist. LEXIS 3067
13  (S.D.N.Y. Feb. 26, 2002) ..................................................................14

14 *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130,*
15  657 F.2d 890 (7th Cir. 1981) ..................................................................1

16 *Feldman v. Motorola, Inc.,*
    No. 90 C 5887, 1994 U.S. Dist. LEXIS 14809
17  (N.D. Ill. Oct. 18, 1994) ..................................................................3

18 *Freeland v. Iridium World Commc'ns, Ltd.,*
19  233 F.R.D. 40 (D.D.C. 2006) ..................................................................14

20 *Froid v. Berner,*
21  649 F. Supp. 1418 (D.N.J. 1986) ..................................................................11

22 *Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ..................................................................5
23

24 *In re Adobe Sys., Inc. Sec. Litig.,*
    139 F.R.D. 150 (N.D. Cal. 1991) ..................................................................5

25 *In re Am. Int'l Group, Inc. Sec. Litig.,*
    No. 04 Civ. 8141 (DAB), 2010 U.S. Dist. LEXIS 15453
26  (S.D.N.Y. Feb. 22, 2010) ..................................................................13

27

28

1

2                                                                                            **Page**

3  *In re Am. Italian Pasta Co. Sec. Litig.*,
       No. 05-0725-CV-W-ODS, 2007 U.S. Dist. LEXIS 21365
4      (W.D. Mo. Mar. 26, 2007) ...................................................................................5, 6

5  *In re Applied Micro Circuits Corp. Sec. Litig.*,
       No. 01CV0649 K (AJB), 2003 U.S. Dist. LEXIS 14492
6      (S.D. Cal. July 15, 2003)...........................................................................................2

7  *In re BearingPoint, Inc. Sec. Litig.*,
8      232 F.R.D. 534 (E.D. Va. 2006) ...............................................................................5

9  *In re Cendant Corp. Litig.*,
       264 F.3d 201 (3d Cir. 2001).......................................................................................7
10

11 *In re CMS Energy Sec. Litig.*,
       236 F.R.D. 338 (E.D. Mich. 2006) ..........................................................................14
12

13 *In re Connetics Corp. Sec. Litig.*,
       257 F.R.D. 572 (N.D. Cal. 2009).................................................................2, 5, 13

14 *In re Connetics Corp. Sec. Litig.*,
       No. C 07-02940 SI, 2008 U.S. Dist LEXIS 62515
15     (N.D. Cal. Aug. 14, 2008)........................................................................................12

16 *In re Cooper Cos. Sec. Litig.*,
17     254 F.R.D. 628 (C.D. Cal. 2009)..........................................................................5, 15

18 *In re Countrywide Fin. Corp. Sec. Litig.*,
       588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..................................................................12
19

20 *In re Cypress Semiconductor Sec. Litig.*,
       836 F. Supp. 711 (N.D. Cal. 1993) ..........................................................................11

21 *In re Emulex Corp.*,
22     210 F.R.D. 717 (C.D. Cal. 2002)...............................................................................5

23 *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
       529 F. Supp. 2d 644 (S.D. Tex. 2006) ...................................................................2, 3
24

25 *In re Ins. Brokerage Antitrust Litig.*,
       579 F.3d 241 (3d Cir. 2009)........................................................................................2

26 *In re Interpublic Sec. Litig.*,
       No. 02 CIV. 6527 (DLC), 2003 U.S. Dist. LEXIS 19784
27     (S.D.N.Y. Nov. 7, 2003) ..........................................................................................14

28

1

2                                                                                    **Page**

3   *In re LDK Solar Sec. Litig.*,
        255 F.R.D. 519 (N.D. Cal. 2009) ................................................................13, 15
4

5   *In re Micron Techs., Inc.*,
        247 F.R.D. 627 (D. Idaho 2007) ..................................................................13

6   *In re MicroStrategy Inc. Sec. Litig.*,
        115 F. Supp. 2d 620 (E.D. Va. 2000) ..........................................................10
7

8   *In re Nature's Sunshine Prods. Inc. Sec. Litig.*,
        251 F.R.D. 656 (D. Utah 2008) .....................................................................7
9

10  *In re NeoPharm, Inc. Sec. Litig.*,
        225 F.R.D. 563 (N.D. Ill. 2004) ............................................................5, 6, 7

11
    *In re Petco Animal Supplies Inc. Sec. Litig.*,
12      No. 05-CV-0823-H (RBB), 2006 U.S. Dist. LEXIS 97927
        (S.D. Cal. July 31, 2006) ...................................................................10, 11, 12
13

14  *In re Pilgrim Sec. Litig.*,
        No. CV 94-8491-KN, 1996 WL 742448
15      (C.D. Cal. Jan. 23, 1996) ...............................................................................5

16  *In re Providian Fin. Corp. Sec. Litig.*,
        No. C 01-03952 CRB, 2004 U.S. Dist. LEXIS 31107
17      (N.D. Cal. Jan. 15, 2004) ...............................................................................5

18  *In re Silicon Graphics Sec. Litig.*,
        970 F. Supp. 746 (N.D. Cal. 1997) ..............................................................11
19

20  *In re Swift Transp. Co., Sec. Litig.*,
        No. CV 04-2435-PHX-NVW, 2006 U.S. Dist. LEXIS 47475
21      (D. Ariz. Mar. 29, 2006) ..............................................................................15

22  *In re Theragenics Corp. Sec. Litig.*,
        205 F.R.D. 687 (N.D. Ga. 2002) ..................................................................10
23

24  *In re Victor Techs. Sec. Litig.*,
        102 F.R.D. 53 (N.D. Cal. 1984), *aff'd*,
25      792 F.2d 862 (9th Cir. 1986) ........................................................................14

26  *In re WorldCom, Inc. Sec. Litig.*,
        219 F.R.D. 267 (S.D.N.Y. 2003) ...................................................................6

27

28

**Page**

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset*
    *Servicing & Securitization, LLC,*
    616 F. Supp. 2d 461 (S.D.N.Y. 2009)...............................................................................6

*Johnson v. Aljian,*
    257 F.R.D. 587 (C.D. Cal. 2009)......................................................................7, 10, 11, 12

*Lehocky v. Tidel Techs., Inc.,*
    220 F.R.D. 491 (S.D. Tex. 2004).......................................................................................3

*Marsden v. Select Med. Corp.,*
    246 F.R.D. 480 (E.D. Pa. 2007).......................................................................................10

*Mendoza v. United States,*
    623 F.2d 1338 (9th Cir. 1980) ...........................................................................................2

*Middlesex Ret. Sys. v. Quest Software, Inc.,*
    No. CV 06-6863 DOC (RNBx), 2008 U.S. Dist. LEXIS 68419
    (C.D. Cal. July 10, 2008) .........................................................................................11, 12

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993) ...................................................................................10, 11, 12

