1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  DOUGLAS R. BRITTON (188769)
   LUCAS F. OLTS (234843)
3  ERIC I. NIEHAUS (239023)
   655 West Broadway, Suite 1900
4  San Diego, CA 92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
   dougb@rgrdlaw.com
6  lolts@rgrdlaw.com
   ericn@rgrdlaw.com
7
   Lead Counsel for Plaintiffs
8
   [Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAUREEN BACKE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NOVATEL WIRELESS, INC., et al.,<br><br>Defendants. | Lead Case No. 08-CV-01689-H(RBB)<br><br>(**Consolidated**)<br><br><u>CLASS ACTION</u><br><br>LEAD PLAINTIFFS' RESPONSE TO DEFENDANTS' SUR-REPLY IN OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

522102_1

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 2 |
| | A. | Subclasses Will Create Confusion and Add to the Burden on the Court | 2 |
| | B. | The Proposed Representatives Have Demonstrated Their Adequacy and Their Claims are Typical of the Class | 3 |
| | | 1. Purchases Following Partial Disclosures and Continued Efforts to Mislead Do Not Render Plaintiffs Inadequate | 3 |
| | | 2. Defendants' Arguments About Plaintiffs' Agreements with Counsel Are Baseless | 4 |
| | | 3. Plaintiffs Have Demonstrated Their Adequacy | 5 |
| | C. | Plaintiffs Have Standing to Pursue an Insider Trading Claim | 6 |
| | D. | Defendants Concede that Common Issues Predominate | 7 |
| | | 1. The Fraud-on-the-Market Presumption Applies to the July 20, 2007 Disclosure | 8 |
| | | 2. The Court Should Not Alter the Length of the Class Period | 9 |
| III. | CONCLUSION | | 10 |

## I. INTRODUCTION

Pursuant to the Court's April 26, 2010 Order, Lead Plaintiffs ("Plaintiffs") submit the following response to Defendants' Surreply in Opposition to Lead Plaintiffs' Motion for Class Certification (Dkt. No. 167-3 ("Sur-Reply")). A close read of the Sur-Reply reveals why defendants waited to file it until 9:43 p.m. on a Sunday night before a Monday hearing. It is loaded with unsupported assertions that have no basis in law or fact. Defendants obviously hoped to have the Court consider their baseless and often disparaging assertions without Plaintiffs' ability to respond. As demonstrated herein, nothing in defendants' Sur-Reply, or in the 21-page declaration filed by David Tabak, justifies denying Lead Plaintiffs' Motion for Class Certification ("Motion") or changing the Class Period.

Defendants' Sur-Reply is notable not only for its wholesale lack of support but also for its failure to address in any meaningful way the evidence Plaintiffs have submitted showing that defendants engaged in a related pattern of fraud that was common to all class members. Dkt. No. 164-2 ("Britton Reply Decl."), Exs. 1-8, 10-17. Plaintiffs showed in their reply in support of their Motion (Dkt. No. 164 ("Reply")) that defendants were told in December 2006 that Novatel Wireless, Inc. ("Novatel") would experience a bump in Q107 revenues and a drop in Q207 with competitive challenges throughout 2007. *Id.*, Ex. 5. ***Defendants say nothing in response*** – even though two of them sold over 90% of their stock and 40% of their options between Q107 and Q207. Plaintiffs showed that Sprint notified defendants in January 2007 that it would cancel Novatel's USB modem and replace it with the modem of its direct competitor, Sierra Wireless. *Id.*, Exs. 1, 6. ***Defendants say nothing***. Plaintiffs showed that at the same time that each defendant was either adopting or amending their trading plans, Sprint confirmed that it was replacing Novatel's USB modem with Sierra's. *Id.*, Exs. 2-4, 7. ***Defendants say nothing***. And Plaintiffs showed that defendant George Weinert was the source of the *false* "transition" spin that defendants used to tell the Court that the Sprint cancellation was a "false rumor." *Id.*, Ex. 24. ***Defendants, again, say nothing***.

