1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re NOVATEL WIRELESS SECURITIES LITIGATION. | CASE NO. 08-CV-1689 H (RBB) |
| | **ORDER** |
| MAUREEN BACKE, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | **(1) GRANTING MOTION TO CERTIFY CLASS;** [Doc. No. 121.] |
| vs. | **(2) IDENTIFYING ACTION AS** *In re* **NOVATEL WIRELESS SECURITIES LITIGATION;** |
| | **(3) GRANTING** *EX PARTE* **APPLICATION TO FILE A SUR-REPLY;** [Doc. No. 167.] |
| | **(4) DENYING** *EX PARTE* **APPLICATION FOR ADDITIONAL BRIEFING;** [Doc. No. 169.] |
| NOVATEL WIRELESS, INC.; PETER V. LEPARULO; GEORGE B. WEINERT; ROBERT M. HADLEY; SLIM S. SOUISSI; and CATHERINE F. RATCLIFFE, | **AND** |
| Defendants. | **(5) DENYING** *EX PARTE* **APPLICATION FOR EVIDENTIARY HEARING** [Doc. No. 171.] |

On January 11, 2010, Lead Plaintiffs Plumbers & Pipefitters' Local 562 Pension Fund

and Western Pennsylvania Electrical Employees Pension Fund filed a motion to certify a class

1    pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. (Doc. No. 121.)

2    On March 15, 2010, Defendants filed a response in opposition. (Doc. No. 154.) On April 9,

3    2010, Plaintiffs filed their reply. (Doc. No. 164.) The Court held a hearing on Plaintiffs'

4    motion for class certification on April 26, 2010. Douglas Britton, Lucas Olts and Eric Niehaus

5    appeared on behalf of Plaintiffs. Eric Landau and Travis Biffar appeared on behalf of

6    Defendants. The Court submitted the matter. For the following reasons, the Court now

7    GRANTS Plaintiffs' motion for class certification.

8                                          **<u>BACKGROUND</u>**

9          This is a securities class action against Defendants Novatel Wireless, Inc.

10   ("Novatel"), Peter V. Leparulo, George B. Weinert, Robert M. Hadley, Slim S. Souissi, and

11   Catherine F. Ratcliffe (hereinafter collectively referred to as "Defendants" unless otherwise

12   specified). (Doc. No. 23, Consolidated Compl. ¶ 43-48.) Lead Plaintiffs Pension Fund

13   Group is comprised of Plumbers & Pipefitters' Local 562 Pension Fund and Western

14   Pennsylvania Electrical Employees Pension Fund. (<u>Id.</u> ¶ 41-42.)

15         Defendant Novatel is a provider of wireless broadband access solutions for the

16   worldwide mobile communications market. (<u>Id.</u> ¶ 43.) Novatel is headquartered in San

17   Diego, California and trades stock under the symbol NVTL on the NASDAQ. (<u>Id.</u>)

18   Defendant Peter V. Leparulo ("Leparulo") was, at relevant times, Chairman and Chief

19   Executive Officer ("CEO") of Novatel. (Consolidated Compl. ¶ 44.) Defendant George

20   Brad Weinert ("Weinert") was, at relevant times, President of Novatel. (<u>Id.</u> ¶ 45.)

21   Defendant Robert M. Hadley ("Hadley") was, at all relevant times, Senior Vice President

22   of Worldwide Sales and Marketing for Novatel. (<u>Id.</u> ¶ 46.) Defendant Slim S. Souissi

23   ("Souissi") was, at all relevant times, Senior Vice President and Chief Technology Officer.

24   (<u>Id.</u> ¶ 47.) Defendant Catherine F. Ratcliffe ("Ratcliffe") was, at all relevant times, Senior

25   Vice President of Business Affairs and General Counsel for Novatel. (<u>Id.</u> ¶ 48.)

26         Plaintiffs assert claims against Defendants for misrepresentations and insider trading

27   under sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b)

28   and 78t(a) (the "Exchange Act"), and Rule 10b-5, 17 C.F.R. § 240.10b-5. (<u>Id.</u> ¶ 143-155.)

