UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re NOVATEL WIRELESS SECURITIES LITIGATION | Civil No.08cv1689 AJB (RBB)<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE EXPERT TESTIMONY OF D. PAUL REGAN AND ANTHONY LENDEZ<br><br>[Doc. Nos. 298 and 397] |

Defendants filed a motion to exclude expert testimony of Plaintiffs' expert D. Paul Regan, [Doc. No. 298], on February 15, 2011, which was heard on July 8, 2011 and taken under submission. The Plaintiffs filed a motion to exclude the expert testimony of Defendants' rebuttal expert Anthony Lendez, [Doc. No. 397], on July 15, 2011. The hearing on Plaintiffs' motion was held on November 18, 2011. Based upon the moving papers and arguments and for the reasons set forth herein, the Court hereby GRANTS IN PART and DENIES IN PART the Defendants motion, [Doc. No. 298] and GRANTS IN PART AND DENIES IN PART the Plaintiffs' motion, [Doc. No. 397], as set forth below.

### *Background*

On February 20, 2008, Novatel disclosed that it had missed its revenue guidance for 4Q07 by $2 million and the projected revenue guidance for 1Q08 was far lower than analysts expected. Ex. 2 at NOV-E-2788091-92. Two months later, Novatel announced a $19 million revenue shortfall (nearly $30

million below analysts' expectations) and attributed it, in part, to weaker than expected demand at Verizon Wireless ("Verizon"), its largest customer at the time.

After that announcement, and after a Company whistleblower subsequently disclosed questionable accounting practices, Novatel undertook an accounting investigation into whether several specific transactions violated Generally Accepted Accounting Principles (hereinafter "GAAP"). In the course of that investigation, the Company retained the law firm of Paul Hastings to act as its investigative counsel, and the law firm in turn, retained PricewaterhouseCoopers (hereinafter "PwC"), an accounting firm, to assist in the investigation. For purposes of its own audit opinion, Novatel retained KPMG to shadow the investigation. Ex. 3 at 107:10-110:22. On August 19, 2008, Novatel announced that the investigation uncovered $3.4 million in GAAP violations, where revenue was recognized improperly in 1Q08 instead of 2Q08. Ex. 4 at NOV-E-1216854.

Plaintiffs subsequently conducted discovery on Novatel's accounting practices between 2006 and 2008. Plaintiffs' accounting expert D. Paul Regan opined, based on his review of that discovery, that Novatel had actually been manipulating its financial results for all financial quarters between 2Q06 and 3Q08. Ex. 5 at Ex. C(1). Plaintiffs served Defendants with Mr. Regan's report on December 13, 2010. *Id.* Defendants proffered the rebuttal report of Lendez, an accountant and CPA, on January 12, 2011. *See* Ex. 6.

Mr. Lendez analyzed the report of D. Paul Regan and submitted a rebuttal report that, among other things, criticized Mr. Regan for (i) not conducting a proper GAAP analysis of the approximately 125 transactions he now challenges, (ii) failing to address the bases for the company's contemporaneous accounting, which was approved by its auditors, (iii) relying exclusively on a sales worksheet as the cornerstone of his accounting analysis concerning so-called "pull in" transactions without consideration of several columns, (iv) offering an "undue pressure" opinion that was not the product of any established test, and (v) misunderstanding and misapplying disclosure rules. Defendants filed a motion to exclude these opinions.

Plaintiffs also filed a motion seeking to exclude four categories of opinion offered in the Lendez Report: (1) opinions that it was reasonable for Novatel's management to rely on KPMG; (2) opinions

that management did not exert undue pressure to manage revenue and earnings; (3) opinions concerning the effectiveness of Novatel's internal controls; and (4) opinions concerning the application of GAAP. Plaintiffs' base their motion to exclude Mr. Lendez's opinions on the following grounds: (1) failure to comply with Rule 26; (2) reliance on the opinions of KPMG, PwC, and Paul Hastings render Lendez's opinion unreliable; (3) Undue Pressure opinion must be excluded under Rule 702; and (4) opinions on the Application of GAAP are unreliable, irrelevant, and offer improper legal conclusions.

### *Legal Standard*

Federal Rule of Evidence 702 provides that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony under Rule 702 must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). When considering evidence proffered under Rule 702, the trial court must act as a "gatekeeper" by making a preliminary determination that the expert's proposed testimony is reliable. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), amended by 319 F.3d 1073 (9th Cir.2003).

