UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re NOVATEL WIRELESS SECURITIES LITIGATION<br><br>This Document Relates to<br><br>ALL ACTIONS. | Lead Case No.: 08cv1689 AJB (RBB)<br><br>CLASS ACTION<br><br>ORDER GRANTING MOTION TO EXCLUDE DEFENDANTS' LOSS CAUSATION EXPERT DR. BRADFORD CORNELL<br><br>[Doc. No. 398 |

Plaintiffs filed a motion, Doc. No. 398, to exclude the testimony of Defendants' loss causation expert Dr. Bradford Cornell. The Defendants filed an opposition, Doc. No. 399, and the Plaintiffs' filed a reply, Doc. No. 405. A hearing on the Plaintiffs' motion was held on the record on November 18, 2011, and the motion was taken under submission. Based upon the parties moving papers and arguments made during the hearing, the Plaintiffs' motion to exclude the testimony of Defendants' loss causation expert Dr. Bradford Cornell is hereby GRANTED for the reasons set forth below.

## *Background*

Plaintiffs allege that between February 27, 2007 and November 10, 2008 (the "Class Period"), Defendants engaged in a fraudulent scheme to inflate Novatel's stock value so that Defendants could sell their stock in the company for a profit. Doc. No. 23, Consolidated Class Action Complaint, ("CC"), at ¶¶1, 12. Plaintiffs allege that throughout the Class Period, Defendants Weinert and Leparulo misrepresented the financial condition of the Company, because they told investors that the Company was seeing strong demand for its products, and did not disclose to investors that Novatel did not have an

adequate "product mix" to meet the needs of its customers. *Id.* at ¶¶ 57(a)(iii), 62(a)(ii), 66(a)(ii), 73(a)(ii). Plaintiffs also allege that Novatel covered up the slowdown in its business by shipping product "early," which purportedly violated accounting rules governing revenue recognition. *Id.*, ¶¶ 6. Plaintiffs claim that four specific stock price declines—on July 20, 2007; February 21, 2008; April 15, 2008; and August 20, 2008—purportedly resulted from the market learning of these allegedly concealed facts. *Id.*, ¶¶ 125-8.

## *Legal Standard*

Federal Rule of Evidence 702 provides that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony under Rule 702 must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). When considering evidence proffered under Rule 702, the trial court must act as a "gatekeeper" by making a preliminary determination that the expert's proposed testimony is reliable. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), amended by 319 F.3d 1073 (9th Cir.2003).

As a guide for assessing the scientific validity of expert testimony, the Supreme Court provided a non-exhaustive list of factors that courts may consider: (1) whether the theory or technique is generally accepted within a relevant scientific community, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory or technique can be tested. *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The Ninth Circuit also has indicated that independent research, rather than research conducted for the purposes of litigation, carries with it the indicia of reliability. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir.1995) ("*Daubert* II"). In particular, using independent, pre-existing research "provides objective proof that the research comports with the dictates of good science" and is less likely "to have been biased by the promise of remuneration." *Id.* If the testimony is not based on "pre-litigation" research or if the expert's research has not been subjected to peer review, then the expert must explain precisely how he went about reaching his conclusions and point to some objective source, a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like, to show that he has followed the scientific

method, as it is practiced by (at least) a recognized minority of scientists in his field. *Id.* at 1318–19 (citing *United States v. Rincon*, 28 F.3d 921, 924 (9th Cir.1994)); *see also Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 597 (9th Cir.1996). The proponent of the evidence must prove its admissibility by a preponderance of proof. *See Daubert*, 509 U.S. at 593 n. 10.

### *Discussion*

In the instant motion, Doc. No. 398, Plaintiffs' are seeking to exclude the testimony of Defendants' loss causation expert, Dr. Bradford Cornell, as inadmissible under Rule 702 of the Federal Rules of Evidence. *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993). Plaintiffs are seeking to exclude Dr. Cornell's opinion that there was no loss causation or "corrective disclosure" on July 20, 2007, February 20-21, 2008, April 14-15, 2008, and August 19-20, 2008. The Plaintiffs' argue that Dr. Cornell's testimony that Plaintiffs cannot show loss causation should be excluded because he employed the wrong legal standard in undertaking his loss causation analysis.

In order to prove loss causation, Plaintiffs must demonstrate that (1) Novatel's stock price dropped in reaction to the disclosure of information about Novatel, and (2) this reaction resulted from learning the truth about facts previously misrepresented by Defendants.[1] The Ninth Circuit has clearly held that "the market need not know at the time that the practices in question constitute a "fraud," nor label them "fraudulent", but in order to establish loss causation, the market must learn of and react to those particular practices themselves. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010).

The Plaintiffs' argue that Dr. Cornell offered an incorrect legal opinion of what is required by the Plaintiffs to show loss causation. Dr. Cornell states that corrective disclosures have to be made "in such a way that a reasonable investor can reasonably infer that a fraud has occurred." *See* Cornell Report, ¶ 25; Henssler Decl., Ex. C at 167:7-19. Dr. Cornell testified that this is the definition of loss causation "that I employ." Cornell Depo. at 44:20-45:18.  Plaintiffs' also argue that Dr. Cornell identified and reviewed relevant media and analyst reports to determine whether an analyst or someone in the press "suggests that something is inappropriate." Opp. at 8. Plaintiffs contend that there is no requirement under Ninth Circuit law that an analyst or someone in the press "suggests that something is

---

[1] *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005); *Oracle*, 627 F.3d at 392-93; *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008).

inappropriate." Opp. at 8. Plaintiffs' argue that Dr. Cornell's review of the media and analyst reports, and application of his erroneous legal standard, led to his opinions that Plaintiffs cannot show loss causation (or "a corrective disclosure") on the four alleged disclosure dates. However, as Plaintiffs aptly point out, there is no requirement that a reasonable investor infer that a fraud has occurred, and this was confirmed by Defendants' other loss causation expert, Dr. Tabak, who Plaintiffs' contend expressly disavowed Dr. Cornell's loss causation standard.[2] *See* Cornell Report ¶25; Tabak Depo at 167:7-19.

Defendants admit that if Plaintiffs could show that Dr. Cornell's understanding of legal loss causation standards was erroneous, which Defendants argue they cannot, that would require, at most, the exclusion of the erroneous legal conclusions themselves, not the exclusion of Dr. Cornell's testimony as a whole. However, Dr. Cornell's entire rebuttal opinion addresses whether or not there was loss causation or a corrective disclosure on the four dates in question. If erroneous legal conclusions form the basis of Dr. Cornell's rebuttal opinions, the Court fails to see, and the Defendants have failed to articulate, what else Dr. Cornell would provide testimony on, aside from these opinions. The Court finds the Defendants contention that this is a question of weight, not admissibility, unpersuasive.

## *Conclusion*

Based upon the foregoing, the Court finds that Dr. Cornell's analysis is based on a loss causation standard that is incompatible with that set forth by the Ninth Circuit. As such, the Plaintiffs' motion to exclude the testimony of Defendants' Loss Causation Expert Dr. Bradford Cornell is GRANTED.

IT IS SO ORDERED.

DATED: March 1, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge

---

[2] Dr. Tabak, expressly disavowed Dr. Cornell's loss causation standard and testified: "I thought that the Ninth basically spoke about whether or not the conduct was revealed and not whether or not a reasonable investor can infer that a fraud has occurred." See Decl. of Robert R. Henssler Jr. in Support of Memorandum of Points and Authorities in Support of Motion to Exclude Testimony of Defendants' Purported Loss Causation Expert, Dr. Bradford Cornell Henssler Decl., Ex. C at 167:7-19.