UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re NOVATEL WIRELESS SECURITIES LITIGATION<br><br>This Document Relates to<br><br>ALL ACTIONS. | Lead Case No.: 08cv1689 AJB (RBB)<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE EXPERT TESTIMONY OF M. TODD HENDERSON<br><br>[Doc. No. 293-1] |

Defendants filed a motion to exclude the testimony of Plaintiffs' expert M. Todd Henderson (hereinafter "Prof. Henderson"), (Doc. No. 293-1). Based upon the parties' moving papers and arguments, the Court hereby GRANTS IN PART and DENIES IN PART the Defendants motion, (Doc. No. 293-1), as set forth below.

*Relevant Background*

Plaintiffs allege that between February 27, 2007 and November 10, 2008 (the "Class Period"), Defendants engaged in a fraudulent scheme to inflate Novatel's stock value so that Defendants could sell their stock in the company for a profit. (CC, Doc. No. 23, at ¶¶ 1, 12.) Plaintiffs contend that Novatel's success was largely dependent on its ability to supply wireless modems to its two largest customers, Sprint and Verizon, which in 2006 accounted for 38.2% and 19.7% of Novatel's revenue respectively. (*Id.* at ¶14.) According to Plaintiffs, "defendants knew that the market was particularly sensitive to information about these customers" and "[s]trong financial results would surely spur an increase in Novatel's stock price whereas any negative information regarding these customers would reduce it." (*Id.*

at ¶14.)

Plaintiffs allege that throughout the Class Period, Defendants Weinert and Leparulo misrepresented the financial condition of the Company because they told investors that the Company was seeing strong demand for its products, and did not disclose to investors that Novatel did not have an adequate "product mix" to meet the needs of its customers. (CC, Doc. No. 23, at ¶¶ 57(a)(iii)), 62(a)(ii), 66(a)(ii), 73(a)(ii)).) Plaintiffs also allege that Novatel covered up the slowdown in its business by shipping product "early," which purportedly violated accounting rules governing revenue recognition. (*Id*., ¶¶ 6.)

Plaintiffs allege that during this time period, Defendants were selling significant amounts of their Novatel holdings. (*Id*.) Plaintiffs allege that during the Class Period, Defendants sold 1,258,466 shares of Novatel stock for almost $29 million in proceeds. (*Id*. ¶15.) Plaintiffs allege that 62% of the Defendants' Class Period sales occurred in June and July 2007, just before the market learned about these concealed facts. (*Id*. ¶16.) Plaintiffs claim that four specific stock price declines on July 20, 2007; February 21, 2008; April 15, 2008; and August 20, 2008, resulted from the market learning of these allegedly concealed facts. (*Id*., ¶¶ 125-28.)

### *Legal Standard*

Federal Rule of Evidence 702 provides that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony under Rule 702 must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). When considering evidence proffered under Rule 702, the trial court must act as a "gatekeeper" by making a preliminary determination that the expert's proposed testimony is reliable. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), amended by 319 F.3d 1073 (9th Cir. 2003).

As a guide for assessing the scientific validity of expert testimony, the Supreme Court provided a non-exhaustive list of factors that courts may consider: (1) whether the theory or technique is generally accepted within a relevant scientific community; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory or technique can be tested. *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The Ninth Circuit also has indicated that independent research, rather than research

2

conducted for the purposes of litigation, carries with it the indicia of reliability. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ( "*Daubert* II"). In particular, using independent, pre-existing research "provides objective proof that the research comports with the dictates of good science" and is less likely "to have been biased by the promise of remuneration." *Id.* If the testimony is not based on "pre-litigation" research or if the expert's research has not been subjected to peer review, then the expert must explain precisely how he went about reaching his conclusions and point to some objective source, a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like, to show that he has followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in his field. *Id.* at 1318–19 (citing *United States v. Rincon*, 28 F.3d 921, 924 (9th Cir. 1994)); *see also Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 597 (9th Cir. 1996). The proponent of the evidence must prove its admissibility by a preponderance of proof. *See Daubert*, 509 U.S. at 593 n. 10.

### *Discussion*

Defendants filed a motion to exclude the testimony of Plaintiff's expert Prof. Henderson. Professor Henderson's opinions primarily address Rule 10b5-1 Trading Plans ("10b5-1 plans") and Defendants' use of 10b5-1 plans during the time of the Class Period in this case. *See* Ex. 1 at 1. Prof. Henderson's opinions are based on: (a) a review of the documents in this case; (b) his experience as a management consultant at McKinsey & Company advising companies on corporate policies, including executive compensation and governance; (c) his experience as an academic consultant to companies on the same matters; (d) his extensive empirical research on thousands of Rule 10b5-1 trading plans used at thousands of American companies over the past decade; and (e) his expertise in the areas of executive compensation, insider trading, corporate governance, and other business-law areas raised in this case. *Id.*

Professor Henderson's opinions can be summarized as follows:

(1) Rule 10b5-1 trading plans were intended to provide executives with the ability to trade for diversification reasons and not on the basis of material, nonpublic information;

(2) All that a Rule 10b5-1 plan does is to move the date on which the question about what information the insider possessed from the date of the trade to the date when the trade was planned using a 10b5-1 plan;

(3) There are seven hallmarks of a plan that is benign (that is, for random diversification trades) and consistent with best practices:

        (a)        a significant time lag between adoption and first trade;

        (b)        regularly scheduled trades;

        (c)        sales over long periods of time;

        (d)        sales of relatively consistent size and relatively small amounts compared with overall share holdings;

        (e)        sales at a range of stock prices;

        (f)        no changes or cancellations of plans; and

        (g)        a high level of board and general counsel involvement in adoption, alteration, and termination decisions.

