UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re NOVATEL WIRELESS SECURITIES LITIGATION<br><br>This Document Relates to<br><br>ALL ACTIONS. | Civil No.08cv1689 AJB (RBB)<br><br>ORDER (1) GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION; (2) VACATING THE COURT'S ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF STEINHOLT; (3) GRANTING DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF STEINHOLT; AND (4) GRANTING PLAINTIFFS THE OPPORTUNITY TO CURE STEINHOLT'S EXPERT TESTIMONY |

On January 14, 2013, Defendants filed a Motion for Reconsideration, (Doc. No. 453), of this Court's Order issued December 14, 2012, (Doc. No. 450), in which the Court denied Defendants' Motion to Exclude the Expert Testimony of Bjorn I. Steinholt. Plaintiffs filed an opposition, (Doc. No. 456), and Defendants filed a reply, (Doc. No. 457). The Court finds this motion appropriate for submission on the papers without oral argument pursuant to Civil Local Rule 7.1.d.1.

For the reasons set forth below, Defendants' Motion for Reconsideration, (Doc. No. 453), is GRANTED. Furthermore, the Court's previous Order Denying Defendants' Motion to Exclude the Expert Testimony of Steinholt, (Doc. No. 450), is VACATED, and Defendants' Motion to Exclude the Expert Testimony of Steinholt is GRANTED. Additionally, Plaintiffs are granted the opportunity to cure Steinholt's expert opinion and report in light of the Court's decision herein.

### *Background*

Plaintiffs allege that between February 27, 2007, and November 10, 2008 (the "Class Period"), Defendants engaged in a fraudulent scheme to inflate Novatel's stock value so that Defendants could sell their stock in the company for a profit. (FAC, Doc. No. 23 at ¶¶ 1, 12). Plaintiffs contend that Novatel's success was largely dependent on its ability to supply wireless modems to its two largest customers, Sprint and Verizon, which in 2006 accounted for 38.2% and 19.7% of Novatel's revenue respectively. (*Id.* at ¶ 14). According to Plaintiffs, Defendants "knew that the market was particularly sensitive to information about these customers" and "[s]trong financial results would surely spur an increase in Novatel's stock price whereas any negative information regarding these customers would reduce it." (*Id.* at ¶ 14.)

Plaintiffs allege that throughout the Class Period, Defendants Weinert and Leparulo misrepresented the financial condition of the Company because they told investors that the Company was seeing strong demand for its products, and did not disclose to investors that Novatel did not have an adequate "product mix" to meet the needs of its customers. (*Id.* at ¶¶ 57(a)(iii), 62(a)(ii), 66(a)(ii), 73(a)(ii).) Plaintiffs also allege that Novatel covered up the slowdown in its business by shipping product "early," which purportedly violated accounting rules governing revenue recognition. (*Id.* at ¶ 6.) Plaintiffs allege that during this time period, Defendants were selling significant amounts of their Novatel holdings. (*Id.*) Plaintiffs allege that during the Class Period, Defendants sold 1,258,466 shares of Novatel stock for almost $29 million in proceeds. (*Id.* at ¶ 15.) Plaintiffs allege that 62% of the Defendants' Class Period sales occurred in June and July 2007, just before the market learned about these concealed facts. (*Id.* at ¶ 16.) Plaintiffs claim that four specific stock price declines on July 20, 2007, February 21, 2008, April 15, 2008, and August 20, 2008, resulted from the market learning of these allegedly concealed facts. (*Id.* at ¶¶ 125-28.)

### I.   *Defendants' Motion for Reconsideration*

#### A.   **Legal Standard**

Federal Rule of Civil Procedure 60 provides, in pertinent part: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason

that justifies relief." Fed. R. Civ. P. 60(b).  District courts also have inherent authority to entertain motions for reconsideration of interlocutory orders. *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ("[I]nterlocutory orders ... are subject to modification by the district judge at any time prior to final judgment." (quotation omitted)); *see also Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989); Fed. R. Civ. P. 54(b).  Although a district court may reconsider its decision for any reason it deems sufficient, generally a motion for reconsideration "is appropriate if the district court: (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003).  Whether to grant or deny a motion for reconsideration is in the sound discretion of the district court. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)).