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.,*
    No. C 01-20418 JW, 2004 U.S. Dist. LEXIS 27008
    (N.D. Cal. May 27, 2004) ..............................................................................................6, 7

*Rolex Employees Ret. Trust v. Mentor Graphics Corp.,*
    136 F.R.D. 658 (D. Or. 1991)............................................................................................5

*Silverman v. Motorola, Inc.,*
    259 F.R.D. 163 (N.D. Ill. 2009)......................................................................................6, 7

*Schaffer v. Timberland Co.,*
    No. 94-634-JD, 1996 U.S. Dist. LEXIS 5372
    (D.N.H. Mar. 19, 1996)....................................................................................................14

*Stuart v. Radioshack Corp.,*
    No. C-07-4499 EMC, 2009 U.S. Dist. LEXIS 12337
    (N.D. Cal. Feb. 5, 2009)....................................................................................................9

*Wixon v. Wyndham Resort Dev. Corp.,*
    No. C 07-02361 JSW, 2009 U.S. Dist. LEXIS 100451
    (N.D. Cal. Oct. 19, 2009)...................................................................................................9

1

2                                                                              **Page**

3    **STATUTES, RULES AND REGULATIONS**

4    Federal Rules of Civil Procedure
5           Rule 23 ........................................................................................................7, 13
            Rule 23(a)(4) ........................................................................................................6
6
    15 U.S.C.
7           §78j(b) ........................................................................................................3
            §78t-1 ........................................................................................................3
8
    17 C.F.R.
9           §240.10b-5 ........................................................................................................3

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

"[I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified.  When it comes, for instance, to determining whether 'the representative parties will fairly and adequately protect the interests of the class,' . . . it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house."  *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).[1]  These findings clearly apply to this case.

The very individuals that misled the market about the state of Novatel Wireless, Inc.'s ("Novatel" or the "Company") business and sold their stock with knowledge that Sprint had cancelled Novatel's most popular modem and was losing market share have now come forward with fingers pointed at Lead Plaintiffs and their expert claiming "inadequacy" and "cheat[ing]."  But internal documents show that defendants were the ones doing the "cheating."  Indeed, what was described to the market as a "transition" at Sprint (and to this Court as a "false" rumor) was characterized internally as a far different turn of events:

- ████████████████████████████████████████████

- May 24, 2007 – "THIS IS KILLING ME!  And I am about to return the favor!!!!  We cannot loose all of our SPRINT business.   I made this clear in January didn't I??????"

- June 4, 2007 – "How we can go from #1 to #NOTHING at Sprint is beyond my ability to comprehend."

Exs. 1-4.  ***Every*** defendant either began selling, or dramatically increased their sales, within ***one week*** of receiving this devastating information and pursuant to plans that were adopted or amended ***with direct knowledge of it***.  And as will be shown herein, discovery to date has revealed that plaintiffs' allegations about the Sprint cancellation, Novatel's loss of market share, and Novatel

---

[1]    All citation and footnotes are omitted and emphasis is added, all "Ex." references are to exhibits to the Declaration of Douglas R. Britton, filed herewith, and all references to "¶_" or "¶¶_" are to the operative complaint, unless otherwise noted.

1   stuffing the channel and shipping product early to mislead investors could not have been more

2   accurate if they were sitting at a table at Novatel.

3        To avoid clear liability, defendants' opposition advances a host of arguments that are

4   factually and legally baseless.  It also ignores settled case law and invites the Court to resolve factual

5   disputes to deny certification based on defendants' view of the ***allegations***.  While plaintiffs are

6   confident that those disputes would be resolved in their favor based on the ***evidence*** gathered to date

7   (and discuss why herein), defendants' arguments must await a later stage of the proceedings.

8   Indeed, given the evidence produced to date, plaintiffs submit that these factual disputes can only be

9   resolved at trial.  Plaintiffs' motion should be granted.

10  **II.   ARGUMENT**

11       **A.   Subclasses Are Inappropriate**

12       There is no need to certify a separate subclass of insider trading claims.  Defendants'

13  Opposition ("Defs' Opp.) at 6.  Certification of subclasses is only necessary when there is a potential

14  or actual conflict between the interests of class members.  *Mendoza v. United States*, 623 F.2d 1338,

15  1350 (9th Cir. 1980) ("It is appropriate to invoke subclassification when there are or may be

16  divergent views among class members and when the Court believes that subclasses would materially

17  improve the presentation of all relevant considerations."); *In re Ins. Brokerage Antitrust Litig.*, 579

18  F.3d 241, 272 (3d Cir. 2009).

19       Here, there is no potential conflict between class members that would require

20  subclassification.  Defendants claim there are "fundamental differences" between plaintiffs' insider

21  trading and misrepresentation claims, but fail to articulate how these slight differences create a

22  potential conflict between class members.  Defs' Opp. at 6.  This failure is not surprising, as courts

23  routinely certify single classes asserting both insider trading and misrepresentation claims.  *See In re*

24  *Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 699 (S.D. Tex. 2006)

25  (certifying a single class because "[t]he [insider trading] claims are factually based on the same

26  alleged patterns of fraud [as the 10(b) claims]"); *In re Applied Micro Circuits Corp. Sec. Litig.*, No.

27  01CV0649 K (AJB), 2003 U.S. Dist. LEXIS 14492, at *16-*17 (S.D. Cal. July 15, 2003) (same).

28  Creation of a subclass would also unnecessarily complicate the litigation.  *In re Connetics Corp. Sec.*

1   *Litig.*, 257 F.R.D. 572, 579 (N.D. Cal. 2009) ("[d]efendants' proposal complicates the case by

2   requiring analysis of a [sub]class that would overlap with the accounting fraud class").[2]

3        Here, plaintiffs' insider trading claims are based on the same "patterns of fraud" as the

4   misrepresentation claims. *Enron*, 529 F. Supp. 2d at 699. The evidence now shows that defendants

5   absolutely knew about Sprint's decision (***and that it was a cancellation***) as early as ***January 8,***

6   ***2007***, and that it was a direct reflection of the "competitive challenges" that defendants were

7   expecting as early as December 2006. Exs. 1-5. On January 8, 2007, Sprint notified defendants that

8   their plan at Sprint was "to replace the U720 with the Sierra ex595" because, as Novatel put it,

9   ████████████████████████████████████████████ Exs. 1, 6. Novatel lost out at

10  Sprint exactly for the reason alleged in the complaint – the market was shifting to a cheaper modem:

11  "Sprint will not be ordering any additional U720 units. JR reports that ***this is due to a pricing issue***,

12  and Novatel lost out to another vendor." Exs. 7-8. In fact, Novatel's CFO notified defendants as

13  early as December 18, 2006 that "***competitive challenges loom[ed] ahead***" in 2007. Ex. 5.[3]

14       Far from a stand-alone claim, the Sprint cancellation was a reflection of what defendants

15  were concealing from investors – Novatel's competitive downfall. As alleged, Novatel was

16

17  [2]    This Court previously certified a single class of §§10(b) and 20A claims in *In re Petco Corp. Sec. Litig.*, in which the defendants stipulated to certification of a single class. Ex. 9; *see also*

18  *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 499 (S.D. Tex. 2004) ("no section 20A subclass is needed because section 10(b)/Rule 10b-5 and 20A contain overlapping elements, which may be

19  proved by the same alleged material omissions and scienter"). Defendants' authority holds only that subclassification may be necessary when none of the proposed class representatives have standing to

20  pursue a claim, which is not the case here. *See* §II.C., *supra*; Defs' Opp. at 7. The court in *Feldman v. Motorola, Inc.*, No. 90 C 5887, 1994 U.S. Dist. LEXIS 14809 (N.D. Ill. Oct. 18, 1994), did not

21  even address the issue of subclassification, saying only that it "may" be necessary to create subclasses ***in the future***. *Id* at *4 n.2; Defs' Opp. at 7.