Instead of addressing this damaging evidence, defendants' Sur-Reply rehashes the same arguments that they made in their opposition to Plaintiffs' Motion. There was nothing new that

would justify a sur-reply or any reason why defendants could not have filed it the week before the hearing. For the reasons discussed herein, Plaintiffs' Motion should be granted.

## II. ARGUMENT

### A. Subclasses Will Create Confusion and Add to the Burden on the Court

As Plaintiffs demonstrated in their Reply and at the hearing on their Motion, subclasses are unnecessary, will confuse the class, and will add to the administrative burdens on the Court. Defendants have offered no argument that would justify sanctioning this type of confusion, especially since Plaintiffs have standing under clear Ninth Circuit precedent to bring their insider trading claim against each defendant. *See* §II.C., *infra*.[1]

Plaintiffs also established in their Reply that the evidence shows that defendants engaged in a continuous ***and related*** pattern of fraud that undermines the need for subclasses. Reply at 2-4. Defendants have elected, in their Sur-Reply and at the hearing, to remain silent about this evidence. They do so for good reason. The Ninth Circuit is clear that subclassification is ***inappropriate*** "when there [no] divergent views among class members." *Mendoza v. United States*, 623 F.2d 1338, 1350 (9th Cir. 1980). There are no divergent views and no need for subclasses here since Plaintiffs have standing to pursue both claims, and the basis for the insider trading claims also undermine and relate to defendants' misrepresentations. *Id*. Defendants' authority is inapposite since Plaintiffs have standing to pursue both claims. Sur-Reply at 2.

Defendants' contention that sub-classification will materially improve the presentation of the case only begs the question "from whose standpoint?" *Id*. at 2. Consistent with the evidence, Plaintiffs will present the case as one continuous fraud that damaged all class members alike. The evidence is now clear (***and undisputed***) that defendants knew when they adopted or amended their trading plans and sold their stock that Sprint would replace Novatel's modem with Sierra's and that

---

[1] Defendants' argument that standing is an "essential element" that Plaintiffs were required to address in their Motion is baseless. Sur-Reply at 2. Not only do defendants fail to cite anything supporting their argument, their own actions refute the contention since they failed to raise the standing issue after having two chances to move to dismiss the complaint.

Novatel would experience a bump in Q107 revenue followed by a drop in Q207 and a flat rest of the year where Novatel was expected to (and was) experiencing "competitive challenges." Reply at 2-4. These facts not only undermine defendants' reliance on a trading plan defense, but they also demonstrate that defendants' claims about Novatel's position in the market and Novatel's financial results were false. *Id.* Creating subclasses would certainly not materially improve the presentation of the case. If anything, it would complicate matters for the trier of fact.

### B. The Proposed Representatives Have Demonstrated Their Adequacy and Their Claims are Typical of the Class

#### 1. Purchases Following Partial Disclosures and Continued Efforts to Mislead Do Not Render Plaintiffs Inadequate

There is no split of authority in the Ninth Circuit about whether post-disclosure purchases render a representative's claims atypical. Sur-Reply at 3. To the contrary, the law in this Circuit is clear that a "defense of non-reliance is not a basis for denial of class certification." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). Despite this controlling authority, defendants' Sur-Reply argues that the timing of Plaintiffs' Novatel stock purchases raises questions about whether "they ***relied*** on the integrity of the market in the first place." Sur-Reply at 3. Defendants' argument must be rejected as inconsistent with binding authority.[2]

Defendants' argument also has no factual basis. Contrary to their ***unsupported*** speculation of "two possibilities" resulting from Plaintiffs' purchases, Plaintiffs' investment managers uniformly testified that they relied on public information and, therefore, the integrity of the market when purchasing Novatel stock. Dkt. No. 154-2, Exs. G-H, J. There is absolutely no basis for defendants'

---

[2] Defendants' interpretation that *Hanon* actually supports denying class certification on reliance grounds would render meaningless its holding that "[w]e emphasize that the defense of non-reliance is not a basis for denial of class certification." *Id.* at 509. *Valence* does not create a split of authority as defendants suggest. Sur-Reply at 3; *In re Valence Tech. Sec. Litig.*, No. C 95-20459 JW, 1996 U.S. Dist. LEXIS 21774 (N.D. Cal. Mar. 14, 1996). In fact, the court in *Connetics* recently rejected *Valence* holding that "the weight of authority appears to favor the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement." *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 577 (N.D. Cal. 2009). It also cited the Fifth Circuit's opinion in *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 137 (5th Cir. 2005), finding that the "view espoused in *Rolex* [and *Valence*] is 'not generally accepted.'" *Connetics*, 257 F.R.D. at 577.