Plaintiffs allege that Defendants Leparulo and Weinert made misleading misrepresentations and failed to disclose material facts during the class period in violation of §10(b) of the Exchange Act and Rule 10b-5. (Id. ¶142-145.)  Specifically, Plaintiffs allege that Defendant Leparulo and Weinder (1) failed to disclose material information about Novatel's contract with Sprint; (2) made false and misleading statements concerning Novatel's market share and financial results; and (3) failed to disclose that Novatel engaged in channel stuffing.[1]  (Id.)  According to Plaintiffs, Defendants knew as early as January 8, 2007, that Sprint, which accounted for approximately 38.2% of Novatel's revenues, planned on canceling its use of Novatel's 720 USB modem by July 20, 2007.  (Id. ¶ 14; Doc. No. 164 at 3.)  During this same time, Novatel was also losing market share to its competitors because it did not have a competitive product.  (Consolidated Compl. ¶¶ 24-27.)  According to Plaintiffs, Defendants did not disclose the impending Sprint cancellation to the public nor did they reveal their relative weakness in the marketplace.  (Id. ¶¶ 5-6.)  Instead, they made numerous misleading statements regarding Novatel's competitiveness in the market and future financial prospects. (Id. ¶¶ 57-64.)  Lastly, Defendants also allegedly engaged in channel stuffing and improperly recognized revenue in 1Q08 in violation of their own internal revenue cut-off procedures and Generally Accepted Accounting Principles ("GAAP").  (Id. ¶¶ 6, 32.)

On July 20, 2007, a business analyst revealed the truth to the market regarding the impending Sprint cancellation.  (Id. ¶ 17.)  Novatel's stock price fell 31% as a result of this disclosure, from $29 per share in late July to almost $20 by the beginning of August.  (Id.)  On February 20, 2008 and April 14, 2008, Novatel made disclosures contradicting their previous statements regarding their competitiveness and market share.  (Id. ¶¶ 32,76.)  These disclosures allegedly caused Novatel's stock price to respectively drop $3.17 and $2.25 amidst heavy trading volume.  (Id. ¶¶ 7,8; Doc. No. 84, Ex. 3 at 128.)  On August 19,

---

[1] Channel stuffing is a practice where a corporation ships unneeded products to customers in order to inflate sales and revenue in the short term.  In re Connectics Corp. Sec. Lit., 257 F.R.D. 572, 574 (N.D. Cal. 2009).  This allows the corporation to recognize the revenue in the current quarter and potentially meet or exceed Wall Street expectations.

2008, Novatel made disclosures regarding their improper recognition of revenue. (Consolidated Compl. ¶¶ 81, 128.) Based on it's own accounting review, Novatel then moved at least $3.4 million in revenue out of 1Q08. (Id. ¶ 81.) As a result of those disclosures, Novatel's stock price dropped from $8.40 to $6.29 in one day, a 25% decline. (Id. ¶¶ 83, 128.) On September 15, 2008, Plaintiffs filed their first complaint in this action. (Doc. No. 1.) On November 10, 2008, Novatel finally issued its delayed Form 10-Qs for the quarters ended March 31, 2008 and June 30, 2008, disclosing that the revenues for the quarter ended March 31, 2008 were misstated by $3.4 million due to improper revenue cutoff procedures and accounting irregularities relating to certain customer contracts. (Consolidated Compl. ¶ 84.) After this disclosure, Novatel's stock fell below $5 per share, trading as low as $3.90 per share by November 17, 2008, a 27% decline from its November 10, 2007 open of $15.33 per share. (Id. ¶ 85).

Plaintiffs also allege that Defendants engaged in insider trading by using their knowledge of the impending cancellation of the Sprint contract to sell their stocks at an artificially inflated price in violation of §10(b) of the Exchange Act and Rule 10b-5. (Id. ¶¶ 146-153.) Allegedly, Defendants sold the following amounts of stock for the stated profits: Defendant Leparulo sold 473,357 shares of stock for proceeds of $11,530,258; Defendant Weiner sold 121,985 shares of stock for proceeds of $3,305,560; Defendant Hadley sold 247,198 shares of stock for proceeds of $4,681,696; Defendant Souissi sold 272,560 shares of stock for proceeds of $5,488,870; and Defendant Ratcliffe sold 143,366 shares of stock for proceeds of $3,646,804. (Id. ¶¶ 44-48.) Plaintiffs argue the individual Defendants are personally liable for the alleged violations of the Exchange Act and Rule 10b-5 because they are controlling persons under §20(a) of the Exchange Act. (Id. ¶ 155.) Plaintiffs bring this case on behalf of all similarly situated persons who purchased Novatel common stock during the proposed class period.[2] (Id. ¶ 1.) Plaintiffs' proposed class period is from February 27, 2007 to November 10, 2008 (the "class period"). (Id.) Plaintiffs also request

_____

[2] Excluded from the Class are Defendants, and the directors and officers of Novatel and their families and affiliates. (Doc. No. 121-1 at 9.)