As a guide for assessing the scientific validity of expert testimony, the Supreme Court provided a non-exhaustive list of factors that courts may consider: (1) whether the theory or technique is generally accepted within a relevant scientific community, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory or technique can be tested. *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The Ninth Circuit also has indicated that independent research, rather than research conducted for the purposes of litigation, carries with it the indicia of reliability. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir.1995) ( "*Daubert* II"). In particular, using independent, pre-existing research "provides objective proof that the research comports with the dictates of good science" and is less likely "to have been biased by the promise of remuneration." *Id.* If the testimony is not based on "pre-litigation" research or if the expert's research has not been subjected to peer review, then the expert must explain precisely how he went about reaching his conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a

published article in a reputable scientific journal or the like, to show that he has followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in his field. *Id.* at 1318–19 (citing *United States v. Rincon*, 28 F.3d 921, 924 (9th Cir.1994)); *see also Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 597 (9th Cir.1996). The proponent of the evidence must prove its admissibility by a preponderance of proof. *See Daubert*, 509 U.S. at 593 n. 10.

### *Discussion*

### *I. Defendants Motion*

The Defendants have filed a motion, [Doc. No. 298], seeking to exclude the testimony of Plaintiffs' accounting expert, D. Paul Regan, as inadmissible under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993), and its progeny. Mr. Regan stated in his report of December 13, 2010, and further clarified during his deposition, the following opinions in this case: (1) Novatel Wireless, Inc. ("Novatel") improperly "pulled in" revenue to the current quarter by shipping product before the customer's request date; (2) Management exerted "undue pressure" to manage its publically reported revenue and earnings at Novatel; and (3) Novatel failed to abide by SOP 94-6 and Securities and Exchange Commission ("SEC") guidance requiring the disclosure of certain "channel stuffing" practices and Sprint's decision to stop using the U720 modem.

#### *A. Mr. Regan's "Pull In" Opinion*

Mr. Regan opines that across the ten quarters ending September 30, 2008, Novatel improperly shipped $19.5 million worth of product "early." In particular, for the 125 "pull in" transactions identified, (Report (Ex. A), Exhibit D to Report), Mr. Regan contends customers requested delivery in a subsequent quarter, but Novatel delivered the product, and recognized the revenue, in the current quarter. Mr. Regan contends Novatel should have delayed recognizing the revenue on these transactions until the subsequent quarter.

Plaintiffs contend that these Novatel practices violated revenue recognition and disclosure rules established under GAAP and relevant SEC rules and argue that GAAP requires that "persuasive evidence of an arrangement" exist in order to record revenue. Mr. Regan states that he has found no such evidence. Mr. Regan opines that the "facts and circumstances of Novatel's 'pull in' transactions

prohibited revenue recognition under GAAP" based on contracts, emails, testimony, and various transactional documents.

Defendants argue that Mr. Regan's analysis invades the province of the Court, is built on incorrect assumptions and is demonstrably unreliable, requiring its exclusion. Defendants motion seeks exclusion of Mr. Regan's pull-in opinion on two grounds: (1) Defendants argue that his position "rests on nothing more than a thinly-veiled legal conclusion that Novatel had no right to deliver product even a day earlier than requested by its customers;" and (2) Defendants contend that Mr. Regan "improperly relie[d] exclusively on a spreadsheet maintained by the Novatel sales department."

### *1. Whether Mr. Regan's Pull In opinions Rest on Improper Legal Conclusions*

Defendants argue that Mr. Regan's 'pull in' opinion is unreliable and inadmissible because it offers inappropriate and flawed legal analysis. Specifically, the Defendants contend Mr. Regan's 'pull in' opinion is a thinly veiled legal conclusion that Novatel had no right to deliver product even a day earlier than requested per the contract and did not consider all the appropriate evidence. The court finds that to the extent that Mr. Regan's 'pull in' opinion addresses whether Defendants complied with SEC and GAAP requirements is both reliable and admissible. However, to the extent that Mr. Regan opines on the question of whether the contracts at issue allowed Defendants to ship products to customers in the manner they did, the Court finds such opinions to be improper legal conclusions and therefore GRANTS the Plaintiffs' motion to exclude these improper legal conclusions.

### *2. Whether Mr. Regan's Opinion Relied on Improper or Insufficient Data or Misinterpreted a Sales Worksheet*

Specifically, Defendants argue that Mr. Regan relies on a Novatel worksheet that isn't ordinarily used for such purposes and Mr. Regan omitted two of the columns entirely, the "promise date" and the "scheduled ship date" columns. Defendants contend that Mr. Regan "cherry picked" the information he wanted to use and disregarded the rest. The Court finds that Defendants contention that Mr. Regan's Opinion is based on insufficient data and a misinterpretation of a sales worksheet is not supported by the record. Despite Defendants arguments to the contrary, the Court finds that Mr. Regan's opinion is based upon numerous sources including contracts, emails, testimony, and various transactional documents, not just the spreadsheet as suggested by the Defendants. Based upon the foregoing, Defendants motion to exclude is GRANTED only as to Mr. Regan's opinions regarding whether or not the Defendants actions

were allowed under the contracts at issue. The remainder of the Defendants motion to exclude Mr. Regan's 'pull-in' opinion is DENIED.