(4) Defendants' plans (or amended plans) contained few or none of these hallmarks, and therefore are not consistent in any way with best practices, and are, in fact, consistent with plans from my empirical research in which insiders earned large abnormal returns based on inside information;

(5) Empirical research shows insiders systematically abuse the Rule by using it to shield trades based on material, nonpublic information; and

(6) The characteristics of Defendants' trades under their plans are consistent with plans that this empirical research shows are abusing the Rule and are based on material, nonpublic information.

*See* Ex. 1 at 1-2; *see also id.* at 44 (summary of opinions regarding defendants' Rule 10b5-1 plans).

Defendants' motion seeks to exclude Prof. Henderson's testimony as inadmissible under Rule 702 of the Federal Rules of Evidence, arguing that Prof. Henderson's opinion is based solely on speculation and fails every prong of the *Daubert* test of reliability. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Defendants' move to exclude Professor Henderson's testimony pursuant to Federal Rules of Evidence 403, 702, 703 and 704.

## I. Defendants' Rule 403 Arguments

Rule 403 bars expert testimony purporting to interpret the governing law, because such testimony will necessarily confuse the jury by providing competing interpretations of the law. Fed. R. Evid. 403. Rule 403 requires a court to evaluate whether relevance is substantially outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Expert testimony about the governing law is barred under Rule 403 because "it would be a waste of time if witnesses or counsel should duplicate the judge's statement of the law, and it would intolerably confound the jury to

have it stated differently."[1]

Defendants argue that Prof. Henderson's analysis should be excluded because it is more prejudicial than probative. Defendants argue that Prof. Henderson's analysis is improper under Federal Rule of Evidence 403, because it suggests, based on statistical evidence, that executives that use trading plans with some combination of the "seven hallmarks" are more likely engaged in improper trading. *See Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1011 (9th Cir. 2001); *United States v. Rangel-Gonzales*, 617 F.2d 529 (9th Cir. 1980). Defendants argue that Prof. Henderson's statistical analysis and general impressions of executive behavior prejudicially ascribe to defendants the conduct of others, and as such it should be excluded.

The Court is not moved by this argument whose sole mention appears once in a footnote on the final page of Defendants motion because it goes to the weight to be afford Prof. Henderson's opinion not its admissibility. *See* Mot., Doc No. 293-1, at 18 n. 9. Plaintiffs' argue, and the Court agrees, that Prof. Henderson's opinion setting forth the "seven hallmarks" describes for the jury the best practices when employing 10b5-1 trading plans and explains that based on his experience with thousands of Rule 10b5-1 plans, Defendants' plans bear many of the hallmarks of an improperly used plan. As such, Defendants motion to exclude Prof. Henderson's opinion pursuant to Rule 403 is DENIED.

## II. Defendants' Rule 702 Arguments

Expert testimony is admissible under Rule 702 if it addresses an issue beyond the common knowledge of the average layperson and is not misleading. *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009); *United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) (quoting *United States v. Morales*, 108 F.3d 1031, 1039 (9th Cir.1997) (en banc)); Fed. R. Evid. 702(a) (expert testimony must help the trier of fact to understand the evidence or determine a fact at issue). In determining the reliability of an expert opinion, the court must consider whether: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

---

[1] *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir.1988) (holding, en banc, trial court erred in admitting expert testimony on the legality of warrantees searches, whether defendants had conducted a "search" and had received valid "consent," and whether the acts of a private individual could constitute "state action").

Defendants argue that Prof. Henderson's methodology is not generally accepted, has not been published or tested, and is not subject to any standards. *See* Mot., Doc. No. 293-1, at 11:15-23. This Court disagrees. Prof. Henderson is qualified pursuant to Rule 702 to testify as an expert regarding the use of 10b5-1 trading plans. Prof. Henderson has sufficient training and experience as a lawyer and published author regarding a variety of corporate law topics with expertise in the areas of executive compensation, insider trading, corporate governance, and other business-law areas raised in this case. Prof. Henderson has experience as a management consultant at McKinsey & Company advising companies on corporate policies, including executive compensation and governance and has conducted extensive empirical research on Rule 10b5-1 trading plans used at thousands of American companies over the past decade. Pursuant to Rule 702, the Court finds that Prof. Henderson is sufficiently qualified to serve as Plaintiff's expert on 10b5-1 trading plans and his testimony regarding what these plans are and how they operate will assist the jury in understanding the evidence and determining the facts in issue. Based upon the foregoing, the Defendants motion to exclude Prof. Henderson's expert testimony pursuant to Rule 702 is DENIED.