**B.     Analysis**

Defendants' seek reconsideration of the Court's previous Order denying Defendants' Motion To Exclude the Expert Testimony of Bjorn I. Steinholt ("*Daubert* Motion") in light of the Court's summary judgment opinion issued following the parties' briefing with regard to the *Daubert* Motion.  Prior to addressing the merits of Defendants' request for reconsideration, the Court finds a brief summary of the relevant procedural background warranted under the circumstances.

On November 23, 2011, the Court granted in part and denied in part Defendants' Motion for Summary Judgment.[1]  (Doc. No. 414.)  Of particular note with regard to the instant motion, the Court granted Defendants' summary judgment as to Plaintiffs' channel stuffing claims.  (*Id.*)  The Court concluded that Plaintiffs' had failed to provide the evidence demonstrating falsity, materiality or scienter necessary for their channel stuffing claims.  (*Id.* at 19.)  Accordingly, Plaintiffs' allegations of channel stuffing are no longer at issue in the case.  The Court denied Defendants' Motion for Summary Judgment as to Plaintiffs' remaining claims.  (*Id.*)  When the Court issued its summary judgment

---

[1] In that Order, the Court also granted Defendant Peter Leparulo's Motion for Judgment on the Pleadings.  (Doc. No. 414.)

opinion, Defendants' *Daubert* motion was fully briefed and, thus, the parties had not raised any arguments pertaining to the summary judgment ruling therein.

Over a year later, the Court ruled upon Defendants' *Daubert* Motion. (Doc. No. 299.) Plaintiffs offered Steinholt's expert testimony as evidence regarding loss causation and damages attributable to the allegedly fraudulent acts of Defendants. (Steinholt Rep., Doc. 299-4.) In his expert report, Steinholt distinguished between fraud and non-fraud-related factors when calculating loss causation and the resulting damages; however, Steinholt did not apportion the loss causation and damages among the individual claims alleged by Plaintiffs. As Steinholt created his expert report prior to the Court issuing its summary judgment opinion, Steinholt treated Plaintiffs' channel stuffing allegations as fraud-related for the purposes of computing loss causation and damages. After considering the parties' arguments pertaining to Steinholt's analysis, which notably did not address the summary judgment decision as noted above, the Court denied Defendants' *Daubert* Motion, finding Steinholt's methodology and accompanying testimony to be both relevant and reliable under *Daubert*. (*Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).)

Upon further review of the Court's previous decisions, it is apparent that Defendants' arguments in favor of reconsideration have merit. Regretfully, there was a significant lapse of time between the Court's issuance of the summary judgment order and the Court's consideration of Defendants' *Daubert* Motion. As such, the Court evaluated the admissibility of Steinholt's testimony independently, without taking into account the impact of the prior summary judgment determination on Steinholt's overall analysis. Understandably, Defendants contend that the Court should reconsider its previous order insomuch as the summary judgment decision significantly altered the admissibility of Steinholt's testimony with regard to Plaintiffs' channel stuffing claims. The Court agrees. As such, Defendants' Motion for Reconsideration is GRANTED, and the Court will now reconsider the admissibility of Steinholt's expert testimony in light of the summary judgment decision.

## II.     Admissibility of Steinholt's Expert Testimony

### A.     Legal Standard

Federal Rule of Evidence 702 provides that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to

determine a fact in issue." Fed. R. Evid. 702. Expert testimony under Rule 702 must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). When considering evidence proffered under Rule 702, the trial court must act as a "gatekeeper" by making a preliminary determination that the expert's proposed testimony is reliable. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003).