22  [3]    This evidence dispenses with defendants' contention that a subclass "cannot begin until

23  May 18, 2007" and that plaintiffs do not challenge the validity of 10b5-1 plans adopted in December 2006. Defs' Opp. at 18. Similarly, defendants' claim that the U720 termination was known to the

24  market on July 18, 2007 is contradicted by the evidence. *Id*. at 19. The market did not learn of the information until a JMP analyst report was "able ***to confirm*** that Sprint is discontinuing the very

25  popular Novatel U720 modem." Ex. 10; Ex. 11 at 25:22-26:10. It was not until the JMP report surfaced that market participants responded to the news. Ex. 11 at 21:5-10 ("Q: Anyone call you and

26  ask you about [the Sprint cancellation after your July 20 report]? A. Yes. Q. Who? A. A lot of buyside portfolio managers and analysts."), 137:11-138:13 (discussing the fact that one of Anthony

27  Stoss' largest clients demanded to speak with Novatel management after hearing about the Sprint cancellation on July 20).

28

514440_2

       08-CV-01689-H(RBB)

1  dismissed as a potential candidate for Sprint's WiMAX platform (Ex. 12) (previous claims of

2  Novatel not being in the WiMAX business were not true) and defendants stuffed the channel and

3  shipped product prematurely to create the appearance of a growing business – *a practice*

4  *exacerbated by Sprint's cancellation*. ████████████████████████████████████████

5  ████████████████████████ (Ex. 13) and pulled in shipments from future quarters to make

6  their projected results. Ex. 14 ("*[p]ull OCT shipments into Sept.*" at Sprint; "*[r]eceive written*

7  *approval to ship 15K of Oct volume in Sept.*" at Verizon"); *id.* (Sprint is "looking to do us a favor

8  [in Q3] without the 'hard' grab at the ankles I believe."). In fact, defendants' end of quarter

9  practices were so routine that they were "'agitat[ing]'" Sprint who was "growing weary of our end-

10  of-quarter waiver requests." Ex. 15. In 4Q, they asked Sony to "accept[] Pull in Shipments to

11  December 07" and even agreed "*to send [product] to LG for re-work/re-packaging*" after

12  recognizing revenue where Novatel employees were warned "***not to ship empty cartons*** even if LG

13  could not prepare the full amounts" because an "inspection by Custom[s] is likely to happen."

14  Ex. 16 at 0368786-87. As a result of "*Sony's pull in favors [in Q4]*," Novatel was forced to write-

15  off $250,000 in legitimate revenue in 1Q08. Ex. 17 at 0170949-50.

16      Defendants engaged in a related pattern of fraudulent conduct that damaged all class

17  members alike. The Court should not create any subclasses.

18      **B.    Lead Plaintiffs Are Adequate Representatives and Their Claims Are Typical of the Class**

19

20      **1.    Lead Plaintiffs' Post-Disclosure Stock Purchases Do Not Render Them Atypical**

21      Defendants contend that Lead Plaintiffs' claims are atypical because they purchased stock

22  after Novatel's fraud became public. Defs' Opp. at 7-8. Not so. Plaintiffs here purchased stock

23  after **partial** disclosures where defendants simultaneously offset the negative information with

24  misleading claims about the state of Novatel's business. *Compare* Ex. 22 *with* ¶16 (July 20, 2007 –

25  Sprint cancellation was a "transition" with no loss of market share); ¶70 (February 20, 2008 –

26  Market shift "is a positive move that increases our addressable market."); ¶79 (May 13, 2008 – we

27  "do not expect any change to the accounting under that contract, or to any previously reported

28  financial statements"). Regardless, the Ninth Circuit has made it clear that the defense of non-

1    reliance is **not** a basis for the denial of class certification.  *In re Cooper Cos. Sec. Litig.*, 254 F.R.D.

2    628, 637 n.2 (C.D. Cal. 2009) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.

3    1992)).[4]

4           Ninth Circuit case law is also clear that a plaintiff is **not** atypical if it buys stock after a

5    disclosure of the alleged fraud.  *See, e.g.*, *Connetics*, 257 F.R.D. at 577 ("Even if lead plaintiff is

6    revealed to be the only class member that bought additional stocks after the disclosures, defendants

7    have not established that this issue 'threaten[s] to become the focus of the litigation' . . . or that lead

8    plaintiff was not relying on the integrity of the market when it made its purchases."); *In re Emulex*

9    *Corp.*, 210 F.R.D. 717, 719 (C.D. Cal. 2002) (plaintiff who bought stock after alleged disclosures

10   satisfied the typicality requirement); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 155 (N.D.

11   Cal. 1991); *In re Providian Fin. Corp. Sec. Litig.*, No. C 01-03952 CRB, 2004 U.S. Dist. LEXIS

12   31107, at *13-*17 (N.D. Cal. Jan. 15, 2004); *In re Pilgrim Sec. Litig.*, No. CV 94-8491-KN, 1996

13   WL 742448, at *5 (C.D. Cal. Jan. 23, 1996).[5]

14          ## 2.    Monitoring Agreements Are Indicia of Adequacy

15          "[G]iven the extensive investments inherent in the operation of a pension fund," district

16   courts are "not surprised" when a pension fund – like Lead Plaintiffs here – has "arranged for a law

17   firm to keep it apprised of events (including lawsuits) that might be of interest."  *In re Am. Italian*

18   *Pasta Co. Sec. Litig.*, No. 05-0725-CV-W-ODS, 2007 U.S. Dist. LEXIS 21365, at *22-*23 (W.D.

19   ─────────────────────

20   [4]      The argument that Lead Plaintiffs cannot rely on the integrity of the market price because

21   they hired investment managers (Defs' Opp. at 7 n.3) is inconsistent with Congress' stated desire for
     institutional investors to serve as representatives.  *In re NeoPharm, Inc. Sec. Litig.*, 225 F.R.D. 563,

22   567 (N.D. Ill. 2004) (denying certification "merely because [an institution] delegated investment
     responsibilities to [an investment] manager would appear [to] be in tension with the PSLRA").  And

23   defendants' speculation about what Lead Plaintiffs "undoubtedly" would have done comes nowhere
     close to defeating typicality.  *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 541 (E.D. Va.