Unless otherwise noted, all emphasis is added and citations are omitted.

claim to the contrary. Sur-Reply at 3. Indeed, there are many other "possibilities" that would motivate an investment manager to purchase stock, including that the investment managers believed defendants' continued misrepresentations and purchased the stock based on the information available in the market. Plaintiffs identified the partial disclosures and explained how those disclosures continued to mislead the market. Reply at 4. Defendants' Sur-Reply offers no rebuttal. Their argument should be rejected. Defendants must do more than raise unsupported "possibilities" to defeat certification or claim (again without support) that information as important as internal accounting controls "***did not matter*** to Lead Plaintiffs." Sur-Reply at 4 (emphasis in original).

Defendants' claim that Plaintiffs are atypical because their investment managers purchased Novatel stock after the initial complaint was filed is also baseless. *Id*. at 3-4. While defendants point to language in an initial complaint that they would argue is impermissibly vague and could not support a claim, they ignore the fact that their disclosure on November 10, 2008 ***disclosed new information to the market***, including ***the type and extent*** of weaknesses in Novatel's internal controls. Dkt. No. 23, ¶84. In fact, they disclosed that Novatel and the defendants violated very basic accounting rules, which effectively informed the market that Novatel did not have effective internal controls at all. *Id*. Since defendants disclosed new information to the market ***after*** a plaintiff filed the initial complaint, Plaintiffs' purchases after that date do not render them atypical.

### 2. Defendants' Arguments About Plaintiffs' Agreements with Counsel Are Baseless

Left with nothing other than a single case in a different jurisdiction whose reasoning has been rejected by every court that has considered the matter, as well as the Committee on Professional Ethics in the very state where the critical court resides, defendants' Sur-Reply resorts to the unseemly act of casting unsupported aspersions on Plaintiffs and their counsel. Sur-Reply at 4-5. Their characterization of the monitoring agreements as obligating counsel "to do nearly nothing" but incentivizing them "to find 'fraud,' regardless of how dubious the claim" is not supported by any of the testimony in the case or by the agreements themselves. *Id*. at 4. And, importantly, defendants' silence on the evidence that Plaintiffs submitted with their Reply rings a deafening bell that this case is far from dubious. Defendants have no support, whatsoever, for their claim that a monitoring

agreement renders Plaintiffs inadequate. To the contrary, courts hold that monitoring agreements demonstrate adequacy. *See* Reply at 5-7.

Defendants' contentions about Plaintiffs' retention agreements are odd. Sur-Reply at 4. Despite ethics opinions finding that advancing costs and indemnifying plaintiffs is an ethical and accepted practice, defendants argue (again unsupported) that the provisions are about "Lead Plaintiffs abandoning responsibility" and not having "skin in the game." Sur-Reply at 4-5. Defendants even argue that "unlimited indemnification to the client" is impermissible (*id*. at 5 n.7) when not a single rule or ethics opinion sets arbitrary limits on the amount of indemnification allowed (and defendants cite no authority to the contrary). Defendants also cite the Private Securities Litigation Reform Act of 1995 ("PSLRA") despite that not a single provision in that statute precludes counsel from advancing costs or indemnifying the plaintiff. *Id.* According to defendants, a practice found entirely ethical and appropriate under state ethical rules somehow stands the PSLRA on its head. How? Why? They do not say. Since the only authority for their arguments is their own opinion, those arguments must be rejected.[3]