1    appointment as class representatives.  (Doc. No. 121-1 at 9.)

2                                    **DISCUSSION**

3    **I.  Class Certification Standards**

4           To obtain class certification, Plaintiff must demonstrate that they have met the four

5    requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  Dukes v. Wal-

6    Mart Stores, Inc., Nos. 04-16688, 04-16720, 2010 WL 1644259, at *3-4 (9th Cir. Apr. 26,

7    2009); Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule

8    23(a) requires Plaintiff to demonstrate that: (1) the class is so numerous that joinder of all

9    members is impracticable; (2) there are questions of law or fact common to the class; (3) the

10   claims or defenses of the representative parties are typical of the claims or defenses of the

11   class; and (4) the representative parties will fairly and adequately protect the interests of the

12   class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that the questions of law

13   or fact common to class members predominate over any questions affecting only individual

14   members, and that a class action is superior to other available methods for fairly and efficiently

15   adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  "Rule 23 'provides district courts with

16   broad discretion to determine whether a class should be certified, and to revisit that

17   certification throughout the legal proceedings before the court.'"  Dukes, 2010 WL 1644259,

18   at *3 (quoting Armstrong v. Davis, 275 F.3d 849, 871 n.28 (9th Cir. 2001)).

19   **II.  Requirements of Rule 23(a)**

20          To obtain class certification, "actual, not presumed, conformance with Rule 23(a) [is]

21   . . . indispensable," and the Court conducts a "rigorous analysis" to ensure these requirements

22   are satisfied.  General Tel. Co. v. Falcon, 457 U.S. 147, 160-61 (1982).  This rigorous analysis,

23   as the Ninth Circuit explained in Dukes, "does not mean that a district court must conduct a

24   full-blown trial on the merits prior to certification. A district court's analysis will often, though

25   not always, require looking behind the pleadings, even to issues overlapping with the merits

26   of the underlying claims."  Dukes, 2010 WL 1644259, at *5 (discussing Falcon, 457 U.S. at

27   160-61).  Thus, while a court at the class certification stage is prohibited from making

28   determinations on the merits that do not overlap with the Rule 23 inquiry, district courts must

1  make determinations that each requirement of Rule 23 is actually met.  <u>Dukes</u>, 2010 WL

2  1644259, at *13.  Plaintiff must demonstrate to the court's satisfaction, and not merely allege,

3  that the suit is appropriate for class resolution.  <u>Id.</u>

**A.  Numerosity**

5  Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all

6  members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticability does not mean

7  impossibility," rather the inquiry focuses on the difficulty or inconvenience of joining all

8  members of class.  <u>Harris v. Palm Springs Alpine Estates, Inc.</u>, 329 F.2d 909, 913-914 (9th Cir.

9  1964).  In determining whether numerosity is satisfied, the Court may consider reasonable

10  inferences drawn from the facts before it.  <u>Gay v. Waiters' & Dairy Lunchmen's Union</u>, 549

11  F.2d 1330, 1332 n.5 (9th Cir. 1977).

12  Here, Plaintiffs contend the proposed class satisfies the numerosity requirement because

13  during the class period Defendant Novatel had more than 31 million shares of common stock

14  outstanding on the NASDAQ Global Select Market, a reported trading volume of more than

15  556 million shares, and an average reported daily trading volume of more than 1.28 million

16  shares.  (Doc. No. 121-1 at 17-18; Ex. 1 at 10-11.)  Defendants do not dispute that numerosity

17  is satisfied by the proposed class.  (Doc. No. 154.)  The Court concludes that Plaintiffs

18  sufficiently demonstrated that joinder of all class  members would be impracticable due to the

19  enormous trading volume of Defendant Novatel's stock on a national market.  <u>See</u> <u>Blackie v.</u>

20  <u>Barrack</u>, 524 F.2d 891, 901 (9th Cir. 1975) (numerosity satisfied when the class period

21  encompassed purchasers involved in transactions involving about 21 million shares).