### *B. Mr. Regan's Subjective Opinion As To "Undue Pressure"*

Defendants contend that Mr. Regan's opinion that Novatel's management exerted "undue pressure" to manage its earnings, selectively draws from e-mails and testimony, is not supported by any specialized knowledge, scientific method, or technical principles. Report (Ex. A), at 12-17; Regan Tr. (Ex. B), 38:4. Defendants further contend that Mr. Regan weaves these disparate documents together into a story format to support his opinion and concedes that there is not necessarily a causal connection between accounting errors and undue pressure. Regan Tr. (Ex. B), 56:10-15. Defendants argue that Mr. Regan's lay, subjective analysis of the meaning and import of the words on the pages infringes the domain of the trier of fact, who is capable of understanding and interpreting the material without the assistance of an expert filter.

### *1. Defendants Contention that Mr. Regan's "Undue Pressure" Opinion Is Irrelevant*

In his "undue pressure" opinion, Mr. Regan quotes selectively from e-mails and prior sworn testimony that Defendants contend could be readily understood and accessed by the trier of fact, leaving no role for an expert. Upon review, the Court finds that no specialized or technical knowhow is required to read and draw conclusions from the internal documents and testimony cited by Mr. Regan. The documents in this instance are not complicated and speak for themselves. Expert testimony is inadmissible if it "addresses 'lay matters which a jury is capable of understanding and deciding without the expert's help.'" *See Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005) (quoting *Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989)). Accordingly, Defendants' motion to exclude is GRANTED on this ground.

### *2. Defendants Contention that Mr. Regan's "Undue Pressure" Opinion Is Unreliable*

Defendants argues that Mr. Regan's opinion as to the exertion of "undue pressure" should also be exclude because it is wholly unreliable and based on nothing more than his "subjective belief or unsupported speculation" regarding the import of certain facts and documents. *Daubert*, 509 U.S. at 590. Defendants contend that the "undue pressure" section is devoid of any mention or application of specific GAAP or SEC rules. Because Mr. Regan cites no professional standards or principles and

utilizes no specialized knowledge in his narrative, Defendants argues that his testimony should be excluded.

Upon review of the records and Mr. Regan's report, the Court finds Mr. Regan's opinion on "undue pressure" (i) invades the authority of the trier of fact to determine for itself the plain meaning of the facts and documents and (ii) contains no professional standards or principles and utilizes no specialized knowledge. As such, the Defendants motion to exclude Mr. Regan's "undue pressure" opinion as irrelevant and unreliable is GRANTED.

### C. Whether Mr. Regan's Disclosure Opinion Misapplies The Requirements Of The Accounting Authority On Which He Relies

Defendants' challenge to Mr. Regan's opinion that Novatel failed to disclose known trends and uncertainties as required by SOP 94-6 is two-fold. Defs.' Mem. at 11-13. First, they claim that Mr. Regan's opinion that Novatel was required to disclose the Sprint cancellation was based on the wrong standard and was viewed in isolation. Second, Defendants' claim that Mr. Regan's opinion improperly rests entirely on *Sunbeam*, an administrative proceeding by the SEC. *In the Matter of Sunbeam Corp.*, SEC Release No. 7976, File No. 3-10481(May 15, 2001).

### 1. Mr. Regan's Opinion that Novatel Was Required to Disclose the Sprint Cancellation

In his Disclosure Opinion, Mr. Regan claims that Novatel was required to disclose: (i) a potential loss of sales of the U720 modem to Sprint, and (ii) certain purported "channel stuffing" activities by Novatel. Mr. Regan opines that Novatel should have disclosed by 2Q07 that Sprint would no longer be purchasing the U720 modem. Ex. B, Regan Tr.,195:6-199:7. SOP 94-6 requires the disclosure of certain vulnerabilities in circumstances where "near term severe impact" to the company is reasonably possible.[1]

Defendants argue that in forming his opinion, Mr. Regan applied the wrong standard, rendering his methodology unreliable and his opinion irrelevant. However, upon review of Mr. Regan's opinion, the

---

[1] SOP 94-6 provides:
> Severe impact is a higher threshold than material. Matters that are important enough to influence a user's decision are deemed to be material, yet they may not be so significant as to disrupt the normal functioning of the entity. Some events are material to an investor because they might affect the price of an entity's capital stock or its debt securities, but they would not necessarily have a severe impact on (disrupt) the enterprise itself.