### III. Defendants Rule 703 Arguments

Defendants argue that Plaintiffs cannot establish Prof. Henderson's opinions rest on facts and data of the "type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703. Defendants contend that Prof. Henderson "seven hallmarks" of a proper 10b5-1 plan should not be relied upon because his opinions were developed using unreliable sources, are in conflict with law and common practice, and are unsupported by research establish that his methodology. Defendants argue that Prof. Henderson's approach is unreliable because he fails to offer any authority in fact or law to support his "seven hallmarks."

However, as set forth above, the Court finds Prof. Henderson's is sufficiently qualified to serve as Plaintiff's expert on 10b5-1 trading plans. Despite Defendants arguments to the contrary, the Court finds Prof. Henderson's opinion testimony to be relevant and based on sufficient data and reliable principles and methods. Prof. Henderson's testimony regarding what these plans are and how they operate will assist the jury in understanding the evidence and determining the facts in issue. As such, the Defendants motion to exclude Prof. Henderson's expert testimony pursuant to Rule 703 is DENIED.

### IV. Defendants Rule 704 Arguments

The Defendants argue that Prof. Henderson's testimony should be excluded because Rule 704 prohibits expert opinions containing legal conclusions, because they do not assist the trier of fact, and are not otherwise admissible. While an expert witness may testify as to an ultimate issue of fact the jury will decide, the general rule is that an expert may not testify as to what the law is, because such testimony would impinge on the trial court's function. *See In re Air Disaster at Lockerbie Scotland on 12-21-88*, 37 F.3d 804, 827 (2d Cir.1994). "[I]nstructing the jury as to the applicable law is the distinct and exclusive province of the court."[2]

Prof. Henderson will not be permitted to offer legal opinions or legal conclusions as part of his testimony. Excluding such portions of his testimony is consistent with case law in this Circuit. A court has broad discretion in assessing expert testimony and should only exclude those portions which it deems impermissible. *Krist v. Eli Lilly & Co.*, 897 F.2d 293, 298 (7th Cir. 1990) (citing Fed. R. Evid. 702); *Daubert*, 509 U.S. at 597. Based upon the foregoing, the Defendants' motion to exclude Prof. Henderson's expert testimony pursuant to Rule 704 is GRANTED IN PART and limited to the portions of Prof. Henderson's opinion at pages 8:20-23;[3] 39:6-9;[4] and 44:19-23,[5] where Prof. Henderson offers

---

[2] *Nationwide Transport Finance v. Cass Information Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008); *see also Gable v. Nat'l Broadcasting Co.*, 727 F. Supp. 2d 815, 835 (C.D. Cal. 2010)("an expert may not state his or her opinion as to legal standards, nor may he or she state legal conclusions drawn by applying the law to the facts"); *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042 (D. Ariz. 2005) ("The principle that legal opinion evidence concerning the law is inadmissible is so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.").

[3] *See* Prof. Henderson's Report, Doc. No. 293-3, at 8:20-23 ("In the absence of a plan, such a trade – planned and executed on June 1 – could not **legally** happen. Obviously, if the plan is entered into on May 31 instead of January 1, the law asks what the insider knew on May 31, and, in this case, the trade would be **illegal**.") (Emphasis added.)

[4] *Id.,* at 39:6-9 ("From a **legal** standpoint, this means that the relevant inquiry about whether Souissi traded on material, nonpublic information was moved back one day from May 18, when the trades executed, to May 17, when the amendment to the plan happened. The plan therefore accomplished nothing from a **legal matter**.") (Emphasis added.)

[5] *Id.*, at 44:17-24 ("Corporate executives with advanced knowledge of bad news commonly use purported 10b5-1 plans to try to immunize trades that would otherwise be highly suspicious and **illegal**. If the Rule worked perfectly as intended or was enforced perfectly by the SEC, this problem would not exist, since the inquiry about what information the insiders possessed would be the same whether it was at the time of the trade or the time of the plan. But, as shown above, there are several aspects of the Rule that allow it to provide more protection than warranted.

1 | legal opinions.

## *Conclucion*

For the reasons set forth above, the Court finds that Prof. Henderson's training, education and practical experience provide a sufficient basis for his opinions regarding 10b5-1 trading plans and such testimony other additional background information are proper and will assist the jury in resolving the ultimate factual issues in the case. As such, the Defendants' motion is GRANTED IN PART as to the portions of Prof. Henderson's report identified above that contain legal opinions and DENIED on all other grounds. Plaintiffs are ORDERED to excise or amend these sections of Prof. Henderson's report and serve a copy of Prof. Henderson's revised report on Defendants **on or before November 30, 2012**.

IT IS SO ORDERED.

DATED: November 8, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge

---

This allows insiders to **illegitimately** protect trades that were planned based on material, nonpublic information.") (Emphasis added.)