As a guide for assessing the scientific validity of expert testimony, the Supreme Court provided a non-exhaustive list of factors that courts may consider: (1) whether the theory or technique is generally accepted within a relevant scientific community, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory or technique can be tested. *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The Ninth Circuit also has indicated that independent research, rather than research conducted for the purposes of litigation, carries with it the indicia of reliability. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert* II"). In particular, using independent, pre-existing research "provides objective proof that the research comports with the dictates of good science" and is less likely "to have been biased by the promise of remuneration." *Id.* If the testimony is not based on "pre-litigation" research or if the expert's research has not been subjected to peer review, then the expert must explain precisely how he went about reaching his conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like, to show that he has followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in his field. *Id.* at 1318–19 (citing *United States v. Rincon*, 28 F.3d 921, 924 (9th Cir. 1994)); *see also Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 597 (9th Cir. 1996). The proponent of the evidence must prove its admissibility by a preponderance of proof. *See Daubert*, 509 U.S. at 593 n. 10.

**B.   Analysis**

Defendants' contend that Steinholt's methodology is inadmissible as it improperly calculates loss causation and damages based upon Plaintiffs' allegations taken as a whole, including the channel stuffing allegations which are no longer at issue in this case. (Doc. No. 453 at 1.) Loss causation and damages depend upon the causal connection between Defendants' material misrepresentations and

Plaintiffs' resulting loss.[2] Insomuch as Steinholt treats Plaintiffs' allegations of channel stuffing as fraud in his analysis, Defendants contend that his method for determining loss causation and damages does not properly distinguish between fraud-related factors and non-fraud-related factors.

Having reviewed Steinholt's report as well as the parties' arguments, the Court agrees with Defendants' assessment. While the Court previously found Steinholt's methodology appropriate when conducting a strictly evidentiary evaluation of its relevance and reliability, the methodology becomes substantively flawed when considered along with the Court's summary judgment decision. The summary judgment order disposing of Plaintiffs' channel stuffing claims materially affects the relevance and reliability of Steinholt's analysis. In Steinholt's report, he specifies that "loss causation relates to the existence of economic losses that can be causally connected to some alleged fraudulent conduct." (Steinholt Rep., Doc. No. 299-4 at 25.) He then engages in a loss causation analysis that treats Plaintiffs' channel stuffing as fraudulent conduct. While Steinholt distinguished between various fraud-related and non-fraud-related factors in his calculations, he did not consider the fraud-related factors separately such that the loss causation and damages associated with Plaintiffs' remaining cause of action can be distinguished from those associated with Plaintiffs' channel stuffing claims.

In response to Defendants' arguments, Plaintiffs contend that Steinholt's analysis is nevertheless relevant and reliable as it pertains to the remaining causes of action. Plaintiffs point out that Defendants previously argued that Steinholt's testimony should be found inadmissible as it did not include an analysis of non-fraud-related company-specific news. (Doc. No. 450 at 6.) In its prior order, the Court dismissed this argument and concluded that "Steinholt's failure to include one non-fraud-related variable may affect the probative value of the event study, [but] it does not require exclusion of the report as unreliable under *Daubert*." (Doc. No. 450 at 7.) Referring to this language, Plaintiff suggests Defendants are once again objecting to Steinholt's failure to separate non-fraud-related factors. (Pls.' Opp., Doc. No. 456 at 6.) Plaintiffs' argument, however, stretches the Court's ruling in an unsuccessful attempt to fit the current circumstances. Here, Steinholt did not simply fail to account for the channel stuffing allegations; rather, he specifically incorporated these allegations into his analysis and treated

---

[2] *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344-45 (2005); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005).

them as fraud-related factors. In doing so, he reached conclusions regarding loss causation and damages that do not accurately reflect Plaintiffs' causes of action. As noted above, Steinholt did not apportion the loss causation and damages among the individual claims alleged by Plaintiffs or provide a method for the Court to do so. For this reason, Steinholt's analysis is no longer relevant or reliable with regard to Plaintiffs' remaining claims.