24   2006) ("speculative conflicts of interest do not preclude" a finding of adequacy).

25   [5]      Defendants' out of Circuit authority is contradicted by the Ninth Circuit's holding in *Hanon*
     that non-reliance is not a basis for denial of class certification.  Defs' Opp. at 7-8.  Indeed, the only

26   decision defendants cite within the Ninth Circuit, *Rolex Employees Ret. Trust v. Mentor Graphics*
     *Corp.*, 136 F.R.D. 658 (D. Or. 1991), **predates the Hanon decision**.  Defendants' authority is also

27   factually inapposite.  Defs' Opp. at 7-8.  In each case, the plaintiff had purchased stock after the
     fraud was ultimately disclosed to the market.  *Id.*  The same is not true here.

28

1   Mo. Mar. 26, 2007).  "Arguably, a pension fund's failure to take steps to be aware of existing or

2   prospective litigation that affects its investments would be an abdication of duty."  *Id.* at \*22.  This is

3   why district courts consistently hold that "***[n]othing*** about these circumstances renders [a pension

4   fund] inadequate as a class representative."  *Plumbers & Pipefitters Local 572 Pension Fund v.*

5   *Cisco Sys.*, No. C 01-20418 JW, 2004 U.S. Dist. LEXIS 27008, at \*13 (N.D. Cal. May 27, 2004);

6   *Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 173-74 (N.D. Ill. 2009); *NeoPharm*, 225 F.R.D. at 567.

7         Hoping to induce the Court to become an outlier, defendants cite *Iron Workers Local No. 25*

8   *Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461

9   (S.D.N.Y. 2009), for the proposition that Lead Plaintiffs' monitoring agreements create some sort of

10  unidentified conflict of interest, which somehow renders them inadequate.  Defs' Opp. at 9.  Yet

11  *Iron Workers* actually supports Lead Plaintiffs' adequacy here because that court ***appointed as lead***

12  ***plaintiff a pension fund who had a monitoring agreement with lead counsel***.  616 F. Supp. 2d at

13  466; *see also Silverman*, 259 F.R.D. at 173-74 (rejecting defendants' argument that *Iron Workers*

14  provided a basis to find lead plaintiffs atypical at the class certification stage).  More importantly,

15  monitoring agreements do not implicate ***any*** conflict of interest.  *See* Ex. 18.  ***Defendants cite no***

16  ***authority to the contrary***.[6]

17         As ***every*** district court considering this identical argument at the class certification stage has

18  held, Lead Plaintiffs' decision to employ monitoring agreements with counsel is indicia of their

19  adequacy, not inadequacy.  *See Am. Italian Pasta*, 2007 U.S. Dist. LEXIS 21365, at \*22-\*23 (there

20

_____

21  [6]     Defendants also failed to cite any authority to support their contention that Lead Plaintiffs'
22  retention agreements with counsel are "fundamentally inconsistent with Rule 23(a)(4)."  Defs' Opp.
    at 10.  Nor can they.  Numerous ethics opinions hold that the provisions about which defendants
23  complain are entirely ethical and appropriate.  *See* Ex. 19 ("An attorney may agree to advance the
    reasonable expenses of prosecuting or defending a client's matter and waiving the right to repayment
24  by the client if there is no recovery.  Similarly, at either the inception of the representation or during
    the course of litigation, an attorney may agree to indemnify the client for court ordered costs if the
25  client is not the prevailing party.");  *see also In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 284
    (S.D.N.Y. 2003) ("Following *Rand* and *Lilco*, the Committee on Professional Responsibility of the
26  Association of the Bar of the City of New York concluded 'that DR 5-103(b) should be inapplicable
    to class actions,' and observed that 'insisting on ultimate client responsibility would render many
27  class action suits impracticable and have the effect of limiting the access of legitimate claims,
    particularly those where losses to individual claimants are very small.'").

28

1   is "**nothing** alarming" about monitoring agreements); *Cisco*, 2004 U.S. Dist. LEXIS 27008, at *13;

2   *Silverman*, 259 F.R.D. at 173-74; *NeoPharm*, 225 F.R.D. at 567-68.  This Court should respectfully

3   decline defendants' invitation to hold otherwise.

4   **3.**  **Lead Plaintiffs Demonstrated Their Adequacy**

5   Contrary to defendants' assertion (Defs' Opp. at 10-12), plaintiffs are extremely

6   knowledgeable about the case and have demonstrated their adequacy.  This is particularly true

7   considering that institutional investors, like both Lead Plaintiffs here, "will, more often than not,

8   satisfy the typicality and adequacy requirements" of Rule 23.  *In re Cendant Corp. Litig.*, 264 F.3d

9   201, 264 (3d Cir. 2001).  As such, defendants' "attacks on the proposed Class Members' knowledge

10  of and willingness or ability to supervise the litigation and on the adequacy of proposed Class

11  Counsel are, at best, hyperbolic and, at worst, consist of taking deposition testimony out of context

12  and presenting it in a manner that borders on misleading."  *Johnson v. Aljian*, 257 F.R.D. 587, 596

13  (C.D. Cal. 2009).  Notably, the defense counsel reprimanded in *Aljian* **is the defense counsel in this**

14  **case**.  *Id*.[7]

15  A fair reading of Western Pennsylvania's ("WPA") (via Michael Dunleavy) and Plumbers &

16  Pipefitters' ("P&P") (via Daniel Murphy) testimony reveals that they "understand[] their role as

17  class representatives and the underlying basis for the [complaint]; ha[ve] been in communication

18  with counsel; ha[ve] consulted with counsel concerning the litigation; [and] ha[ve] reviewed or had

19  the opportunity to review the pleadings filed with the court."  *In re Nature's Sunshine Prods. Inc.*

20  *Sec. Litig.*, 251 F.R.D. 656, 659 (D. Utah 2008).   The following testimony reveals extensive

21  knowledge of the case:

22      •   "Novatel, as far as their officers, namely Weinert and Leparulo, gave inflated
23          financial projections.  And in order to substantiate those, moved the delivery of

24  [7]   Defendants' selected snippets of why courts have denied certification should appropriately be
25  viewed with caution.  Defs' Opp. at 10.  Indeed, not one of the cases that defendants cite support
    their contentions here.  Every one of them involved **individuals** that were startling unfamiliar with
26  their case.  *Id.*  Here, the proposed representatives are **institutions** that are very familiar with the case
    and gained their knowledge **by reviewing Novatel's internal documents**.  Ex. 20 at 45:12-21; Ex. 21
27  at 15:24-16:12.  These cases are also distinguishable for the simple reason that defendants in this
    case do not challenge plaintiffs' knowledge of the case **in any way**.