### 3. Plaintiffs Have Demonstrated Their Adequacy

The law in the Ninth Circuit is clear. A proposed representative is inadequate on abdication grounds only when they ***blindly rely*** on counsel to the extent that they are ***alarmingly unfamiliar*** with the case – "'under the case law, the key seems to be whether the proposed class representative demonstrates such a lack of knowledge or understanding about the case,' *i.e.*, an '"alarming unfamiliarity,"' . . . that there appears to be simply blind reliance on class counsel.'" *Wixon v. Wyndham Resort Dev. Corp.*, No. C 07-02361 JSW, 2009 U.S. Dist. LEXIS 100451, at *16-*17

---

[3] Defendants' bald assertion that "[i]f Lead Plaintiffs do not believe in their case enough to file suit without receiving a promise of indemnification, they should not be certified as class representatives" stretches far past the border of disingenuous. Sur-Reply at 5. Not only have they not cited any authority supporting it, but they also wholly ignore Plaintiffs' authority finding the exact opposite – "'insisting on ultimate client responsibility would render many class action suits impracticable and have the effect of limiting the access of legitimate claims, particularly those where losses to individual claimants are very small.'" *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 285 (S.D.N.Y. 2003). While defendants may desire this outcome, the courts obviously do not.

(N.D. Cal. Oct. 19, 2009). The testimony cited in Plaintiffs' Reply shows that Plaintiffs do not even come close to this standard. Reply at 7-10.

Defendants' Sur-Reply does not challenge this standard or attempt to show how Plaintiffs here meet it. Sur-Reply at 5. Instead, defendants resort to their practice of casting unsupported aspersions. *Id.* Indeed, Plaintiffs' testimony belies defendants' bald assertion that they "cram[med] for a test" or "remember[ed] a couple of soundbytes from the first half dozen paragraphs of a complaint filed in their name" (*id.*) and instead proves that they are fulfilling their responsibilities. Reply at 7-10. Indeed, defendants ignore testimony from both Lead Plaintiffs demonstrating that they have been very involved in the case, have communicated with their counsel constantly, and have developed their knowledge based not only on communications with counsel but also on a review of Novatel's internal documents. *Id.* They have certainly carried their burden.

### C. Plaintiffs Have Standing to Pursue an Insider Trading Claim

Defendants' standing argument is based on a complete misread of the Ninth Circuit's opinion in *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993). As this Court noted when applying *Neubronner*, "[t]he purpose of the contemporaneous requirement is to protect investors who trade within the same period as those with non-public information, while protecting traders from limitless liability 'to all the world.'" *In re Petco Animal Supplies Inc. Sec. Litig.*, No. 05-CV-0823-H (RBB), 2006 U.S. Dist. LEXIS 97927, at *114 (S.D. Cal. Aug. 1, 2006). This Court found that eight days qualified as contemporaneous and sufficiently balanced the interests identified in *Neubronner*. *Id.*

Defendants' invitation to have the Court deviate from its prior analysis and set a strict privity requirement of one day is at odds with Ninth Circuit law and congressional intent. Indeed, the Ninth Circuit in *Neubronner* refused to set a rigid time period ("[t]he delineation of how far apart in time trades may be without being too far apart to satisfy the contemporaneous trading requirement is best worked out in cases much closer to a probable borderline than this one"), and instead noted that Congress "intended to adopt the definition 'which has developed through the case law.'" 6 F.3d at 670 & n.5. This Court then noted in *Petco* that "[w]hen Congress adopted the 'contemporaneous' requirement, it left the development of a definition to the courts, but it did cite with approval a district court case, *O'Connor & Assoc. v. Dean Witter Reynolds, Inc.*, 559 F. Supp. 800 (S.D.N.Y.