**B.  Commonality**

23  "The commonality test is 'qualitative rather than quantitative'– one significant issue

24  common to the class may be sufficient to warrant certification."  <u>Dukes</u>, 2010 WL 1644259,

25  at *20.  Commonality is satisfied by "the existence of shared legal issues with divergent factual

26  predicates" or a "common core of salient facts coupled with disparate legal remedies within

27  the class."  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019-20 (9th Cir. 1998).  All questions

28  of fact and law need not be common to satisfy the rule.  <u>Id.</u>  The named Plaintiff need only

share at least one question of fact or law with the prospective class. <u>Rodriguez v. Hayes</u>, 591 F.3d 1105, 1122 (9th Cir. 2010) (citing <u>Baby Neal for & by Kanter v. Casey</u>, 43 F.3d 48, 56 (3rd Cir. 1994)).

Here, Plaintiffs allege that there is a common nucleus of operative facts based on Defendants' scheme to artificially inflate the price of Novatel securities by deceiving the investing public. (Doc. No. 121-1 at 20.) Plaintiffs contend that the common questions of fact and law presented in this case are: (1) whether Defendants violated the Exchange Act; (2) whether Defendants omitted and/or misrepresented material facts; (3) whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; (4) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (5) whether the price of Novatel's common stock was artificially inflated; and (6) the extent of damage sustained by class members and the appropriate measure of damages. (<u>Id.</u> at 19.)

Plaintiffs seek redress against Defendants for material misrepresentations and insider trading under §10(b) and §20(a) of the Exchange Act and Rule 10b-5. Defendants' potential liability under these sections arises out of their conduct during the class period in relation to the Sprint contract, Novatel's market share and financial results, and Novatel's recognition of revenue. Plaintiffs allege that these actions were in furtherance of a scheme designed to artificially inflate Novatel's stock price so they could sell their stock for a profit. These actions provide a common core of salient facts sufficient to satisfy the commonality requirements. Additionally, Plaintiffs' and the class' causes of action share common legal issues and elements of proof. <u>See In re Gilead Sciences Sec. Litig.</u>, 536 F.3d 1049, 1055 (9th Cir. 2008); <u>United States v. Smith</u>, 155 F.3d 1051, 1063-69 (9th Cir. 1998).[3] Specifically, Defendants'

---

[3] To establish a violation for a misrepresentation under §10(b) of the Exchange Act and Rule 10b-5, Plaintiff must establish: (1) a material misrepresentation or omission of fact; (2) scienter; (3) a connection with the purchase or sale of a security; (4) transaction and loss causation; and (5) economic loss. <u>In re Gilead Sciences Sec. Litig.</u>, 536 F.3d 1049, 1055 (9th Cir. 2008). To establish a violation for insider trading under §10(b) of the Exchange Act and Rule 10b-5, Plaintiff must establish that: (1) Defendants traded in the securities of their corporation on the basis of material nonpublic information; (2) Defendants acted with scienter

1    conduct in relation to the cancellation of the Sprint contract gives rise to both the

2    misrepresentation and insider trading claims.  Under both theories of liability, Plaintiff must

3    prove that the information concerning the cancellation of the Sprint contract was "material,"

4    and that Defendants acted with "scienter" when they made statements about the Sprint contract

5    or sold their company stock.  Gilead Sciences, 536 F.3d at 1055; Smith, 155 F.3d at 1063-69.

6    See also Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (defining "material" information

7    as information the "reasonable investor" would consider as having significantly altered the

8    "total mix of information available"); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S.

9    308, 319 (2007) (defining "scienter" as "a mental state embracing intent to deceive,

10   manipulate, or defraud.").

11          In their response in opposition to the motion for class certification, Defendants argue

12   that "[a] single class should not be certified" because all class members do not assert the same

13   legal theories and do not allege the same facts. (Doc. No. 154 at 13.)  Specifically, Defendants

14   argue that insider trading claim is fundamentally different from the misrepresentation claim,

15   and that separate insider trading and misrepresentation classes are warranted.  (Id. at 13-14.)