Ex. G, SOP 94-6, at 191-92, at § .07.

Court finds that Mr. Regan cited the correct standard in his report and analyzed the Sprint cancellation under that standard.[2]

Defendants also argue that Mr. Regan applied unreliable methodology in his assessment of Sprint's transition from the U720 to Novatel's next-generation U727 product. Defendants contend that Mr. Regan's isolated assessment of this transition is unreliable because it failed to take into consideration other factors such as: (1) the extent to which other customers such as Verizon would purchase the U720 units that Sprint did not purchase; (2) the extent to which Sprint would quickly began to purchase Novatel's next-generation U727 product; and (3) the extent, if any, to which Sprint's migration from the U720 would affect Novatel's business as a whole and its ability to meet existing expectations. However, as Plaintiffs' point out, SOP 94-6 requires an assessment at the time of the near term risk, which is precisely what Mr. Regan did. Ex. 21, ¶ 21.

As such, the Court finds cross-examination, rather than exclusion, to be appropriate redress for Defendants contentions that Mr. Regan failed to consider all the evidence or didn't understand the standard. Defendants' motion to exclude Mr. Regan's Disclosure Opinions is DENIED.

### *2. The Regan Opinion's Reliance on Sunbeam*

Lastly, Defendants argue that the methodology and assumptions underlying Mr. Regan's opinion that disclosure of Novatel's alleged "channel stuffing" was required under the SEC administrative case of *Sunbeam*,[3] are unreliable and devoid of factual support. Regan Tr., Ex. B, 173:13-16. Defendants argue that the *Sunbeam* "guidance" upon which Mr. Regan relies is not an authoritative accounting pronouncement, but rather a non-binding settlement of an administrative proceeding.[4] The Defendants also argue that the *Sunbeam* order recognized that undisclosed channel stuffing is not inherently misleading, noting that "material undisclosed channel stuffing may cause a company's reported results

---

[2] Defendants' argument that Mr. Regan used the wrong standard is based on an out of context deposition quote consisting of two lines out of a 230 page deposition transcript. Defs.' Mem. at 12. The portion of Mr. Regan's deposition relied upon by Defendants does not undermine his methods or analysis, which correctly applied the severe impact as the standard. Ex. 1 at 49-52.

[3] In the Matter of Sunbeam Corp., SEC Release No. 7976, File No. 3-10481

[4] The Sunbeam decision states: "The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding." Sunbeam, Release No. 7976, at 2, n.1.

to be misleading." *Id.* at 2, n.4. However, the order specifically recognized that some forms of so-called channel stuffing may be consistent with GAAP. *Id.* at 12 n.25. Defendants' argue that Mr. Regan fails to grapple with these distinguishing principles, and with the significant factual distinctions between *Sunbeam* and Novatel.[5]

Upon review of Mr. Regan's opinion and cited authority, the Court finds that Mr. Regan did not rely solely on Sunbeam, but rather relied on several relevant GAAP and SEC pronouncements,[6] and provided an analysis of the evidentiary record.[7] Based upon the foregoing, the Court finds Mr. Regan's Disclosure Opinion to be both reliable and admissible and DENIES the Defendants' motion to exclude on these grounds.

## II. Plaintiffs Motion

Plaintiffs' have filed a motion, [Doc. No. 397], seeking to exclude the opinions of Defendants' expert, Anthony Lendez, on the grounds that: (1) the Lendez opinion fails to comply with the requirements of Rule 26; (2) the Lendez opinion relies on the opinions of KPMG, PwC, and Paul Hastings; (3) the "undue pressure" opinion of Mr. Lendez's report must be excluded under Rule 702; and (4) the report's opinions on the application of GAAP are unreliable, irrelevant, and offer improper legal conclusions.