Accordingly, upon reconsideration, the Court vacates its December 14, 2012 Order Denying Defendants' Motion to Exclude the Expert Testimony of Bjorn I. Steinholt, (Doc. No. 450) and hereby GRANTS Defendants' Motion to Exclude the Expert Testimony of Bjorn I. Steinholt, (Doc. No. 299).[3]

### III. Plaintiffs' Ability to Cure Steinholt's Expert Testimony

Recognizing that loss causation is an essential element of Plaintiffs' remaining claims, and that some allegations survived the summary judgment, the Court is disinclined to simply deem Steinholt's testimony inadmissible under the circumstances. Other than the channel stuffing, Plaintiffs still have alleged facts of fraud for the trier of fact to address. Unfortunately, Steinholt's analysis does not segregate the losses attributable to the channel stuffing from the losses attributable to plaintiffs' remaining claims. Therefore, in the interest of justice and in the interest of resolving cases on their merit, the Court will allow Plaintiffs the opportunity to cure the problems associated with Steinholt's expert report in light of the Court's ruling above.

Accordingly, Steinholt will be allowed an opportunity to restate his opinion within the contours of this ruling. Any amended analysis, and confirming report, should calculate loss causation and damages solely as to Plaintiff's remaining claims, and should also explain what impact, if any, the removal of Plaintiff's channel stuffing claims has upon the resulting loss causation and damages analysis. This latter point would not be for the benefit of the trier of fact per se, but rather to put any

---

[3] In their Motion for Reconsideration, Defendants further request certification of the admissibility issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Doc. No. 453.) Having granted reconsideration and reversed its previous decision as to the admissibility issue, the Court denies Defendants' request for certification of the issue for interlocutory appeal as moot. Should Plaintiffs produce an amended expert report by Steinholt, Defendants may file a renewed request for certification of the admissibility issue, if warranted, following the Court's ruling upon the admissibility of Steinholt's amended report.

revised analysis in context for the Defendants and the Court in dealing with issues of the reasonableness and reliability of the revised opinion.

If Plaintiffs avail themselves of the opportunity to cure Steinholt's expert report as aforesaid, Plaintiffs will bear the burden of additional expenses incurred by Defendants, specifically the reasonable attorneys' fees, expert witness fees and costs associated with creating an amended rebuttal report, the attorneys' fees and expert fees incurred to redepose Steinholt, and any rebuttal expert witness analysis and deposition, and the costs of the accompanying deposition transcripts.

### *Conclusion*

For the reasons set forth above, it is ORDERED as follows:

1. Defendants Motion for Reconsideration, (Doc. No. 453), is GRANTED;

2. The Court's Order Denying Defendants' Motion to Exclude Expert Testimony of Bjorn I. Steinholt, (Doc. No. 450), is VACATED;

3. Accordingly, Defendants' Motion to Exclude Expert Testimony of Bjorn I. Steinholt, (Doc. No. 299), is GRANTED;

4. The Court grants Plaintiffs the opportunity to cure the deficiencies in Steinholt's testimony as set forth above with regard to Plaintiffs' channel stuffing allegations.

It is further ORDERED that the cure process will conform to the following schedule:

1. Steinholt's amended expert report, if any, will calculate loss causation and damages pursuant to the Court's summary judgment order and the order herein;

2. Plaintiffs will provide a copy of Steinholt's amended expert report to Defendants on or before March 12, 2013, or in the alternative advise defendant that no further report will issue and that Steinholt will be de-designated as an expert witness in the case;

3. Defendants will provide a copy of any rebuttal expert report to Plaintiffs on or before April 11, 2013;

4. Plaintiffs and Defendants will depose Steinholt and the rebuttal expert, if any, on or before May 15, 2013, with Steinholt's deposition to be taken first;

5. Motions challenging the reliability or relevance of Steinholt's amended expert report or that of the associated rebuttal expert will be filed on or before June 17, 2013;

6. The pretrial conference set for March 8, 2013 is vacated and reset for August 22, 2013, at 2:00 p.m.; and

//
//
//

7. The trial date of June 3, 2013 is vacated and will be reset at the pretrial conference.

IT IS SO ORDERED.

DATED: February 7, 2013

_____
Hon. Anthony J. Battaglia
U.S. District Judge