28

product into a prior quarter, which led the market to believe that there were – there was better value to the stock." Ex. 20 at 45:2-7

- "And then all five of the people I mentioned sold their stock, having knowledge that they lost their contract with Sprint for their modem prior to that becoming public knowledge." *Id.* at 45:8-11.

- "The parties are Brad Weinert; Paul Leparulo; Bob Hadley, I believe, was his name; Slim Souissi; and Katherine Radcliff. . . . Well, if 'by parties,' you mean Novatel, I suppose they would be included." Ex. 21 at 46:11-20.

- The inside information was "[t]hat Sprint would no longer be utilizing their modem, and was going to go with the competitors." Ex. 20 at 47:18-21.

- "I believe that they sold stocks at an inflated price as a result of information that they knew before it reached the market. . . . And they manipulated their numbers in the quarters. They shipped – they shipped product early to – to bolster up their numbers for the quarters – the preceding quarters." Ex. 21 at 45:23-46:5, 50:9-12, 50:19-25.

- "For the class period, what – what Novatel did – or what the defendants did is they had a product that was a – USB 720, I think, was the number.  They knew that that was going 'end lifed' (phonetic) with Sprint.  And Sprint was going to be a different USB device.  And they knew that prior.  Prior to them making that public, they sold a bunch of their shares of stock." *Id.* at 49:12-18.[8]

Defendants' litany of complaints about Lead Plaintiffs are factually untrue and legally baseless.  Defs' Opp. at 11-12.  As a factual matter, both representatives testified that they did not abdicate control of the case to their lawyers.  Ex. 20 at 56:5-19 ("We get copies of every document, have conversations, telephone meetings, ask them – every time I get a document, I ask them, What does this mean?  Where are we at in this case? . . . So it's our understanding that we're making the decisions.");  Ex. 21 at 65:2-5 ("I'm in contact with – with my attorney regarding the case.  I get E-

---

[8]     While defendants' counsel elected not to inquire about Lead Plaintiffs' knowledge of their responsibilities as a class representative, their testimony made it very clear that they know who they represent, that they have responsibilities, and have taken steps to fulfill them: Ex. 20 at 43:17-44:12 (The "plaintiffs" (*i.e.*, the class) include "Western Pennsylvania Electrical Employees Pension Fund, the pipefitters, and anybody else that is similarly situated," which includes "anybody who purchased stock during that period of time and incurred a loss because of what went on.");  Ex. 21 at 47:15-22, 48:4-17 ("The class of plaintiffs is – like I said, it's everyone that's been damaged by the [defendants] for the class period," which is from "February 2007 to November 2008.");  Ex. 20 at 53:4-8 (WPA chose to get involved in this action because "[w]e understand it to be our fiduciary responsibility, if our participants had been harmed, to try and make them whole.");  *Id.* at 79:13-18 (WPA gets involved in securities suits ███████████████████████

█████████████████████████████████████████████

1    mails, phone calls. Like I stated before, we have had – we have had meetings, and we have

2    discussed the case."). Indeed, the testimony reveals that they have been zealously fulfilling their

3    obligations. Mr. Murphy has traveled to California twice in his role as representative (once for the

4    Court ordered ENE and once for his deposition) and Mr. Dunleavy traveled to California for his

5    deposition and sat "in a room on a phone for two hours waiting just on the chance that they would

6    need a conversation on the settlement" during the ENE. Ex. 20 at 56:9-14; Ex. 21 at 65:10-18. Both

7    Funds also extensively involved their Fund counsel to assist with their responsibilities as a lead

8    plaintiff and class representative. Ex. 20 at 57:8-20 ("We have conversations with [Robbins Geller],

9    as well as our fund counsel" about the case.); Ex. 21 at 69:8-24 ("My fund counsel is here [at the

10   deposition] because we have talked about the – we have talked about the case quite a bit."). Far

11   from abdicating their responsibilities, these actions demonstrate unequivocally that both Lead

12   Plaintiffs are adequate representatives.[9]

13          Defendants' contention that laypersons may not rely on legal counsel (including their own

14   Fund counsel) to fulfill their responsibilities is nothing short of bizarre. Defs' Opp. at 8-11. Indeed,

15   many cases hold that class representatives may rely on counsel to manage the action and should do

16   so given the complex nature of the issues involved. *Wixon v. Wyndham Resort Dev. Corp.*, No. C

17   07-02361 JSW, 2009 U.S. Dist. LEXIS 100451, at *16-*17 (N.D. Cal. Oct. 19, 2009) ("'[U]nder the

18   case law, the key seems to be whether the proposed class representative demonstrates such a lack of

19   knowledge or understanding about the case,'" *i.e.*, an "'"alarming unfamiliarity,". . . that there

20   appears to be simply ***blind reliance on class counsel***.'") (quoting *Stuart v. Radioshack Corp.*, No. C-

_____

22   [9]      Defendants' complaints about both Lead Plaintiffs are either incorrect or ignore the fact that
     Fund counsel have been involved in the case on behalf of the Funds. Many of the complaints listed

23   are also simply irrelevant to the adequacy determination, including "knowledge of Plumbers' role in
     ***another*** class action" (Defs' Opp. at 11), the frequency with which both Lead Plaintiffs pursue

24   litigation when put on notice of a potential claim ***that are vetted by Fund counsel prior to such
     notice*** (Ex. 20 at 78:3-16; Ex. 21 at 69:8-18), who "prepared" certifications or "drafted" responses to

25   discovery ***where defendants have pointed to no inaccuracy***, seeing documents not already
     completed by counsel ***where defendants failed to inquire about whether "counsel" included Fund

26   counsel***, and not recalling seeing any complaint prior to its filing ***where both representatives
     testified that they did*** (Ex. 20 at 94:13-97:2; Ex. 21 at 86:13-17). Defendants' complaints fail since

27   the testimony shows that Lead Plaintiffs are taking their responsibilities seriously, have taken steps
     to fulfill those responsibilities, and are knowledgeable about the case.

28

1   07-4499 EMC, 2009 U.S. Dist. LEXIS 12337, at *31-*35 (N.D. Cal. Feb. 5, 2009)); *Marsden v.*

2   *Select Med. Corp.*, 246 F.R.D. 480, 485 (E.D. Pa. 2007) (plaintiffs "are entitled to rely on counsel

3   for formulating strategy, preparing court submissions, and otherwise making use of an expertise in

4   securities litigation that the lay plaintiffs surely do not possess"); *In re Theragenics Corp. Sec. Litig.*,

5   205 F.R.D. 687, 696 (N.D. Ga. 2002) (allowing "counsel to prosecute the case demonstrates the

6   exercise of good judgment and not the abdication of their obligations as class representatives").[10]

7   **C.     Lead Plaintiffs Have Standing to Assert Insider Trading Claims**

8         Defendants' argument that Lead Plaintiffs lack standing to assert their insider trading claims

9   is contradicted by well-established law. Defs' Opp. at 12-19.  A plaintiff has standing to assert an

10  insider trading claim if the plaintiff's trades were "contemporaneous" with defendants. *Neubronner*

11  *v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1001

12  (9th Cir. 2002).  "'[T]he contemporaneous standard was developed as a more feasible avenue by

13  which to sue insiders.'"  *In re MicroStrategy Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 662 (E.D. Va.