1983), that held a trade within seven days was 'clearly' contemporaneous. H.R. Rep. No. 910, 100th Cong., 2d. Sess. 27 (1988) *reprinted in* 1988 U.S.C.C.A.N. 6043, 6064." 2006 U.S. Dist. LEXIS 97927, at *112. If the Ninth Circuit intended to create a strict privity requirement, as defendants advocate, it certainly would have done so by mandating in *Neubronner* a same-day trading requirement. Its refusal to do so forecloses defendants' interpretation.[4]

As Plaintiffs established in their Reply, Western Pennsylvania's purchases were contemporaneous with defendants' sales. Reply at 11. It has standing to bring the claim.[5]

### D. Defendants Concede that Common Issues Predominate

If it was not before, the law is now clear in the Ninth Circuit. A court may inquire into the merits of a claim only to the extent that the merits overlap with Rule 23's requirements. *Dukes v. WalMart Stores, Inc.*, No. 04-16688, 2010 U.S. App. LEXIS 8576, at *56 (9th Cir. Apr. 26, 2010). And in a securities case, a plaintiff satisfies Rule 23's predominance requirement by demonstrating that the market in which the security at issue traded was an efficient one. *Id*. at *57. Once a plaintiff establishes market efficiency, common issues of reliance predominate because the class is entitled to a presumption that they relied on the integrity of the market price when purchasing their stock. *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988). "[I]nquiries into issues such as materiality and loss causation are properly taken up at a later stage in [the] proceeding[s]." *Conn. Ret. Plans & Trust Funds v. Amgen, Inc.*, No. CV 07-2536 PSG (PLAx), 2009 U.S. Dist. LEXIS 71653, at *36 (C.D. Cal. Aug. 12, 2009); *see also Dukes*, 2010 U.S. App. LEXIS 8576, at *57.

Here, defendants do not challenge, and therefore concede, that the market for Novatel stock was an efficient one. This ends the analysis. Plaintiffs have established that common issues of

---

[4] The Ninth Circuit's opinion in *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997 (9th Cir. 2002), does not hold otherwise. In *Brody*, the court reaffirmed its holding in *Neubronner* and found that a two month trading period did not properly balance the rule's premise. *Id*. at 1002.

[5] Defendants say that "[m]ost significantly, Lead Plaintiffs do not even address the comparison of trading volumes" between the purchases and sales. Sur-Reply at 2 n.3 & 6. It is not significant at all. Trading volumes are relevant only if one is attempting to determine whether the purchaser and seller were in privity for a trade. Since the Ninth Circuit and Congress have rejected a strict privity requirement, trading volumes are irrelevant to the analysis.

reliance predominate over individual issues. Defendants' contention that they have disproven loss causation for certain dates within the Class Period (but not for others) is simply their attempt to have the Court conduct a mini-trial on the merits, which the Ninth Circuit in *Dukes* made clear is improper. Since defendants have not challenged the opinion of Plaintiffs' expert that Novatel traded in an efficient market, the Court should certify the class and save its review of loss causation for summary judgment or trial. Nevertheless, as discussed below, defendants have failed to meet their burden even if the Court were to consider defendants' challenges to loss causation.

### 1. The Fraud-on-the-Market Presumption Applies to the July 20, 2007 Disclosure

Defendants' sole challenge to loss causation for July 20, 2007, is that the drop from the close on July 19, 2007 to the close on July 20, 2007 was not statistically significant at the 95% level. Sur-Reply at 7. They now concede that the intra-day drop of 11.6% was statistically significant (which again ends the analysis) but argue that the intra-day movement should be ignored because the market had not yet considered "all of the news," which defendants and their expert say includes the views of a Craig-Hallum analyst explaining that "'[w]e further believe that NVTL will begin shipping the new smaller form factor USB product in August (earlier than expected)'" and that "'NVTL will continue to get the lion's share of Sprint's business.'" Dkt. No. 167-2 ("Biffar Sur-Reply Decl."), Ex. B, ¶16. Defendants' expert adds that "the news that one product would be transitioned out early in favor of another could actually have been a good thing for Novatel" (*id.*) and dismisses a JMP downgrade of Novatel stock because it stated that there was "'[n]o change[s] to estimates at this point'" and that "the news 'suggests that the sell-in gap may only have timing, but no financial implications for Novatel.'" *Id.*, ¶17. He even goes so far as to dismiss the downgrade because another Craig-Hallum analyst was given a "sign" that the next-generation product would ship to Sprint "a month early." *Id.*