16   After due consideration, the Court concludes that the claims of the Plaintiffs and the

17   prospective class share central questions of fact and law regarding Defendants' alleged scheme

18   to artificially inflate the price of Novatel securities.   Accordingly, the commonality

19   requirement is satisfied because there is a  "common core of salient facts" underlying

20   Plaintiffs' claims, and the named Plaintiffs share at least one common question of law with the

21   proposed class.  Hanlon, 150 F.3d at 1019-20; Rodriguez, 591 F.3d at 1122.

22   **C.  Typicality**

23          Rule 23(a)(3) requires the representative party to have claims or defenses that are

24   "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied

25   "when each class member's claim arises from the same course of events, and each class

26   _____

27   when making these trades; and (3) these trades were contemporaneous with the trades of class
     members.  United States. v. O'Hagan, 521 U.S. 642, 651-52 (1997); Brody v. Transitional
     Hospitals Corp., 280 F.3d 997, 1001 (9th Cir. 2002); United States v. Smith, 155 F.3d 1051,

28   1067-69 (9th Cir. 1998).

members makes similar legal arguments to prove the defendants' liability." Rodriguez, 591 F.3d at 1124 (citations omitted).  The typicality requirement is "permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.  However, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.1992) (citations omitted).  The defense of non-reliance is generally not "a basis for denial of class certification." Id.

To prove a violation of §10(b) of the Exchange act and Rule 10b-5, Plaintiff must demonstrate class wide reliance on Defendants' misrepresentations or omissions. Dura Pharmaceuticals, Inc. v. Brudo, 544 U.S. 336, 341 (2005).  Class wide reliance may be established through the fraud on the market doctrine. Basic Inc., 485 U.S. at 247 ("where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed.").  However, the fraud on the market doctrine may be rebutted by "any showing that severs the link between the alleged misrepresentation" and either the "price paid by the plaintiff, or his decision to trade at a fair market price." Id. at 248-49.  If a defendant rebuts the fraud on the market presumption in regards to the named plaintiff, the named plaintiff will no longer satisfy typicality because they will be subject to a unique defense of non-reliance. Hanon, 976 F.2d at 508.

Defendants argue that typicality is not satisfied because Plaintiffs are subject to the unique defense of non-reliance. (Doc. No. 151 at 14.)  Specifically, Defendants argue that Plaintiffs purchased Novatel stock after they had notice of the insider trading and fraudulent conduct, and that Plaintiffs cannot rely on the integrity of the market price because they hired investment managers to purchase their stocks. (Id. at 14-15.)  Plaintiff point out that Plaintiffs purchased stock after partial disclosures of fraud and insider trading, and that Defendants simultaneously offset the negative disclosures by making misleading claims about the state of Novatel's business. (Doc. No. 164 at 11.)  Plaintiffs also note that Plaintiffs' post-disclosure

1  purchases will not become the focus of the litigation, and that the defense of non-reliance is

2  not a basis for the denial of class certification.  (Id. at 11-12.)

3        The Court concludes that Plaintiffs are sufficiently typical because their claims are co-

4  extensive with those of the class, and they are not subject to a unique defense that would

5  threaten to become the focus of the litigation.  Rodriguez, 591 F.3d at 1124; Hanon, 976 F.2d

6  at 508.  Plaintiffs seek to represent a class of persons who purchased common stock in Novatel

7  during the class period.  Plaintiffs' and the class' claims all arise from Defendants' conduct

8  during the class period in relation to the Sprint contract, Novatel's market share and financial

9  results, and Novatel's recognition of revenue.  Moreover, Plaintiffs' and the class' legal

10  arguments are similar because they will both utilize the fraud on the market doctrine to prove

11  reliance.  Basic Inc., 485 U.S. at 247.  Contrary to Defendants' argument, Plaintiffs are entitled

12  to rely on the fraud on the market doctrine despite their status as an institutional investor.

13  Hanon, 976 F.2d at 506 ("Sophisticated investors are as entitled to rely on the

14  fraud-on-the-market theory as anyone else.").  Moreover, Defendants' argument would

15  preclude institutional investors from serving as class representatives because their investment

16  manager would always rely on more than the mere market price of a stock when purchasing.