### A. The Lendez Opinion's Compliance with the Requirements of Rule 26

Rule 26 of the Federal Rules of Civil Procedure requires an expert to submit a written report that "must" contain the "basis and reasons for" the opinions and "the facts or data considered by the witness in forming" those opinions. Plaintiffs contend that without the ability to review all the material which the expert considered, the opposing party is materially hampered in conducting a full and vigorous cross-examination of the expert' on his opinion. Plaintiffs argue that the Lendez report is largely devoid

---

[5] In particular, the channel stuffing activity in Sunbeam involved bill-and-hold and consignment sale activities which suggest risk of loss never passed to the customer. See id. at 2, 10. Not even Mr. Regan suggests that exists here. Moreover, Sunbeam allegedly pushed so much product into the channel that customers had 80 weeks or more of inventory. Id. at 13. Again, not even Mr. Regan suggests that type of backlog existed here, and the testimony of Novatel's customers made clear that they never bought product from Novatel other than when they needed it and on an arms length basis. (Transcript of Deposition of Timothy Hipsher, Ex. I, 159:22- 160:21; Krolian Tr. Ex. E, 125:5-22.

[6] Ex. 1 at 8-11.

[7] *Id.* at 39-48.

of any supporting evidence, other than his improper reliance on the opinions of others, including KPMG, PwC and Paul Hastings. Plaintiffs' argue that Mr. Lendez fails to support his rebuttal opinions or reference the documents cited by Plaintiffs' expert, D. Paul Regan, which he disputes, instead electing to make vague references to "emails" and "email exchanges," forcing Plaintiffs to speculate about what documents Mr. Lendez relied upon in forming his opinions. Compare Ex. 6 at 8, 30-32, 62, 64, 67, 69, 72-73 with Ex. 6 at 33-40.

Plaintiffs argue that an expert must do more than cite the entire production as the basis for his opinion. Instead, he must identify the specific documents on which he relied to form his opinions, including the Bates ranges for each of those documents.[8] However, as Defendants have aptly pointed out, none of the cases cited support Plaintiffs' alleged Bates-label requirement.[9] Furthermore, Defendants argue that the Lendez opinion was a rebuttal opinion, and as such, Lendez cross-referenced the relevant portion of Mr. Regan's report, including the documents upon which Mr. Regan relied, and that Mr. Lendez likewise considered in forming his rebuttal opinions.[10] Defendants contend that the

---

[8] *See* Mot. at 3-6, citing *United States v. Poulsen*, No. CR2-06-129, 2008 U.S. Dist. LEXIS 116117 (S.D. Ohio Sept. 22, 2008), *Propat Int'l Corp. v. RPost, Inc.*, No. SACV 03-1001 JVS (VBKx), 2005 U.S. Dist. LEXIS 45934 (C.D. Cal. Sept. 19, 2005), and *Wapato Heritage LLC v. Evans*, No. CV-07-314-EFS, 2008 U.S. Dist. LEXIS 53510 (E.D. Wash. June 11, 2008).

[9] *Poulsen* was a criminal case that had no occasion to apply Federal Rule of Civil Procedure 26. Moreover, the expert in Poulsen was specifically designated to testify about "his reading of 'the governing documents,'" yet he failed to identify the very documents about which he would be opining. *Poulsen*, 2008 U.S. Dist. LEXIS 116117, at *29-30. And even under these circumstances, the court did not exclude the testimony, but merely ordered the expert to specify the documents on which he relied. *Id.* at *30. *Wapato* likewise did not exclude the expert testimony at issue, even though it involved an expert who failed to produce any expert report per the court's scheduling order. *Wapato*, 2008 U.S. Dist. LEXIS 53510, at *3. *Propat* similarly is inapplicable. In that case, the expert omitted from his expert report vast amounts of materials on which he relied and then subsequently was unable to identify the materials. *Propat*, 2005 U.S. Dist. LEXIS 45934, at *4. The court excluded the opinion but never held there was a requirement that experts cite documents by Bates number. Indeed, there could be no such requirement because nothing in the Rules requires that parties Bates-label documents in the first place.
Plaintiffs also refer to two additional cases in a footnote (Mot., at 4 n.3), but neither supports their Bates-labeling theory. *Pickholtz v. Rainbow Technologies, Inc.*, 260 F. Supp. 2d 980, 984 (N.D. Cal. 2003), is a patent infringement case where the expert did not perform any tests or point to any documents at all to support his speculative technical theory. *Id.* at 984. *Robenhorst v. Siemens Logistics & Assembly Systems, Inc.*, No. 05 C 3192, 2008 U.S. Dist. LEXIS 17220 (N.D. Ill. Mar. 6, 2008), is an Illinois case where the expert's factual assumptions where unsupported by any evidence. *Id.* at *2-3 n.2.

[10] *See, e.g.,* Ex. 1 [Lendez Tr., 104:8-12 ("Q. Where in this section of your report do you cite the language of the particular e-mails that you disagree with? A. The e-mails are included in Regan's report. This is a rebuttal to Regan's report.")].

Plaintiffs provide no explanation or authority requiring Mr. Lendez to set forth separately, the same documents referenced in the cross-referenced portions of Mr. Regan's report.