14  2000).  The Ninth Circuit, despite several opportunities, has not defined "contemporaneous," instead

15  noting that Congress "intended to adopt the definition 'which has developed through case law.'"

16  *Neubronner*, 6 F.3d at 670 n.5.  And as this Court noted, "[t]he purpose of the contemporaneous

17  requirement is to protect investors who trade within the same period as those with non-public

18  information, while protecting traders from limitless liability 'to all the world.'"  *In re Petco Animal*

19  *Supplies Inc. Sec. Litig.*, No. 05-CV-0823-H (RBB), 2006 U.S. Dist. LEXIS 97927, at *114 (S.D.

20

21

22

_____

23  [10]    Defendants' contention that "Plumbers' designee testified at deposition that its attorneys
24  control this case" (Defs' Opp. at 11) is the same type of argument that the court condemned in
    *Aljian*. *Aljian*, 257 F.R.D. at 596.  The context makes it clear that the Fund is involved in the case, is
25  consulting with its lawyers, and makes decisions in the case.  *See, e.g.*, Ex. 21 at 66:23-67:8 ("we
    discuss the case back and forth"), 67:23-68:1 ("I'm sure that we would be consulted with – with
26  respect to which way the case is going.  And if there was a decision that needed to be made, I'm sure
    that we would probably make that decision.").  Indeed, any reasonable reading of the text cited by
27  defendants reveals that Mr. Murphy was discussing the day to day aspects of the case, for which he
    knows he is "certainly not qualified to prosecute this case."  *Id*. at 67:7-8.
28

1   Cal. July 31, 2006) (citing *Neubronner*, 6 F.3d at 670).  It is this balancing of interests that drives the

2   analysis.  *Neubronner*, 6 F.3d at 671.[11]

3          As a result of balancing these interests, courts have repeatedly held that a plaintiff meets the

4   "contemporaneous" requirement when they trade within several days of an insider.  *See, e.g.*, *City of*

5   *Westland Police & Fire Ret. Sys. v. Sonic Solutions*, No. C 07-05111 CW, 2009 U.S. Dist. LEXIS

6   33339 (N.D. Cal. Apr. 6, 2009) (purchase within nine days fulfills requirement); *Petco*, 2006 U.S.

7   Dist. LEXIS 97927, at *111 (eight days); *see also Froid v. Berner*, 649 F. Supp. 1418, 1421 n.2

8   (D.N.J. 1986) (holding nine days between trades "is unquestionably contemporaneous").[12]

9          Here, WPA purchased Novatel securities contemporaneously with each defendant and has

10  standing to pursue its insider trading claims:

| Defendant | Date of Defendant's Sales | Date of Western Pennsylvania's Purchases | Trading Days Between Sale and Purchase |
|-----------|---------------------------|------------------------------------------|----------------------------------------|
| Hadley | March 1, 2007 | March 5, 2007 | 1 |
| Ratcliffe | July 16, 2007 | July 20, 2007 | 3 |
| Souissi | May 1, 2007 | May 3, 2007 | 1 |
| Weinert | July 17, 2007 | July 20, 2007 | 2 |
| Leparulo | July 5, 2007 | July 20, 2007 | 10 |

17  *See* Ex. 22; ¶116.

18         Defendants urge the Court to adopt a one-day strict privity requirement.  Defs' Opp. at 12-17.

19  As this requirement is inconsistent with *Neubronner* and has been rejected by recent decisions

20  throughout the Ninth Circuit, the Court should refuse.  For example, in *Aljian*, defendants made the

21  ***exact*** argument, claiming "recent case law restricts 'contemporaneous' trading . . . to one day." 257

---

23  [11]     Defendants' citation to *Brody*, 280 F.3d at 1002, in support of their claim that the Ninth
    Circuit has "emphatically rejected" an "expanded time period" of contemporaneous trading is
    simply disingenuous.  Defs' Opp. at 13.  In *Brody*, the court reaffirmed its holding in *Neubronner*
24  and found that a ***two month*** trading period did not properly balance the rule's premise.  *Brody*, 280
    F.3d at 1002.

25
26  [12]     *Aljian*, 257 F.R.D. at 595 (four days); *Middlesex Ret. Sys. v. Quest Software, Inc.*, No. CV
    06-6863 DOC (RNBx), 2008 U.S. Dist. LEXIS 68419 (C.D. Cal. July 10, 2008) ("a one-week (five
27  trading day)"); *In re Cypress Semiconductor Sec. Litig.*, 836 F. Supp. 711, 714 (N.D. Cal. 1993)
    (five days); *In re Silicon Graphics Sec. Litig.*, 970 F. Supp. 746, 761 (N.D. Cal. 1997) (six days).

28

1    F.R.D. at 594.  Rejecting defendants' contention, Judge Cooper explained that in accordance with

2    the Ninth Circuit's holding in *Neubronner*, "a 'contemporaneous' period of a few days addresses the

3    need for a period that both serves as a legitimate proxy for the privity requirement and sets a

4    reasonable limit on defendants' exposure to liability."  *Id.* at 595.  The court held "that neither recent

5    decisions within this district [*e.g.*, *Countrywide*] and from other districts nor the economic analysis

6    provided by Defendants' expert [Dr. Tabak – defendants' expert here], compels a determination that

7    only same-day trades are properly considered contemporaneous in this case."  *Id.*[13]

8         Defendants argue that the "high trading volumes" in Novatel somehow mandates a diversion

9    from Ninth Circuit precedent.  Defs' Opp. at 16.  This argument also misses the mark, as the Ninth

10   Circuit has not adopted the actual privity requirement, and there is no evidence that the volume of

11   trading in Novatel stock was any heavier than that in *Aljian*, *Sonic Solutions*, *Quest*, or *Petco*.  As

12   such, defendants' attempt to distinguish the Court's decision in *Petco*, 2006 U.S. Dist. LEXIS

13   97927, at *114, is unavailing.  Defs' Opp. at 17.  WPA has standing as to each defendant.[14]

14        **D.    The Fraud on the Market Presumption Applies to the July 20, 2007**
               **Disclosure**

15

16        Defendants claim that their expert, Dr. Tabak, has "refute[d] loss causation, and the fraud on

17   the market theory, for the stock price movement on July 20, 2007."  Defs' Opp. at 21.  This is not

18   only untrue but also irrelevant.  In the Ninth Circuit, "inquiries into issues such as materiality and

19   loss causation are properly taken up at a later stage in this proceeding."  *Conn. Ret. Plans & Trust*

20   *Funds v. Amgen, Inc.*, No. CV 07-2536 PSG (PLAx), 2009 U.S. Dist. LEXIS 71653, at *36 (C.D.