The problem for defendants, and their expert, is that this information was ***flatly false*** and was ***disseminated by defendant Weinert***: "I have had several calls this morning as well regarding the JMP announcement. ***My statement to date is that we are selling through inventory and we are releasing a replacement product as previously discussed***." Britton Reply Decl., Ex. 24 at 205. Not

surprisingly, neither defendants nor their expert discuss this remarkable evidence or mention the fact that even Weinert stated that "*we are getting a bit hammered this morning, partially at least on this news*." *Id.* Far from news that the market digested as "a good thing," the statements in the Craig-Hallum report were false and were directly at odds with defendants' internal view of the Sprint cancellation:

- May 24, 2007 – "THIS IS KILLING ME! And I am about to return the favor!!!! We cannot loose all of our SPRINT business. I made this clear in January didn't I?????? Brad." *Id.*, Ex. 2 at 11.

- June 04, 2007 – "How we can go from #1 to #NOTHING at Sprint is beyond my ability to comprehend. . . . Brad." *Id.*, Ex. 3 at 15.

- June 20, 2007 – "We already have a disaster at Sprint and I certainly cannot afford one at Verizon. . . . Brad." *Id.*, Ex. 4 at 16.

***Defendants had to drop 55,440 units from Novatel's Q307 forecast for Sprint because of its cancellation***. *Id.*, Ex. 7 at 23. And the evidence shows that Novatel was in no position to release a new product in August. *Id.*, Ex. 24. Given this evidence, there is simply no way that the Court can conclude as a matter of law that defendants have rebutted the presumption of reliance for July 20, 2007. To the contrary, the evidence is quite clear that there was a direct causal connection followed by further misleading statements by defendants. Declaration of Douglas R. Britton ("Britton Sur-Reply Decl."), Ex. 26, ¶¶8-25, filed concurrently herewith. In fact, this evidence demonstrates why the Court should not resolve issues of loss causation before trial.[6]

### 2. The Court Should Not Alter the Length of the Class Period

As Plaintiffs established in their Reply, "evidentiary disputes concerning the commencement and termination dates of a proposed class period raise questions of fact going to the merits of the case, and are therefore not a proper subject for inquiry at the certification stage." *Amgen*, 2009 U.S.

---

[6] This evidence directly undermines defendants' expert's reliance on close-to-close movement in Novatel's stock price and his remarkable opinion that investors that sold at the intra-day lows were somehow not damaged by the news because the market had not digested "all" of the information. Biffar Sur-Reply Decl., Ex. B, ¶¶17-19. It also proves that looking strictly at statistics, as David Tabak does, explains little, which is why Plaintiffs' expert is critical of Tabak's insistence on a benchmark. Britton Sur-Reply Decl., Ex. 26, ¶¶8-10. Plaintiffs also move to strike that portion of Tabak's rebuttal declaration that seeks to opine on the legal standards governing the case. Biffar Sur-Reply Decl., Ex. B, ¶¶3.C., 33-38.

Dist. LEXIS 71653, at *44. Instead of disputing this standard, defendants make the baseless claim that "Lead Plaintiffs do not identify any evidentiary disputes." Sur-Reply at 8.

Defendants' argument is easily refuted. First, defendants have abandoned their attempt to end the Class Period on May 13, 2008, which is a concession of the first evidentiary dispute that Plaintiffs identified. *See* Dkt. No. 154 at 23. Second, Plaintiffs established in their Reply that Novatel's stock dropped 27% by November 17, 2008 when defendants finally issued Novatel's long-delayed Form 10-Q and announced the results of its internal accounting review, disclosing it misstated revenue due to improper cut-off procedures, and outlined its internal control weaknesses. Dkt. No. 23, ¶84. This evidence creates an evidentiary dispute since defendants' only claim is that there was not a statistically significant stock price decline on the day of the announcement. Sur-Reply at 8. But as the *LDK* court recognized, "the Ninth Circuit does not require a stock-price impact in order to establish materiality." *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 529 n.5 (N.D. Cal. 2009). And the fact that the first-filed complaint in the case made a general allegation of internal control weaknesses does not immunize defendants from losses caused by their later disclosure of serious and extensive internal control weaknesses. Sur-Reply at 9. To say that there are no evidentiary disputes about when the Class Period should end simply has no basis.[7]

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for class certification should be granted.