17  In re Providian Financial Corp. Sec. Lit., No. C 01-03952 CRB, 2004 WL 5684494 at *3-4

18  (N.D. Cal. Jan. 15, 2004).  This would frustrate the purpose of the Private Securities Litigation

19  Reform Act, which is designed to "promote the goal of attracting institutional investors" to

20  serve as lead plaintiff.  See 15 U.S.C. 78u-4(a)(3)(b)(iii); In re Cavanaugh, 306 F.3d 726, 737-

21  38 (9th Cir. 2002).

22        Additionally, post-disclosure purchases do not rebut the presumption of reliance on the

23  market price with regard to the initial purchase of stock, and thus Plaintiffs are not per se

24  atypical even though they purchased stock after some of the alleged disclosures.  In re

25  Connetics Corp. Sec. Litig., 257 F.R.D. 572, 576 (N.D. Cal. 2009) (stating that "the weight of

26  authority appears to favor the position that the purchase of stock after a partial disclosure is not

27  a per-se bar to satisfying the typicality requirement"); In re Providian, 2004 WL 5684494, at

28  *4-5 (holding that lead plaintiff that bought stock after the adverse disclosures had satisfied

the typicality requirement); <u>In re Emulex Corp. Sec. Litig.</u>, 210 F.R.D. 717, 719 (C.D. Cal. 2002); <u>see</u> <u>also</u> <u>Feder v. Electronic Data Sys. Corp.</u>, 429 F.3d 125, 137 (5th Cir.2005) ("We reject the argument that a proposed class representative in a fraud-on-the-market securities suit is as a matter of law categorically precluded from meeting the requirements of Rule 23(a) simply because of a post-disclosure purchase of the defendant company's stock.  Reliance on the integrity of the market prior to disclosure of alleged fraud (i.e. during the class period) is unlikely to be defeated by post-disclosure reliance on the integrity of the market.").  Defendants have not offered evidence to prove this is truly a unique defense applicable only to Plaintiff, because other members of the proposed class could also have bought stock after the alleged disclosures.  <u>In re Connetics</u>, 257 F.R.D. at 576-77.  Lastly, Defendants have not established that this would become the "focus of the litigation."  <u>Hanon</u>, 976 F.2d at 508.  Therefore, Plaintiff is sufficiently typical because its claims are co-extensive with the class' claims, and they are not subject to a unique defense that would threaten to become the focus of the litigation.  <u>Rodriquez</u>, 591 F.3d at 1124; <u>Hanon</u>, 976 F.2d at 508.

**D.  Adequacy of Representation**

Rule 23(a) also requires the representative parties to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit set a two-prong test for this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 957 (9th Cir. 2003) (citing <u>Hanlon</u>, 150 F.3d at 1020).

It does not appear that there are any conflicts between the named plaintiffs and other members of the proposed class; their interests are aligned because the named plaintiffs, like members of the proposed class, seek redress for the losses they suffered as a result of Defendants' alleged fraud.  The Court previously made a preliminary determination that Plaintiffs, as institutional investors, are adequate class representatives.  (Doc. No. 21 at 6.)  In granting the Pension Fund Group's motion for appointment as lead plaintiff, the Court stated that "Pension Fund Group is the sort of lead plaintiff envisioned by Congress in the enactment

1   of the PSLRA–a sophisticated institutional investor with a real financial interest in the

2   litigation." (Id.) Additionally, Plaintiffs' counsel is experienced in securities fraud class action

3   and can prosecute this action vigorously.  (See Doc. No. 121-6, Britton Decl. Ex. 4, Firm

4   Resume.)  The Court concludes that the Lead Plaintiffs and their counsel will adequately

5   represent the class.  Accordingly, all requirements of Rule 23(a) are satisfied.

6   **II.  Requirements of Rule 23(b)(3)**

7          Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties

8   can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022

9   (internal quotations omitted).  Rule 23(b)(3) calls for two separate inquiries: (1) do issues

10  common to the class "predominate" over issues unique to individual class members, and (2)

11  is the proposed class action "superior" to other methods available for adjudicating the

12  controversy.  Fed. R. Civ. P. 23(b)(3).