Based upon the foregoing, the Court finds Plaintiffs arguments appropriate for cross- examination, not exclusion. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) ("The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") As such, the Plaintiffs motion to exclude the Lendez opinion for failure to comply with the requirements of Rule 26 of the Federal Rules of Civil Procedure is DENIED.

### B. The Lendez Opinion's Reliance on the Opinions of KPMG, PwC, and Paul Hastings

Plaintiffs' contention that Mr. Lendez's opinion is unreliable is based upon two arguments. First Plaintiffs argue that Mr. Lendez simply co-opted the opinions of KPMG, PwC and Paul Hastings as his own without sufficient independent investigation or verification of the veracity of these opinions. Next, the Plaintiffs argue that Mr. Lendez did not have access to any of the privileged underlying work or investigative papers the opinions relied upon, and therefore should not opine on the reliability of these opinions.

#### 1. Lendez's Reliance on the Opinions of KPMG, and the Audit Committee Investigators, PwC and Paul Hastings

The Plaintiffs' contend that Mr. Lendez's reliance on the opinions of KPMG, and the Audit Committee Investigators, PwC and Paul Hastings, renders his opinions unreliable. Plaintiffs argue that Mr. Lendez adopted these opinions as his own, to insulate his opinion from any independent testing, making it impossible for Plaintiffs' to determine its reliability, particularly in light of the Defendants assertions of privileges with regard to KPMG's opinions.

Upon review of Mr. Lendez's opinion and testimony, the Court finds Plaintiffs' arguments go to weight, not admissibility. Mr. Lendez testified unequivocally that he did not rely on any third party opinions for his own opinion.[11] When asked during his deposition, Mr. Lendez stated that he reviewed the KPMG work papers to help identify relevant information and audit work, and to confirm conclusions

---

[11] Britton Decl., Ex. 1 [Lendez Tr., 70:14-17 ("Q. Are you relying on the opinions of KPMG and PricewaterhouseCoopers and Paul Hastings in coming to your opinions? A. No.")].

he reached independently.[12]  The Court also notes that Plaintiffs' expert, Mr. Regan, had the opportunity to file a reply report to address Mr. Lendez's rebuttal, but he declined to do so. Based upon the foregoing, the Court finds Plaintiffs arguments appropriate grounds for cross-examination, not exclusion. As such, Plaintiffs' motion to exclude Mr. Lendez's opinion of this ground is DENIED.

### *2. Lendez Did Not and Cannot Assess the Reliability of KPMG, Paul Hastings, and PwC's Opinions*

The Plaintiffs argue that Mr. Lendez has not done (or was not allowed to do) an independent analysis of the adequacy of the work underlying KPMG's opinions (or PwC and Paul Hastings and the Audit Committee's work) to determine if these opinions rest on a reliable foundation.  Plaintiffs cite to the fact that: (1) Mr. Lendez admitted that he did not have access to any of PwC's or Paul Hastings' work papers, or the KPMG investigative work papers for which privilege has been asserted; and (2) Mr. Lendez's own admissions during his deposition that he did not attempt to determine whether KPMG conducted its audit or reviews in accordance with professional standards, and was not hired to do so. *See* Ex. 1 at 9:3- 20. Without undertaking such an analysis, Plaintiffs' argue Mr. Lendez has no basis to know whether KPMG's opinions are reliable, informed, or whether enough work or the right kind of audit work was done to support them, and as such, Mr. Lendez's opinions are unreliable.[13]  The Court finds Plaintiffs arguments appropriate grounds for cross-examination, not exclusion. As such, Plaintiffs' motion to exclude Mr. Lendez's opinion of this ground is DENIED.

### *3. Lendez's Opinion Regarding Novatel's "Taking Comfort" in KPMG's Audit Opinions*

Finally, Plaintiffs contend that to the extent that Mr. Lendez states that it was "reasonable for Novatel's management to take comfort from the work and conclusions of KPMG, his opinions are inadmissible and irrelevant Defendants argue that nothing in that statement purports to opine on what Defendants actually thought or felt. Rather, Defendants argue the focus of Mr. Lendez's opinion is on whether it was reasonable for Novatel's management to rely on its auditors' clean audit opinions and judgments, and Mr. Lendez concluded that it was.  The Court finds the Defendants recharacterization of

---

[12] *Id. at* Lendez Tr., 71:2-4 ("And to the extent that what they [KPMG, PWC, Paul Hastings] concluded made sense in the context of my opinion, it helped me confirm my belief.").