21
_____

22   [13]    Defendants assert that there is an "'emerging consensus'" for a one-day rule.  Defs' Opp. at
     14.  But of the cases cited by defendants, only one ***in the last 15 years*** – *In re Countrywide Fin.*
23   *Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) – is from the Ninth Circuit.  The reasoning
     applied in *Countrywide*, and the other decisions cited by defendants, have been considered and
24   rejected by subsequent courts, including *Aljian*, *Sonic Solutions*, *Quest*, and *Petco*.

25   [14]    If the Court finds that WPA lacks standing, the proper remedy is not to dismiss the claims,
     but to give Lead Plaintiffs leave to find an additional class representative.  *In re Connetics Corp.*
26   *Sec. Litig.*, No. C 07-02940 SI, 2008 U.S. Dist LEXIS 62515, at *44 (N.D. Cal. Aug. 14, 2008);
     *Andrews Farms v. Calcot, Ltd.*, No. CV-F-07-0464 LJO DLB, 2009 U.S. Dist. LEXIS 41501, at
27   *28-*30 (E.D. Cal. Apr. 30, 2009) (in the interest of due process, should the court deny class
     certification, the court should allow the plaintiffs an opportunity to propose subclasses).

28

1  Cal. Aug. 12, 2009); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 532 (N.D. Cal. 2009) ("[There is]

2  no basis under Rule 23 to require ***plaintiff*** to prove loss causation in order to benefit from the fraud-

3  of-the-market presumption, and defendants raise no argument why loss causation poses an obstacle

4  to class certification under Rule 23") (emphasis in original); *Connetics*, 257 F.R.D. at 579 (for class

5  certification "lead plaintiff need show only that it traded on an efficient market").

6          Even if the Court were to consider defendants' challenges to loss causation, defendants have

7  failed to meet their burden.   *In re Micron Techs., Inc.*, 247 F.R.D. 627, 635 (D. Idaho 2007).

8  Defendants' claim there is "no support" for the allegation of a corrective disclosure on July 20, 2007

9  is frivolous.  Defs' Opp. at 22.  A wealth of evidence, ***which defendants' expert has chosen to***

10  ***ignore***, demonstrates that the Sprint revelation caused plaintiffs' losses.  As an initial matter,

11  Novatel's stock price sunk ***more than 10%*** that day and analysts directly attributed the drop to the

12  news about Sprint.  Ex. 11 at 20:25-21:1 ("we considered it had an impact on the stock"); *see also*

13  Rebuttal Declaration of Bjorn I. Steinholt, CFA ("Steinholt Reply Decl."), ¶¶5-12, filed herewith;

14  Ex. 23.  In fact, defendants even attributed the drop in Novatel's stock to the news when they were

15  told that JMP was ***downgrading*** the stock because JMP had "confirmed" it – "we are getting a bit

16  hammered this morning, partially at least on this news."  Exs. 24-25.  The evidence is overwhelming

17  that the information was material and there was a causal connection.

18          Defendants' claim that Mr. Steinholt "cheated" demonstrates a fundamental

19  misunderstanding of statistics.  Defs' Opp. at 21.  Statistics do not definitively answer questions

20  based on absolute benchmarks.  Steinholt Reply Decl., ¶¶15-17.  They provide information for a trier

21  to consider when deciding those questions.  *Id*.  Contrary to Dr. Tabak, who focused ***exclusively*** on

22  statistics and only on the close-to-close drop to form his opinion, Mr. Steinholt conducted a thorough

23  analysis of the allegations and evidence in this case (unlike Dr. Tabak), ***in combination with a***

24  ***statistical analysis*** that Dr. Tabak has acknowledged in prior writings may be sufficient to prove loss

25  causation.  *Id*., ¶¶18-19.[15]  This baseless challenge does not meet defendants' burden.

26  _____

27  [15]     Defendants' reliance on *In re Am. Int'l Group, Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB),

28  2010 U.S. Dist. LEXIS 15453, at *82-*105 (S.D.N.Y. Feb. 22, 2010), for the proposition that a 95%

1     **E.      The Court Should Not Alter the Length of the Class Period**

2            "[E]videntiary disputes concerning the commencement and termination dates of a proposed

3     class period raise questions of fact going to the merits of the case, and are therefore not a proper

4     subject for inquiry at the certification stage." *Amgen*, 2009 U.S. Dist. LEXIS 71653, at *44; *In re*

5     *Victor Techs. Sec. Litig.*, 102 F.R.D. 53, 58 (N.D. Cal. 1984) ("Examining whether a document

6     issued during the proposed class period 'effectively cured' an alleged earlier misrepresentation calls

7     for . . . a proscribed inquiry into the merits."), *aff'd*, 792 F.2d 862 (9th Cir. 1986).[16]

8            Defendants argue (without citing a ***single case in support***) that the Court should find, as a

9     matter of law, that supposed "red flags" put investors on notice of the fraud as early as May 13,

10    2008.  Defs' Opp. at 23.  "The inherently factual nature of the argument is obvious: To truncate the

11    class period," the "court would need to conclude, at a minimum, that the . . . announcement

12    effectively cured any prior fraud on the market and that the announcement was not part of an

13    ongoing pattern of fraud."  *Schaffer*, 1996 U.S. Dist. LEXIS 5372, at *30.  As the May 13, 2008

14    announcement only stated that Novatel would be delaying the filing of its Form 10-Q and that the

15    Company "did not expect any change . . . to any previously reported financial statements or

16    earnings," it did not effectively cure the ongoing fraud, which continued until November 10, 2008.

17    ¶¶35, 79, 126-130.  As such, "'this is an issue that can only be properly resolved at trial,' or, at least,

18    at a later stage in the case."  *Schaffer*, 1996 U.S. Dist. LEXIS 5372, at *30.[17]

19    _____

20    confidence interval is a ***requirement*** is thus incorrect.  Defs' Opp. at 22.  Notably, the *AIG* court was
21    presented with no other evidence supporting loss causation.  The same is not true here.

22    [16]     *Schaffer v. Timberland Co.*, No. 94-634-JD, 1996 U.S. Dist. LEXIS 5372, at *29 (D.N.H.
      Mar. 19, 1996) ("'arguments about the . . . termination date[] of a proposed class period raise
23    questions of fact going to the merits, and are therefore not a proper subject for inquiry at the
      certification stage'"); *In re Interpublic Sec. Litig.*, No. 02 CIV. 6527 (DLC), 2003 U.S. Dist. LEXIS
24    19784, at *14 (S.D.N.Y. Nov. 7, 2003); *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40,
      43-44 (D.D.C. 2006).