DATED: May 7, 2010                    Respectfully submitted,


                                       s/ DOUGLAS R. BRITTON
                                       DOUGLAS R. BRITTON

---

[7] Defendants fail to meaningfully distinguish this case from *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628 (C.D. Cal. 2009), with respect to in-and-out traders. Sur-Reply at 8 n.10. They claim "[t]here is no question of fact here" but do not say how purported in-and-out traders in this case, which defendants have failed to define or identify, are any different than the in-and-out traders in *Cooper*. *Id.* In fact, contrary to their claim that "there is no conceivable way for these traders to establish damages," "in-and-out traders" could easily do so by showing that they purchased shares before and sold after a partial disclosure. *Id.* Defendants have offered no reason for the Court to make this factual determination at this stage of the litigation.

| | |
|---|---|
| 1 | |
| 2 | ROBBINS GELLER RUDMAN <br>   & DOWD LLP |
| 3 | DOUGLAS R. BRITTON <br> LUCAS F. OLTS |
| 4 | ERIC I. NIEHAUS <br> 655 West Broadway, Suite 1900 |
| 5 | San Diego, CA 92101 <br> Telephone: 619/231-1058 |
| 6 | 619/231-7423 (fax) |
| 7 | Lead Counsel for Plaintiffs |
| 8 | CAVANAGH & O'HARA <br> PATRICK O'HARA |
| 9 | 407 East Adams Street <br> Springfield, IL 62701 |
| 10 | Telephone: 217/544-1771 <br> 217/544-9894 (fax) |
| 11 | DYER & BERENS LLP |
| 12 | ROBERT J. DYER III <br> JEFFREY A. BERENS |
| 13 | 303 East 17th Avenue, Suite 300 <br> Denver, CO 80203 |
| 14 | Telephone: 303/861-1764 <br> 303/395-0393 (fax) |
| 15 | HOLZER HOLZER & FISTEL, LLC |
| 16 | COREY D. HOLZER <br> MICHAEL I. FISTEL, JR. |
| 17 | MARSHALL P. DEES <br> 200 Ashford Center North, Suite 300 |
| 18 | Atlanta, GA 30338 <br> Telephone: 770/392-0090 |
| 19 | 770/392-0029 (fax) |
| 20 | Additional Counsel for Plaintiff |

# CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 7, 2010.

    s/ DOUGLAS R. BRITTON
DOUGLAS R. BRITTON

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dougb@rgrdlaw.com

# Mailing Information for a Case 3:08-cv-01689-H -RBB

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Travis Biffar**
  tbiffar@jonesday.com,fswallace@jonesday.com

- **Robert S Brewer , Jr**
  rsbrewer@jonesday.com,pwalter@jonesday.com

- **Douglas R Britton**
  DougB@rgrdlaw.com,jillk@rgrdlaw.com,ldeem@rgrdlaw.com

- **Michael I. Fistel , Jr**
  mfistel@holzerlaw.com,dhotnog@holzerlaw.com

- **Michael M Goldberg**
  mgoldberg@glancylaw.com,info@glancylaw.com

- **Robert R Henssler , Jr**
  bhenssler@rgrdlaw.com

- **Sabrina S. Kim**
  skim@milberg.com,mbowman@milberg.com,cchaffins@milberg.com

- **Eric Landau**
  elandau@jonesday.com,kamarkwick@jonesday.com

- **Coty Rae Miller**
  cmiller@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew P Montgomery**
  e_file_sd@rgrdlaw.com

- **Eric I Niehaus**
  EricN@rgrdlaw.com,e_file_sd@rgrdlaw.com,ericniehaus@hotmail.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Cary D Sullivan**
  carysullivan@jonesday.com,kamarkwick@jonesday.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Patricia J. Villareal
Jones Day
2727 North Harwood Street
Dallas, TX 75201
```

- 13 -