13         The predominance analysis under Rule 23(b)(3) is more stringent than the commonality

14  requirement of Rule 23(a)(2).  The analysis under Rule 23(b)(3) "presumes that the existence

15  of common issues of fact or law have been established pursuant to Rule 23(a)(2)."  In contrast

16  to Rule 23(a)(2), "Rule 23(b)(3) focuses on the relationship between the common and

17  individual issues."  Class certification under Rule 23(b)(3) is proper when common questions

18  present a significant portion of the case and can be resolved for all members of the class in a

19  single adjudication. Hanlon, 150 F.3d at 1019-22.

20         In evaluating predominance and superiority, the Court must consider: (1) the extent and

21  nature of any pending litigation commenced by or against the class involving the same issues;

22  (2) the interest of individuals within the class in controlling their own litigation; (3) the

23  convenience and desirability of concentrating the litigation in a particular forum; and (4) the

24  manageability of the class action. Fed. R. Civ. P. 23(b)(3)(A)-(D); Amchem Products, Inc. v.

25  Windsor, 521 U.S. 591, 615-16 (1997).  Under Rule 23(c)(1), the Court can alter or amend an

26  order regarding class certification.  Fed. R. Civ. P. 23(c)(1).

27         After considering the factors outlined in Amchem, 521 U.S. at 615-16, the Court

28  concludes that they have been met and that a class action is the fairest and most efficient way

1   of proceeding.  See Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 339 (1980)  (class

2   action may be only effective redress for class members for whom bringing individual suits

3   would not be feasible); Epstein v. MCA, Inc., 50 F.3d 644, 668 (9th Cir.1995), rev'd on other

4   grounds (class action particularly appropriate in suit brought by shareholders who may

5   otherwise have brought thousands of individual actions); Blackie, 524 F.2d at 905-08 (where

6   there is common conduct of wrongdoing affecting all members of class, common questions

7   predominate).  The Ninth Circuit has stated a preference for resolving securities claims via

8   class action as a means of deterring fraud.  Harris, 329 F.2d at 913; see also In re First Alliance

9   Mortg. Co., 471 F.3d 977, 990 (9th Cir. 2006); Blackie, 524 F.2d at 902.

10          Plaintiffs' claims under §10(b) of the Exchange Act are entitled to a presumption of

11  "fraud-on-the-market" reliance, because Novatel's stock traded in an efficient market.  See

12  Basic, Inc., 485 U.S. at 247.  Because Plaintiffs have alleged a continuous course of conduct,

13  the fact that different members of the class may have invested at different times and may have

14  been exposed to different misrepresentations does not preclude a finding that common issues

15  predominate.  Blackie, 524 F.2d at 902.

16          Defendants argue that Plaintiffs lack standing to assert their insider trading claims

17  because Lead Plaintiffs did not trade within one day of any Defendant.  (Doc. No. 154 at 19-

18  24.)   To maintain a cause of action for insider trading, Plaintiff must have traded

19  "contemporaneously" with Defendants.  Neubronner v. Milken, 6 F.3d 666, 669 (9th Cir.

20  1993).  The Ninth Circuit has not "define[d] the exact contours of the [time] period."  Brody

21  v. Transitional Hospitals Corp., 280 F.3d 997, 1002 (9th Cir. 2002); see also Neubronner, 6

22  F.3d at 669 (stating the time period is "not fixed").  However, trades more than two months

23  apart are not contemporaneous.  Brody, 280 F.3d at 1002; see also Neubronner, 6 F.3d at 669-

24  70 (indicating trades one month apart are not contemporaneous).  The Court concludes that

25  Plaintiffs' trades occurring within four business days after Defendants' sales are sufficiently

26  contemporaneous.  See In re Silicon Graphics, Inc. Sec. Litig., 970 F. Supp. 746, 761 ("Given

27  that stock trades settle within three days . . . [o]nce an insider's sale settles, other traders are

28  no longer in the market with that insider and risk no relative disadvantage from that insider's

1   failure to disclose.").  A four day trading period reasonably protects Plaintiffs and class

2   members, serves as a legitimate proxy for the traditional privity requirement, and protects

3   Defendants from limitless liability.  See e.g. Johnson v. Aljian, 257 F.R.D. 587, 595 (C.D. Cal.

4   2009) (holding trades within four days of defendant's sales were contemporaneous).