[13] *See City of Fresno v. United States*, 709 F. Supp. 2d 934, 943 n.5 (E.D. Cal. 2010) ("Under Rule 702 if the basis for an expert's opinion is clearly unreliable, the district court may disregard that opinion in deciding whether a party has created a genuine issue of material fact.").

Mr. Lendez's opinion unpersuasive.  An expert's training and experience as an accountant does not "specially equip him to divine what [the defendant] truly believed" about the reliability of the company's financial statements. *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill., 1999).  Based upon the foregoing, the Court hereby GRANTS the Plaintiffs motion to exclude Mr. Lendez's opinions regarding Defendants subjective thoughts or beliefs.

### *C. Plaintiffs' Contention that Lendez's Opinion that Novatel's Management Did Not Exert Undue Pressure to Manage Revenue and Earnings Must Be Excluded Under Rule 702 and Daubert*

As set forth above, the Court granted the Defendants' motion to exclude Mr. Regan's opinion and testimony on this point and the Defendants have represented that they no longer intend to offer rebuttal testimony from Mr. Lendez on this point. As such, the Court need not reach the merits of Plaintiffs' arguments on Mr. Lendez's "undue presure" opinion and the Plaintiffs' motion to exclude these opinions is DENIED AS MOOT.

### *D. Lendez's Opinions Concerning the Application of GAAP*

#### *1. Mr. Lendez's Opinion that Novatel's 1Q08 False Financial Results Are Not Actionable Under the Securities Exchange Act of 1934*

Plaintiffs argue that Mr. Lendez's opinion that Novatel is not liable for securities law violations to private plaintiffs because it merely "furnished" false financial results to the SEC instead of "fil[ing]" them, is an improper legal opinion. Ex. 6 at 50.  Plaintiffs content that Mr. Lendez's opinion amounts to legal analysis on the question of whether Novatel's actions excluded it from liability under §18 of the Securities Exchange Act of 1934 ("Exchange Act"). *Id.*  Plaintiffs state that this argument has never even been raised by Novatel's defense lawyers. Whether Novatel's press release is actionable under §18 of the Exchange Act is a question of law for the Court. While Defendants contend that Mr. Lendez never offered an opinion about whether Novatel was "liable for securities law violations," review of Mr. Lendez's opinion suggests otherwise. Mr. Lendez states:

> Also, it is important to note that there is a difference between "filed" with the SEC and information "furnished" to the SEC.  Information "furnished" to the SEC, as opposed to "filed," means that such information is generally not subject to Section 18 of the Securities Exchange Act of 1934 ("the Exchange Act"), which provides a private right of action for any material misstatements or omissions in filings under the Exchange Act.

Based upon the foregoing, the Court finds Mr. Lendez is offering an improper legal opinion. As such, the Court hereby GRANTS the Plaintiffs motion to exclude these improper legal opinions.

However, Mr. Lendez opinion that Mr. Regan was wrong, under accounting rules and standards, for suggesting that Novatel was required to "restate[]" its first quarter financial statements when no financial statements were ever filed with the SEC is admissible rebuttal testimony. In his report, Mr. Lendez identified specific GAAP literature to support his opinion that information furnished to the SEC (such as the Novatel May 1, 2008 press release) does not constitute issuance of financial statements, because the earnings release would not be in a form and format that complies with GAAP and GAAS.[14] Mr. Lendez's opinions which address whether Defendants actions complied with GAAP and GAAS are relevant and admissible and the Plaintiffs' motion to exclude them is therefore DENIED.

### 2. Lendez's Opinion that Novatel Improperly Recognized Revenue Prior to the Customer Request Date

Mr. Lendez's opinion criticizes Mr. Regan's use of a spreadsheet as fundamentally flawed. Plaintiffs argue that because Mr. Lendez based his opinion solely on an interview with Novatel employees that he did not record or invite Plaintiffs or their expert to attend, that this opinion is both speculative and improper. Ex. 6 at 60. The Court is not moved by Plaintiffs implications of prejudice as the Lendez report expressly cited his interview with the Novatel employees, and Plaintiffs had ample opportunity to question Mr. Lendez about the interview during his eight-and-a-half hour deposition. The record indicates Plaintiffs' counsel questioned Mr. Lendez extensively on the meeting, and Mr. Lendez testified as to its purpose and substance. Ex. 1, at 65:5-70:9].) Based upon the foregoing, the Court finds Plaintiffs arguments address weight, not admissibility and are appropriate subjects to be addressed during Plaintiffs' cross-examination of Mr. Regan, not as a basis for exclusion of his opinion. Plaintiffs motion to exclude on this ground is DENIED.