25    [17]     Nor should the Class Period end on the initial complaint's filing date since defendants misled
26    investors after the filing.  ¶¶79, 81; Defs' Opp. at 24.  The same was not true in defendants' cases.
      *In re CMS Energy Sec. Litig.*, 236 F.R.D. 338, 342 (E.D. Mich. 2006) (shortening the class period
27    because "the NYSE took the unusual step of suspending trading [in the company's stock]");
      *Dorchester Investors v. Peak TrENDS Trust*, No. 99 Civ. 4696 (LMM), 2002 U.S. Dist. LEXIS
28    3067, at *16 (S.D.N.Y. Feb. 26, 2002) ("***it is clear*** that ***full disclosure*** of the alleged securities

1    The Court also cannot determine at this stage whether the November 10, 2008 disclosure (in

2    which Novatel finally issued its long-delayed Form 10-Q and announced the results of its internal

3    accounting review, disclosing it misstated revenue due to improper cut-off procedures and outlined

4    its internal control weaknesses (¶84)) was immaterial as a matter of law. Defs' Opp. at 23. Indeed,

5    on this disclosure, Novatel's stock price dropped 27% by November 17, 2008. ¶129.[18] Regardless

6    of whether Mr. Steinholt opined on the disclosure, plaintiffs have alleged and are entitled to present

7    evidence that the disclosure was material. *LDK*, 255 F.R.D. at 529 ("Also unavailing is defendants'

8    argument . . . that plaintiff is unable to establish materiality (and therefore the fraud-on-the-market

9    presumption) because plaintiff failed to show a statistically significant stock price movement in

10   response to any of the alleged misrepresentations . . . the Ninth Circuit does not require a stock-price

11   impact in order to establish materiality.").[19]

12   **III.    CONCLUSION**

13       For the foregoing reasons,  Lead Plaintiffs' motion for class certification should be granted.

14   DATED:  April 9, 2010                    Respectfully submitted,

15

16                                        s/ DOUGLAS R. BRITTON
                                         DOUGLAS R. BRITTON

17

18

19

20

---

21   violations was made [by the filing of a lawsuit])."  Since defendants had not disclosed the entire
22   truth, the original filing date is irrelevant.  *Amgen*, 2009 U.S. Dist. LEXIS 71653, at *43-*44.

23   [18]    These facts distinguish this case from defendants' cases.  Defs' Opp. at 24; *In re Swift
     Transp. Co.*, *Sec. Litig.*, No. CV 04-2435-PHX-NVW, 2006 U.S. Dist. LEXIS 47475, at *14 (D.
24   Ariz. Mar. 29, 2006) ("Plaintiff's Complaint only discusses loss causation in one paragraph . . . [and]
     does not explain how these misrepresentations caused Plaintiff to suffer an economic loss.").

25   [19]    Defendants' argument to exclude "in and out" traders should be rejected.  *Cooper*, 254
     F.R.D. at 641 (argument is "misplaced at [] class certification" because "Court has not even been
26   presented with evidence that these types of traders purchased [company] stock during the Class
     period.  If Defendants can show, as a matter of law, that certain proposed class members' losses
27   were not caused by misstatements, then they should do so at summary judgment or trial.").

28

1

2    ROBBINS GELLER RUDMAN
       & DOWD LLP
3    DOUGLAS R. BRITTON
     LUCAS F. OLTS
     ERIC I. NIEHAUS
4    COTY R. MILLER
     655 West Broadway, Suite 1900
5    San Diego, CA  92101
     Telephone:  619/231-1058
6    619/231-7423 (fax)

7    Lead Counsel for Plaintiffs

8    CAVANAGH & O'HARA
     PATRICK O'HARA
9    407 East Adams Street
     Springfield, IL  62701
10   Telephone:  217/544-1771
     217/544-9894 (fax)
11
     DYER & BERENS LLP
12   ROBERT J. DYER III
     JEFFREY A. BERENS
13   303 East 17th Avenue, Suite 300
     Denver, CO  80203
14   Telephone:  303/861-1764
     303/395-0393 (fax)
15
     HOLZER HOLZER & FISTEL, LLC
16   COREY D. HOLZER
     MICHAEL I. FISTEL, JR.
17   MARSHALL P. DEES
     200 Ashford Center North, Suite 300
18   Atlanta, GA  30338
     Telephone:  770/392-0090
19   770/392-0029 (fax)

20   Additional Counsel for Plaintiff

21

22

23

24

25

26

27

28

514440_2                      - 16 -                  08-CV-01689-H(RBB)

1

<u>CERTIFICATE OF SERVICE</u>

2       I hereby certify that on April 9, 2010, I electronically filed the foregoing with the Clerk of the

3  Court using the CM/ECF system which will send notification of such filing to the e-mail addresses

4  denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the

5  foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

6  indicated on the attached Manual Notice List.

7       I hereby certify that on April 9, 2010, an unredacted version of the foregoing was sent via

8  overnight delivery to Travis Biffar, Jones Day, 3161 Michelson Drive, Suite 800, Irvine, California

9  92612.

10       I certify under penalty of perjury under the laws of the United States of America that the

11  foregoing is true and correct.  Executed on April 9, 2010.

12

13                            s/ DOUGLAS R. BRITTON
                                 DOUGLAS R. BRITTON

14

15                               ROBBINS GELLER RUDMAN
                                   & DOWD LLP

16                               655 West Broadway, Suite 1900
                               San Diego, CA  92101-3301
                               Telephone:  619/231-1058
                               619/231-7423 (fax)

17

18                               E-mail:dougb@rgrdlaw.com

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:08-cv-01689-H -RBB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Travis Biffar**
  tbiffar@jonesday.com,fswallace@jonesday.com

- **Robert S Brewer , Jr**
  rsbrewer@jonesday.com,pwalter@jonesday.com

- **Douglas R Britton**
  DougB@rgrdlaw.com,jillk@rgrdlaw.com,ldeem@rgrdlaw.com

- **Michael I. Fistel , Jr**
  mfistel@holzerlaw.com,dhotnog@holzerlaw.com

- **Michael M Goldberg**
  mgoldberg@glancylaw.com,info@glancylaw.com

- **Sabrina S. Kim**
  skim@milberg.com,mbowman@milberg.com,cchaffins@milberg.com

- **Eric Landau**
  elandau@jonesday.com,kamarkwick@jonesday.com

- **Coty Rae Miller**
  cmiller@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew P Montgomery**
  e_file_sd@rgrdlaw.com

- **Eric I Niehaus**
  EricN@rgrdlaw.com,e_file_sd@rgrdlaw.com,ericniehaus@hotmail.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Cary D Sullivan**
  carysullivan@jonesday.com,kamarkwick@jonesday.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Patricia J. Villareal**
Jones Day
2727 North Harwood Street
Dallas, TX 75201

- 18 -