5   **III.  Class Period**

6       Plaintiffs' proposed class period is from February 27, 2007, the date when Novatel

7   issued a press release announcing Novatel's financial results for 4Q06 and the full fiscal year,

8   to November 10, 2008, the date when Novatel issued its Form 10-Q and announced the results

9   of its internal accounting review, disclosing it misstated revenue due to improper cut-off

10  procedures and outlined its internal control weaknesses.   (Doc. No. 121-1 at 9, 14.)

11  Defendants argue that the class period should end on May 13, 2008, when Novatel announced

12  that it would be unable to file its Form 10-Q for the first quarter of 2008, or on August 19,

13  2008, when Novatel reported preliminary second quarter 2008 results that were below

14  expectations, and in any case no later than September 15, 2008, the date on which the first

15  complaint in this action was filed.  (Doc. No. 154 at 30-31.)  The Court concludes that the

16  appropriate class end date is September 15, 2008, when the alleged securities violations were

17  disclosed through the commencement of this action. See In re CMS Energy Securities

18  Litigation, 236 F.R.D. 338, 342 (E.D. Mich. 2006); Dorchester Investors v. Peak Trends Trust,

19  No. 99 Civ. 4696, 2002 WL 272404, at *5 (S.D.N.Y. Feb. 26, 2002).

20  **IV.  Defendants' *Ex Parte* Applications**

21      Before the Court are Defendants' three *ex parte* applications.  On April 25, 2010, on the

22  eve of the certification hearing, Defendants filed an *ex parte* application for leave to file a sur-

23  reply in opposition to Lead Plaintiffs' motion for class certification.[4]  (Doc. No. 167.)  The

24  Court now GRANTS Defendants' *ex parte* application for leave to file a sur-reply.

25      On April 26, 2010, after the Court hearing, Defendants filed another *ex parte*

26

27      [4] Attached to the *ex parte* application was a proposed sur-reply, as well as a rebuttal
    declaration of Defendants' expert.  (Doc. No. 167, Exs. A & B.)  The Court held a hearing on
    April 26, 2010, and allowed Plaintiffs to file a response to Defendants' sur-reply.  On May 7,
28  2010, Plaintiffs filed their response to Defendants' sur-reply.  (Doc. No. 176.)

1  application for additional briefing. (Doc. No. 169.) On April 30, 2010, without leave of Court,

2  Defendants filed yet another *ex parte* application, requesting an evidentiary hearing to assess

3  expert testimony on Rule 23 issues.[5] (Doc. No. 171.) The issues before the Court have been

4  sufficiently briefed by both parties. Accordingly, the Court DENIES Defendants' *ex parte*

5  application for additional briefing, and DENIES the *ex parte* application for an evidentiary

6  hearing.

7                                                    **Conclusion**

8         For the reasons above, the Court GRANTS Plaintiffs' motion for class certification, and

9  identifies this action as <u>In re Novatel Wireless Securities Litigation</u>. The Court GRANTS

10  Defendants' ex parte application for leave to file a sur-reply. The Court DENIES Defendants'

11  *ex parte* application for additional briefing, and DENIES the *ex parte* application for an

12  evidentiary hearing.

13         The Court concludes that Plaintiffs have met their burden of demonstrating that the

14  requirements of the Federal Rule of Civil Procedure 23 are satisfied, and certifies the following

15  class:

16              All persons who purchased Novatel Wireless, Inc. common stock between

17              February 27, 2007 and September 15, 2008 and who were damaged thereby.

18              Excluded from the Class are Defendants, directors, and officers of Novatel and

19              their families and affiliates.

20  The Court appoints Lead Plaintiffs Plumbers & Pipefitters' Local 562 Pension Fund and

21  Western Pennsylvania Electrical Employees Pension Fund as class representatives.

22         **IT IS SO ORDERED.**

23  DATED: May 12, 2010

24

25                                              MARILYN L. HUFF, District Judge
                                                UNITED STATES DISTRICT COURT
26

27  _____

28        [5] The Court previously gave Plaintiffs the opportunity to respond to Defendants'
    applications. (<u>See</u> Doc. Nos. 170 & 172.)