### 3. Mr. Lendez's Opinion that Novatel Did Not Engage in Channel Stuffing

Plaintiffs argues that "[d]espite clear evidence to the contrary, Mr. Lendez opines that Novatel did not engage in channel stuffing during the class period." Mot. at 16. Plaintiffs contend that Mr. Lendez does not identify what specifically he based these conclusions on. However, in the section of

---

[14] *See* Britton Decl., Ex. 6 [Lendez Report, at 49-51 (quoting "the SEC staff observer" comments and citing SEC Staff-utilized pronouncements such as the EITF D-Topics)].

1  Mr. Lendez's report where he opined that "Novatel Did Not Engage in Channel Stuffing," he specifi-
2  cally referenced: Regan's report at pages 8 and 39 to 48 and the documents contained therein: he cited
3  Mr. Regan's claims and methodology, testimony of a 30(b)(6) witnesses from Verizon and Sprint, and
4  noted the significant differences between this case and the *Sunbeam* case relied upon by Mr. Regan.
5  The Court finds the citation to these documents sufficient to support Mr. Lendez's rebuttal opinion. As
6  such, the Plaintiffs' motion to exclude Mr. Lendez's opinion that Novatel did not engage in channel
7  stuffing as irrelevant, unreliable and based upon speculation is DENIED.

*4. Lendez's Opinions that Novatel Did Not Fail to Disclose Known Trends and Uncertainties Must Be Excluded*
*a. Lendez Is Not Qualified to Opine About the Supposed "Commonly Known Nature" of the High-Tech Industry*

10  Plaintiffs object to Mr. Lendez's rebuttal opinion that Novatel was not required, under SOP 94-6
11  and SEC rules, to disclose alleged "channel stuffing" sales taking place at quarter-end. (Mot., at 17.)
12  Plaintiffs argue that Mr. Lendez failed to distinguish between industries and instead focuses entirely on
13  his qualifications, which he claims include "extensive experience with high-tech companies," when he
14  has in fact "work with" only seven companies. Opp. at 19-20. *Id.*  How he "worked with" these
15  companies, defendants do not say.  As such, Plaintiffs contend that Defendants have not carried their
16  burden to show that Lendez is qualified to opine on what is or is not common in the "'high-technology
17  manufacturing industry,'" whatever that may mean.
18  Alternatively, Defendants argue Mr. Lendez's statement about the pattern of high-tech industry
19  sales near the end of the quarter is confirmed by accounting pronouncements, which he cited, and upon
20  which he is entitled to rely. Ex. 6, at 4 & n.7 (citing AICPA Audit Guide)].) The Court finds the citation
21  to these documents sufficient to support Mr. Lendez's rebuttal opinion. Plaintiffs arguments are
22  appropriately addressed during cross-examination, not through exclusion. As such, the Plaintiffs' motion
23  to exclude Mr. Lendez's opinion on this ground is DENIED.

*b. Lendez's Speculation Regarding the Consistency of Novatel's Pull-in Practices Must Be Excluded*

25  Plaintiffs' argue that there is no support for Mr. Lendez's rebuttal opinion that "[t]he practice of
26  recognizing sales transactions at the end of a reporting period was consistent from period to period" and
27  "[a]s a result, there was no impact on future revenues and profitability since this practice occurred in
28  each reporting period." (Mot., at 19.)  Defendants argue that this is not an opinion, but rather one of

several bases for Mr. Lendez's disclosure opinion, and both Plaintiffs' own complaint and Mr. Regan's opinion acknowledge there was a consistent end-of-quarter effort to recognize sales throughout the class period. Defendants argue that this a matter for cross-examination. As such, Plaintiffs motion is DENIED.

### *Conclusion*

For the reasons set forth above, the Court rules as follows. Defendants motion to exclude the opinion and testimony of D. Paul Regan, Doc. No. 298, is GRANTED as follows:

1. Mr. Regan's "pull in" opinions regarding whether the contracts at issue allow Defendants to ship products to customers in the manner Novatel did; and

2. Mr. Regan's opinions regarding "undue pressure" exerted by Novatel's management; and DENIED on all other grounds.

The Plaintiffs motion to exclude the opinion and testimony of Anthony Lendez, [Doc. No. 397], is GRANTED as follows:

1. Mr. Lendez opinions regarding Defendants subjective thoughts or beliefs that it was reasonable for Novatel's management to take comfort from the work and conclusions of KPMG; and DENIED on all other grounds.

IT IS SO ORDERED.

DATED: November 17, 2011

Hon. Anthony J. Battaglia
U.S. District Judge